**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AMERICAN TIRE DISTRIBUTORS, INC., *et al.*,[1] | ) | Case No. 24-12391 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**MOTION OF DEBTORS FOR ENTRY
OF AN ORDER (I) EXTENDING THE DEBTORS'
EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

**Relief Requested**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Proposed Order"), (a) extending the deadline by which the Debtors have the

exclusive right to (i) file a chapter 11 plan by ninety (90) days through and including

May 20, 2025, (the "Filing Exclusivity Period"), and (ii) solicit votes thereon by ninety (90) days

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are American Tire Distributors, Inc. (4594); ATD New Holdings II, Inc. (4985); ATD New Holdings III, Inc. (0977); ATD New Holdings, Inc. (3406); ATD Sourcing Solutions, LLC (5225); ATD Technology Solutions Inc. (N/A); FLX FWD Logistics, LLC (3334); Hercules Tire International Inc. (N/A); Terry's Tire Town Holdings, LLC (7409); The Hercules Tire & Rubber Company (3365); Tire Pros Francorp, LLC (1813); Tirebuyer.com, LLC (9093); and Torqata Data and Analytics LLC (4992).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 12200 Herbert Wayne Court, Huntersville, NC 28078.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Ronald J. Bienias, Chief Restructuring Officer of American Tire Distributors, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 15].  Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

through and including July 21, 2025[3] (the "Solicitation Exclusivity Period" and, together with the Filing Exclusivity Period, the "Exclusivity Periods"), without prejudice to the Debtors' rights to seek further extensions of the Exclusivity Periods, and (b) granting related relief.  Absent the relief requested herein, the Filing Exclusivity Period will expire on February 19, 2025, and the Solicitation Exclusivity Period will expire on April 21, 2025.[4]

**Preliminary Statement**

2.    The Debtors request that the Court grant a 90-day extension of the Exclusivity Periods.  Fewer than four months from the Petition Date, the Debtors have made substantial progress in chapter 11.  Shortly after the Petition Date, the Debtors filed a motion seeking approval of certain proposed bidding procedures for an expedited sale process for all or substantially all the assets of the Debtors under section 363 of the Bankruptcy Code.  These bidding procedures were approved by the Court on November 26, 2024 [Docket No. 361] (the "Bidding Procedures Order").  At this juncture, the Debtors have made substantial progress towards achieving their chapter 11 goals of consummating a value maximizing sale transaction, but significant work remains to be done.

3.    After the filing of these cases, the Debtors worked tirelessly to complete their marketing process for one or more value-maximizing sale transactions.  To that end, the Debtors negotiated and entered into an asset purchase agreement with a legal entity formed by members of the Ad Hoc Group (the "Stalking Horse Asset Purchase Agreement"), which set forth the terms of a stalking horse bid providing a floor for potential bidding (the "Stalking Horse Bid").  As part of

---

[3]    Ninety days after April 21, 2025, is a Sunday, July 20, 2025, but such date would be continued to Monday July 21, 2025, by operation of Bankruptcy Rule 9006.

[4]    180 days after October 22, 2024, is a Sunday, April 20, 2025, but such date would be continued to Monday, April 21, 2025, by operation of Bankruptcy Rule 9006.

the marketing process, the Debtors, with the assistance of their advisors, reached out to dozens of potential bidders, provided such potential bidders with access to substantial financial and business information, and made themselves available to such potential bidders to address due diligence requests and create interest in the Debtors' assets. This competitive marketing process further served to market test the value provided by the Stalking Horse Bid on the terms set forth in the Stalking Horse Asset Purchase Agreement.

4. In parallel, the Debtors have worked to maintain the going-concern value of their enterprise by, among other things, entering into critical vendor agreements with nearly all of their prepetition tire suppliers as well as other vendors and service providers. These efforts have ensured that the Debtors remain part of the distribution channels for their most important tire suppliers. Good stewardship of critical vendor relationships has also supported the Debtors' sale and marketing process by keeping the most valuable portions of their operations intact.

5. Ultimately, after the Debtors' robust marketing process, the highest and best—and only qualified bid—received by the Debtors was the Stalking Horse Bid. Accordingly, the Debtors filed the *Notice of (I) Selection of Winning Bidder and (II) Cancellation of Auction* [Docket No. 596] on January 12, 2025, identifying the Stalking Horse Bid as the winning bid and cancelling the auction. The Debtors are working to consummate the sale transaction contemplated by the Stalking Horse Asset Purchase Agreement (the "Sale Transaction") as soon as possible. As the Debtors approach the completion of the sale process, an initial extension of the Exclusivity Periods is necessary to ensure consummation of the value-maximizing Sale Transaction followed by pursuit of an orderly winddown plan, without the non-accretive expense or distraction to these estates of dueling plans.

3

6.      The Debtors have also actively engaged with their stakeholders in an effort to build consensus around a conclusion to these chapter 11 cases following the consummation of the Sale Transaction.  In the near term, the Debtors expect to file a chapter 11 winddown plan (the "Plan") and disclosure statement pertaining thereto (the "Disclosure Statement").    The Debtors are continuing to engage in good faith with the Committee (as defined below), the Ad Hoc Group, and their other stakeholders regarding the terms of a value-maximizing winddown plan and providing them information related thereto.

7.      Despite the Debtors' progress, work remains to be done to bring these chapter 11 cases to a close.  The Debtors remain focused on obtaining Court approval of and consummating the Sale Transaction on the terms set forth in the Stalking Horse Asset Purchase Agreement and negotiating key terms of the Plan with parties in interest in these chapter 11 cases.  Extension of the Exclusivity Periods is critical to the Debtors' efforts to avoid substantial disruption and additional costs that could stem from the introduction of new plans, proposed by creditors seeking to advance their parochial interests.  Accordingly, by this motion the Debtors are seeking a 90-day extension of the Exclusivity Periods so that they may continue to diligently pursue an appropriate resolution of these chapter 11 cases.

8.      Further, the Debtors have taken a number of key steps in these chapter 11 cases, including, among other things:

- obtaining relief that has enabled the Debtors to continue their operations and administration of these chapter 11 cases, including obtaining approval of "first day" motions, "second day" motions, and retention applications;

- negotiating and obtaining final approval for the Debtors' debtor-in-possession financing facility and use of cash collateral to address the Debtors' liquidity needs in chapter 11;

- addressing questions, concerns, and issues raised by employees, vendors, utility companies, and other parties in interest;

- obtaining entry of the order setting the claims bar date to facilitate the timely administration of their claims pool and beginning the process of reconciling claims and interests as promptly and efficiently as possible;

- promptly completing and filing their schedules of assets and liabilities and statements of financial affairs on December 9, 2024;

- obtaining entry of the contract rejection procedures order [Docket No. 286] and rejecting numerous onerous executory contracts and unexpired leases [Docket Nos. 378, 487, 491, 493, 515, 519, 615];

- obtaining entry of the Bidding Procedures Order, establishing the Bid Deadline (as defined therein);

- negotiating and entering into the Stalking Horse Asset Purchase Agreement;

- completing an extensive marketing process to identify, develop, and, subject to Court approval, consummate a value-maximizing Sale Transaction;

- responding to diligence requests from the Committee, the Ad Hoc Group, and other key stakeholder groups;

- obtaining entry of the order enlarging the period within the Debtors may remove actions [Docket No. 598];

- working with their advisors to prepare for the upcoming Sale Transaction and filing of a sale order; and

- continuing significant negotiations with key stakeholders regarding the terms of a consensual resolution to these chapter 11 cases.

9. Based on the current posture of these chapter 11 cases, the Debtors believe sufficient cause exists to warrant an extension of the Exclusivity Periods. Given the complexities of these chapter 11 cases and the Debtors' need to continue moving these chapter 11 cases forward, the Debtors' ability to build support for the terms of the Plan may be seriously disrupted if another party were permitted to file a plan. An extension of the Exclusivity Periods is in the best interests

of the Debtors, their estates, and all stakeholders, as it will allow the Debtors to procure the best recovery for their creditors and help to ensure a successful conclusion to these chapter 11 cases.

10. Accordingly, the Debtors seek a modest 90-day extension of the Exclusivity Periods to maintain the exclusive right to file a plan until May 20, 2025, and solicit votes thereon until July 21, 2025. For all of the foregoing reasons and those set forth below, the Debtors respectfully submit that a 90-day extension of exclusivity is appropriate in these circumstances, and request that the Court approve extension of the Exclusivity Periods.

**Jurisdiction and Venue**

11. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") pursuant to 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The statutory bases for the relief requested herein are sections 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6006,

6007, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 9006-2, and 9013-1.

## Background

14.     On October 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On October 25, 2024, this Court entered an order directing the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 77].  On November 4, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 128] (the "Committee").  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Basis for Relief

15.     Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.  Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."  11 U.S.C. § 1121(d).  Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 533–534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility") (quoting *In re Lake In The Woods*, 10 B.R. 338, 340, 345 (E.D. Mich. 1981)).  Simply

7

put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

16. Courts within the Third Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods. These factors include the following:

(a) the size and complexity of the case;

(b) the existence of good-faith progress;

(c) the necessity of sufficient time to negotiate and prepare adequate information to allow a creditor to determine whether to accept such chapter 11 plan;

(d) whether the debtor is paying its debts as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress negotiating with creditors;

(g) the length of time a case had been pending;

(h) whether the debtor is seeking an extension to pressure creditors; and

(i) whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664–65 (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

17.    Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g., Express One*, 194 B.R. at 100–101 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two of the factors in holding that cause existed to extend exclusivity).  For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan.  H.R. No. 95-595, at 231–232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek . . . [relief] . . . under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

18.    As set forth below, the Debtors' chapter 11 cases satisfy the relevant factors and, thus, sufficient "cause" exists to extend the Exclusivity Periods as provided herein.  There is ample precedent in this district and others for an initial extension of exclusivity as the Debtors seek here. *See, e.g., In re Tupperware Brands Corp.*, No. 24-12156 (BLS) [Docket No. 462] (Bankr. D. Del.

Jan. 10, 2025) (granting an initial extension of the exclusive periods by approximately ninety days); *In re Vyaire Med. Inc.,* No. 24-11217 (BLS) [Docket No. 576] (Bankr. D. Del. Sept. 27, 2024) (same); *In re Express, Inc.,* No. 24-10831 (KBO) [Docket No. 805] (Bankr. D. Del. Sept. 9, 2024) (same); *In re Mist Holdings, Inc.*, No. 24-10245 (JTD) [Docket No. 422] (Bankr. D. Del. Jun. 10, 2024) (same); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) [Docket No. 703] (Bankr. D. Del. Feb. 26, 2024) (same).[5]

## I.       The Debtors' Chapter 11 Cases Are Large and Complex.

17.    These chapter 11 cases involve thirteen jointly-administered Debtor entities, which had, at the outset of these cases, approximately 4,500 employees.  The Debtors continue to operate their business and serve over 80,000 customers throughout North America.  As of the Petition Date, the Debtors had approximately $1.9 billion in aggregate outstanding principal and accrued interest of funded-debt obligations.

18.    The Debtors also have a wide variety of parties in interest, from various vendors and contractual and litigation counterparties to local, state, and federal agencies—many of whom have been active in these chapter 11 cases.  The Debtors also have a myriad of reporting obligations with respect to local, state, and federal taxing and regulatory agencies that the Debtors have continued to comply with, to the extent required by the Bankruptcy Code.

19.    Further, the Debtors will provide transition services to the purchaser under the Stalking Horse Asset Purchase Agreement to effectuate a smooth transition for all stakeholders and to maximize the value of these estates.  This will be an involved process, requiring the Debtors,

---

[5]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' counsel.

their personnel, and their professionals to negotiate with numerous stakeholders as well as the purchaser to ensure uninterrupted service.

20.     Accordingly, the size and complexity of these chapter 11 cases weigh in favor of extending the Exclusivity Periods.

**II.     The Debtors Have Made Good-Faith Progress Towards Conclusion of these Chapter 11 Cases.**

21.     During their short time in chapter 11, the Debtors have made significant progress in negotiating with their stakeholders and administering these chapter 11 cases.  The Debtors commenced these chapter 11 cases with extremely limited liquidity, and immediately sought and obtained approval of postpetition financing to pursue a value maximizing sale transaction, sought and obtained approval of the Bidding Procedures (as defined in the Bidding Procedures Order), and have made significant progress towards finalizing the value-maximizing Sale Transaction, which will allow the American Tire Distributors brand to continue to serve its customers and employ thousands of workers across the country uninterrupted.  The Debtors have moved as expeditiously as possible through these chapter 11 cases and are now working on obtaining approval of and consummating the Sale Transaction and transitioning their assets and vendor relationships to the purchaser.

22.     Further, the Debtors have engaged in good faith with the Committee.  Since the Committee's formation, the Debtors have had extensive negotiations and shared information related to the marketing and sale process as well as the Debtors proposed Plan, which they expect to file in the near term.  The Debtors, at the Committee's request, are facilitating extensive and ongoing diligence and discovery and have thus far shared over 10,000 documents with the Committee through responses to production requests and data room access.

23.    In the weeks ahead, the Debtors will seek conditional approval of the Disclosure Statement and will continue to engage with their stakeholders to further develop and negotiate the Plan.  The Debtors' substantial progress administering these chapter 11 cases weighs in favor of an extension of the Exclusivity Periods.

**III.    The Debtors Are Paying Their Bills as They Come Due.**

24.    Since the Petition Date, the Debtors have paid their undisputed postpetition obligations in the ordinary course or as otherwise provided by Court order.

**IV.    The Debtors Have Reasonable Prospects for Filing a Viable Plan**

25.    The Debtors have already taken significant steps toward exiting these chapter 11 cases by negotiating with their key stakeholders regarding the terms of a potential Plan to effectuate an orderly wind down process to allocate proceeds following the closing of the Sale Transaction, which is ultimately the best path forward for the Debtors' estates.  Accordingly, an extension of the Exclusivity Periods will allow the Debtors adequate time to complete the negotiations on the Plan, file the Plan, solicit votes thereon, and move forward with obtaining Court approval.

**V.    These Cases Are Less Than Four Months Old.**

26.    The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes less than four months after the Petition Date.  As discussed above, during this short time, the Debtors have accomplished a great deal, including approval of the Bidding Procedures Order, addressing questions, concerns, and issues raised by employees, vendors, utility companies, and other parties in interest, and negotiating and obtaining final approval for the Debtors' debtor in possession financing facility and use of cash collateral to address the Debtors' liquidity needs, and the Debtors will continue to work diligently with all stakeholders to negotiate and consummate a plan.  This is also the Debtors' first such request for

relief.  The fact of the Debtors' short yet productive stay in chapter 11 to date weighs in favor of granting the requested extension.

**VI.      An Extension of the Exclusivity Periods Will Not Pressure Creditors.**

27.      The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders.   The Debtors have been diligently moving these chapter 11 cases forward.   Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will benefit the Debtors' estates, their creditors, and all other key parties in interest.

28.      An objective analysis of the relevant factors demonstrates that the Debtors are working to facilitate a successful and largely consensual conclusion to these chapter 11 cases. Accordingly, sufficient cause exists to extend the Exclusivity Periods as provided herein.

### Notice

29.      The Debtors will provide notice of this motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the Ad Hoc Group and the DIP Term Lenders; (g) the agents for certain prepetition and postpetition lenders of the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: January 27, 2025
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Laura Davis Jones (DE Bar No. 2436) | Anup Sathy, P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | Chad J. Husnick, P.C. (admitted *pro hac vice*) |
| Edward A. Corma (DE Bar No. 6718) | David R. Gremling (admitted *pro hac vice*) |
| 919 North Market Street, 17th Floor | 333 West Wolf Point Plaza |
| Wilmington, Delaware 19801 | Chicago, Illinois 60654 |
| Telephone: (302) 652-4100 | Telephone: (312) 862-2000 |
| Facsimile: (302) 652-4400 | Facsimile: (312) 862-2200 |
| Email: ljones@pszjlaw.com | Email: anup.sathy@kirkland.com |
| tcairns@pszjlaw.com | chad.husnick@kirkland.com |
| ecorma@pszjlaw.com | dave.gremling@kirkland.com |

*Co-Counsel for the Debtors and Debtors in Possession*          *Co-Counsel for the Debtors and Debtors in Possession*