## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OLDCO TIRE DISTRIBUTORS, INC., *et al.*,[1] | ) | Case No. 24-12391 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## AMENDED JOINT CHAPTER 11 PLAN
## OF OLDCO TIRE DISTRIBUTORS, INC. AND
## ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

Anup Sathy, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
David R. Gremling (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:      anup.sathy@kirkland.com
             chad.husnick@kirkland.com
             dave.gremling@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward A. Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:      ljones@pszjlaw.com
             tcairns@pszjlaw.com
             ecorma@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*

Dated: March 25, 2025

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Oldco Tire Distributors, Inc. (4594); Oldco Holdings II, Inc. (4985); Oldco Holdings III, Inc. (0977); Oldco Holdings, Inc. (3406); Oldco Sourcing Solutions, LLC (5225); ATD Technology Solutions Inc. (N/A); Oldco FF Logistics, LLC (3334); Hercules Tire International Inc. (N/A); Oldco Town Holdings, LLC (7409); The Oldco Tire & Rubber Company (3365); Oldco Pros Francorp, LLC (1813); Oldcobuyer.com, LLC (9093); and Oldco Data and Analytics LLC (4992).  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 12200 Herbert Wayne Court, Huntersville, NC 28078.

# TABLE OF CONTENTS

# CONTENTS

INTRODUCTION ..................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ...........................................................1
A.    Defined Terms. ....................................................................................1
B.    Rules of Interpretation. .......................................................................14
C.    Computation of Time. .........................................................................15
D.    Governing Law. ..................................................................................15
E.    Reference to Monetary Figures. ..........................................................15
F.    Reference to the Debtors or the Wind-Down Debtors. ..........................16
G.    No Substantive Consolidation; Limited Administrative Consolidation. ...........16
H.    Controlling Document. ........................................................................16

**ARTICLE II ADMINISTRATIVE CLAIMS AND  PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS** .........................................................16
A.    Administrative Claims Not Assumed by the Purchaser. .........................16
B.    Professional Fee Claims. .....................................................................17
C.    Priority Tax Claims. ...........................................................................18
D.    Statutory Fees. ...................................................................................18
E.    Restructuring Expenses. ......................................................................19

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** .........................................................................................19
A.    Classification of Claims and Interests. .................................................19
B.    Summary of Classification. ..................................................................19
C.    Treatment of Claims and Interests. ......................................................20
D.    Special Provision Governing Unimpaired Claims. .................................23
E.    Elimination of Vacant Classes. ............................................................23
F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .............................................................................23
G.    Subordinated Claims. ..........................................................................24
H.    Controversy Concerning Impairment. ...................................................24

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** .....................24
A.    General Settlement of Claims and Interests. ..........................................24
B.    Asset Sale. .........................................................................................24
C.    Wind-Down. .......................................................................................24
D.    Corporate Action. ...............................................................................29
E.    Cancellation of Securities and Agreements. ..........................................30
F.    Effectuating Documents; Further Transactions. .....................................30
G.    Exemption from Certain Taxes and Fees. ..............................................30

H. Preservation of Causes of Action. .................................................................31

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..........................................................................................................**32**
A. Assumption and Rejection of Executory Contracts and Unexpired Leases. ....................32
B. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ...................................................................................................33
C. Claims Based on Rejection of Executory Contracts or Unexpired Leases. .....................33
D. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ...................34
E. Insurance Policies. ..........................................................................................35
F. D&O Liability Insurance Policies. ....................................................................35
G. Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...........36
H. Reservation of Rights. .....................................................................................36
I. Nonoccurrence of Effective Date. ....................................................................36

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ............................................**36**
A. Timing and Calculation of Amounts to Be Distributed. ....................................36
B. Disbursing Agent. ..........................................................................................37
C. Rights and Powers of the Disbursing Agent. ....................................................37
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. ......................37
E. Compliance with Tax Requirements/Allocations. ............................................39
F. Allocation of Plan Distributions Between Principal and Interest. .....................39
G. Setoffs and Recoupment. ................................................................................39
H. No Postpetition Interest on Claims. .................................................................40
I. Foreign Currency Exchange Rate. ...................................................................40
J. Claims Paid or Payable by Third Parties. .........................................................40
K. Indefeasible Distributions. ..............................................................................41

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ............................................................**41**
A. Allowance of Claims. ......................................................................................41
B. Claims Administration Responsibilities. ..........................................................41
C. Estimation of Claims. .....................................................................................42
D. Adjustment to Claims without Objection. ........................................................42
E. Disallowance of Claims. ..................................................................................42
F. Amendments to Claims. ..................................................................................42
G. No Distributions Pending Allowance. ..............................................................43
H. Distributions After Allowance. ........................................................................43
I. Single Satisfaction of Claims. ..........................................................................43

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ...............................................................................................................**43**
A. Term of Injunctions or Stays. ..........................................................................43
B. Release of Liens. ............................................................................................43
C. Releases by the Debtors .................................................................................44
D. Releases by Holders of Claims and Interests. ..................................................45
E. Exculpation. ...................................................................................................46

F.      Injunction. ...............................................................................................47
G.      Protection Against Discriminatory Treatment. .......................................48
H.      Subordination Rights. ............................................................................48
I.      Document Retention. ..............................................................................48
J.      Reimbursement or Contribution. ...........................................................48
K.      Release of Preference Actions ...............................................................48

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ...............................................................................................**48**
A.      Conditions Precedent to the Effective Date. ..........................................48
B.      Waiver of Conditions. ............................................................................50
C.      Substantial Consummation. ....................................................................50
D.      Effect of Nonoccurrence of Conditions to the Effective Date. ..............50

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ...........................................................................................................................**50**
A.      Modifications and Amendments. ............................................................50
B.      Effect of Confirmation on Modifications. ..............................................51
C.      Revocation or Withdrawal of the Plan. ..................................................51

**ARTICLE XI RETENTION OF JURISDICTION** .................................................**51**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ...............................................**53**
A.      Immediate Binding Effect. .....................................................................53
B.      Additional Documents. ...........................................................................53
C.      Dissolution of Statutory Committees. ....................................................54
D.      Reservation of Rights. ............................................................................54
E.      Successors and Assigns. .........................................................................54
F.      Service of Documents. ...........................................................................54
G.      Enforcement of Confirmation Order. .....................................................55
H.      Entire Agreement. ..................................................................................55
I.      Exhibits. .................................................................................................55
J.      Nonseverability of Plan Provisions. .......................................................55
K.      Votes Solicited in Good Faith. ...............................................................56
L.      Waiver. ...................................................................................................56

## INTRODUCTION

Oldco Tire Distributors, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases propose this joint chapter 11 plan of liquidation for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor. For the avoidance of doubt, the Plan does not contemplate substantive consolidation of any of the Debtors. Readers should refer to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, risk factors, as well as a summary and analysis of this Plan, the Wind-Down Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect ascribed to them below.

1.    "*2024 Delayed Draw FILO Loan Agent*" means Wells Fargo Bank, National Association, in its capacity as collateral agent for the Holders of 2024 Delayed Draw FILO Loans under the ABL Credit Agreement.

2.    "*2024 Delayed Draw FILO Loans*" means "2024 Delayed Draw FILO Loans," as such term is defined in the ABL Credit Agreement.

3.    "*2024 FILO Claims*" means any Claim against any of the Debtors arising under, derived from, based on, or related to the 2024 Delayed Draw FILO Loans.

4.    "*2024 FILO Roll-Up Claims*" means the 2024 FILO Claims that were rolled up pursuant to the terms of the DIP Orders.

5.    "*ABL Agent*" means Wells Fargo Bank, National Association, in its capacity as collateral agent and administrative agent for the Holders of ABL Claims under the ABL Credit Agreement.

6.    "*ABL Claims*" means the Original FILO Claims and the Revolving Credit Claims.

7.    "*ABL Credit Agreement*" means that certain ABL Credit Agreement, dated as of October 22, 2021, as amended by that certain First Amendment to ABL Credit Agreement, dated as of April 13, 2023, as further amended by that certain Second Amendment to ABL Credit Agreement, dated as of July 16, 2024, and as further amended by that certain Third Amendment to ABL Credit Agreement, dated as of July 24, 2024, by Oldco Tire Distributors, Inc., as administrative borrower, certain Debtors as borrowers and

guarantors party thereto, and the ABL Agent, as may be further amended, amended and restated, or otherwise supplemented from time to time.

8.    "*Ad Hoc Group*" means that certain ad hoc group of Consenting Lenders represented by the Ad Hoc Group Advisors.

9.    "*Ad Hoc Group Advisors*" means (a) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Ad Hoc Group, (b) Perella Weinberg Partners LP, as financial advisor to the Ad Hoc Group, (c) Potter Anderson & Corroon LLP, as local counsel to the Ad Hoc Group, and (d) such other professionals as may be retained by or on behalf of the Ad Hoc Group from time to time, including any operational or industry advisors.

10.    "*Administrative Claim*" means a Claim of the kind specified in sections 503(b), 503(b)(9), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred by the Debtors on or after the Petition Date and before the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

11.    "*Administrative Claims Bar Date*" means the deadline by which all requests for Administrative Claims (other than Professional Fee Claims) must be Filed and served on the Debtors, which shall be thirty days after the Effective Date; *provided* that Filing a request for payment of Administrative Claims is not required where the Plan, Bankruptcy Code, or a Final Order does not require such Filing.

12.    "*Administrative Claims Objection Deadline*" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be (a) sixty days after the Effective Date or (b) such other period of limitation as may be specifically fixed by the Debtors or the Wind-Down Debtors on or before the Effective Date, or by an order of the Bankruptcy Court, for objecting to such Administrative Claims; *provided* that the Administrative Claims Objection Deadline may be extended by the Bankruptcy Court after notice and a hearing.

13.    "*Administrative Claims Reserve*" means a segregated account established and maintained by the Wind-Down Debtors in accordance with Article IV.C.3.

14.    "*Administrative Claims Reserve Amount*" means Cash equal to the amount of estimated Allowed Administrative Claims (other than Professional Fee Claims) *plus* estimated Allowed Priority Tax Claims *plus* estimated Allowed Other Priority Claims to the extent any such Claims are not Assumed Liabilities (as defined in the Asset Purchase Agreement) under the Asset Purchase Agreement, which aggregate amount shall be funded into the Administrative Claims Reserve.

15.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

16.    "*Allowed*" means, with respect to any Claim against a Debtor, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding

Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order; *provided* that with respect to a Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claim, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity has paid the amount, or turned over any such property, for which such Entity is liable.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "*Allow*" and "*Allowing*" shall have correlative meanings.

17.      "*Asset Purchase Agreement*" means the definitive purchase agreement executed by the Debtors and the Purchaser, dated as of November 26, 2024, to effectuate the Asset Sale, including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof, substantially in the form to be attached to the Sale Order.

18.      "*Asset Sale*" means a sale by the Debtors of substantially all of the Debtors' assets to the Purchaser free and clear of all Liens, Claims, charges, and other encumbrances pursuant to sections 363(f) and 363(k) of the Bankruptcy Code and the terms and conditions of the Asset Purchase Agreement and the Sale Order.

19.      "*Avoidance Actions*" means any and all avoidance, recovery, or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable nonbankruptcy law, including Claims, Causes of Action or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer laws.

20.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101--1532, as amended.

21.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

22.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers' rules of the Bankruptcy Court.

23.      "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 603].

24.      "*Bidding Procedures*" means the bidding procedures attached to the Bidding Procedures Order as <u>Exhibit 1</u>.

25. "*Bidding Procedures Order*" means the order of the Bankruptcy Court approving, among other things, the bidding procedures governing submission and evaluation of bids in connection with the Asset Sale [Docket No. 361].

26. "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

27. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

28. "*Cash Collateral*" has the meaning ascribed to it under section 363(a) of the Bankruptcy Code.

29. "*Causes of Action*" means any and all actions, Claims, causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Causes of Action" includes: (a) any rights of setoff, counterclaim, or recoupment, and any Claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims against or Interests in the Debtors; (c) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any and all Claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any and all state or foreign law fraudulent transfer or similar Claims; and (f) any Avoidance Actions.

30. "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

31. "*Claim*" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

32. "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed with respect to Claims (other than Administrative Claims allowable under sections 503(b) or 507(a)(2) of the Bankruptcy Code as an expense of administration incurred in the ordinary course), as established by the Bar Date Order or the Plan; *provided* that if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

33. "*Claims Register*" means the official register of Claims against the Debtors maintained by the clerk of the Bankruptcy Court or the Notice, Claims, and Solicitation Agent.

34. "*Class*" means a category of Holders of Claims against or Interests in the Debtors as set forth in Article III of the Plan under section 1122 of the Bankruptcy Code.

35. "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance.

36.     "*Committee*" means the statutory committee of unsecured creditors, appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 128].

37.     "*Company Parties*" means Oldco Tire Distributors, Inc. and each of its Affiliates that are party to the RSA.

38.     "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

39.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

40.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code at which the Debtors shall seek entry of the Confirmation Order.

41.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

42.     "*Consenting 2024 FILO Roll-Up Lenders*" means the Holders of 2024 FILO Roll-Up Claims.

43.     "*Consenting Equity Holders*" means the Holders of equity interests in the Company Parties that are signatories to the RSA.

44.     "*Consenting Lenders*" means the Consenting Prepetition Term Lenders, the Consenting New Money DIP Lenders, and the Consenting 2024 FILO Roll-Up Lenders.

45.     "*Consenting New Money DIP Lenders*" means the holders of New Money Loans that are signatories to the RSA.

46.     "*Consenting Prepetition Term Lenders*" means the holders of Term Loan Claims that are signatories to the RSA.

47.     "*Consenting Stakeholders*" means, collectively, the Consenting Lenders and the Consenting Equity Holders.

48.     "*Consummation*" means the occurrence of the Effective Date.

49.     "*Cure*" or "*Cure Claim*" means a monetary Claim (unless waived or modified by the applicable counterparty) in connection with any Executory Contract or Unexpired Lease assumed by the Debtors and assigned to the Wind-Down Debtors in connection with the Plan based upon a Debtor's default under any Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

50.     "*Cure Notice*" means the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases* [Docket No. 462] or any other notice of a proposed amount to be paid on account of a Cure Claim or Sale Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed pursuant to section 365 of the Bankruptcy Code, which notice shall include: (a) procedures

for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases; (b) proposed Cure Claims or Sale Cure Claims to be paid in connection therewith as of the date of such Cure Notice; (c) procedures for resolution by the Bankruptcy Court of any related disputes; and (d) represents that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

51.  "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to any of the Debtors as a first named insured providing directors', members', trustees', officers', or managers' liability coverage.

52.  "*Debtor*" means Oldco Tire Distributors, Inc., Oldco Holdings II, Inc., Oldco Holdings III, Inc., Oldco Holdings, Inc., Oldco Sourcing Solutions, LLC, ATD Technology Solutions Inc., Oldco FF Logistics, LLC, Hercules Tire International Inc., Oldco Town Holdings, LLC, The Oldco Tire & Rubber Company, Oldco Pros Francorp, LLC, Oldcobuyer.com, LLC, and Oldco Data and Analytics LLC, as applicable, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.[2]

53.  "*Debtors*" means, collectively, each and every Debtor.

54.  "*DIP ABL Agent*" means Wells Fargo Bank, National Association, in its capacity as collateral agent and administrative agent under the DIP ABL Credit Agreement.

55.  "*DIP ABL Credit Agreement*" means the debtor in possession financing credit agreement by and among certain of the Company Parties, the DIP ABL Agent, and the DIP ABL Lenders.

56.  "*DIP ABL Facility*" means the senior secured postpetition revolving facility incurred in accordance with the DIP ABL Facility Documents and the DIP Orders.

57.  "*DIP ABL Facility Documents*" means, collectively, the DIP ABL Credit Agreement, and any other documents governing the DIP ABL Facility, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith and any other Loan Documents (as defined in the DIP ABL Credit Agreement).

58.  "*DIP ABL Lenders*" means the lenders party from time to time to the DIP ABL Credit Agreement.

59.  "*DIP Agents*" means, collectively, the DIP ABL Agent and the DIP Term Loan Agent.

60.  "*DIP Documents*" means, collectively, the DIP ABL Facility Documents and the DIP Term Loan Facility Documents.

61.  "*DIP Facilities*" means, together, the DIP ABL Facility and the DIP Term Loan Facility.

62.  "*DIP Orders*" means the Interim DIP Order and the Final DIP Order.

---

[2]  As set forth in the *Notice of Name Change for Debtors and Updated Case Caption* [Docket No. 904], each Debtor, except ATD Technology Solutions Inc. and Hercules Tire International Inc., changed their legal name.  Accordingly, the Plan now refers to each Debtor by using its current legal name.  Each Debtors' legal name change took effect on or before March 19, 2025.

63.     "*DIP Term Loan Agent*" means Wilmington Savings Fund Society, FSB, in its capacity as administrative agent, collateral agent and escrow agent under the DIP Term Loan Credit Agreement.

64.     "*DIP Term Loan Credit Agreement*" means the superpriority secured debtor in possession term loan credit agreement by and among Oldco Tire Distributors, Inc., Oldco Holdings III, Inc., the DIP Term Loan Agent, and the DIP Term Loan Lenders.

65.     "*DIP Term Loan Facility*" means the senior secured nonamortizing superpriority priming debtor in possession term loan facility comprising the New Money Loans and the roll up of the 2024 Delayed Draw FILO Loans provided to the Debtors on the terms and conditions set forth in the DIP Term Loan Credit Agreement and the DIP Orders.

66.     "*DIP Term Loan Facility Documents*" means, collectively, the DIP Term Loan Credit Agreement and any other documents governing the DIP Term Loan Facility, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith and any other Loan Documents (as defined in the DIP Term Loan Credit Agreement).

67.     "*DIP Term Loan Lenders*" means the lenders party from time to time to the DIP Term Loan Credit Agreement.

68.     "*Disbursing Agent*" means the Entity or Entities selected by the Debtors or the Wind-Down Debtors, as applicable, to make or facilitate distributions contemplated under the Plan, which will be identified in the Plan Supplement.

69.     "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules attached thereto, and as amended, modified, or supplemented from time to time in accordance with the terms thereof.

70.     "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement.

71.     "*Disputed*" means, with respect to a Claim or Interest, a Claim or Interest, or any portion thereof, that is:  (x) not Allowed and (y) not disallowed under this Plan, the Bankruptcy Code or a Final Order, as applicable.

72.     "*Distributable Proceeds*" means, on the Effective Date, following the closing of the Asset Sale, all Cash and other Wind-Down Debtors' Assets remaining in the Estates that are Excluded Assets (as defined in the Asset Purchase Agreement) under the Asset Purchase Agreement and that are not Collateral for the Term Loans, less the Wind-Down Reserve.

73.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against the Debtors are eligible to receive distributions under the Plan, which shall be the later of (a) thirty days after the Effective Date or (b) such other date as designated in a Final Order.

74.     "*Effective Date*" means, with respect to the Plan and any applicable Debtors, the date that is the first Business Day after the Confirmation Date on which all conditions precedent set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan and the Debtors have declared that this Plan has gone effective.

75.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

76.     "*Equity Interests*" means, collectively, all Interests in Oldco Holdings, Inc. outstanding immediately prior to the Effective Date.

77.     "*Estate*" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

78.     "*Exculpated Parties*" means, collectively, and in each case in its capacity as such, (a) the Debtors; (b) the Committee and each of its respective members; and (c) with respect to the Entities in clause (a) and (b), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

79.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

80.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in the 1961 Judicial Code.

81.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice, Claims, and Solicitation Agent or the Bankruptcy Court.

82.     "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 340].

83.     "*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, re-argument, leave to appeal or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule under the Bankruptcy Rules, the local rules of the Bankruptcy Court or applicable non-bankruptcy law may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

84.     "*General Unsecured Claim*" means any Claim that is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) a Secured Claim; (e) an Other Secured Claim; (f) a Term Loan Secured Claim; (g) a Term Loan Deficiency Claim; (h) an Intercompany Claim; (i) a Professional Fee Claim; (j) a Section 510(b) Claim; or (k) a Cure Claim; *provided* that any Claims that are assumed by the Purchaser under the Asset Purchase Agreement in connection with the Asset Sale shall be satisfied under the Asset Purchase Agreement and shall not constitute a General Unsecured Claim of the Debtors or Wind-Down Debtors to the extent so assumed.

85.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Wind-Down Debtors, as applicable.

86.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

87.    "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

88.    "*Impaired*" means, with respect to a Class of Claims against or Interests in the Debtors, a Class of Claims against or Interests in the Debtors that is impaired within the meaning of section 1124 of the Bankruptcy Code.

89.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

90.    "*Intercompany Interest*" means any Interest in one Debtor held by another Debtor.

91.    "*Interest*" means the common stock, preferred stock, limited liability company interests, equity security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other Securities or agreements to acquire the common stock (including convertible debt), preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

92.    "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 90].

93.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

94.    "*New Money Lenders*" means the lenders of the New Money Loans under the DIP Term Loan Facility.

95.    "*New Money Loans*" means "New Money Loans" as such term is defined in the DIP Term Loan Credit Agreement.

96.    "*Notice, Claims, and Solicitation Agent*" means Donlin, Recano & Company, Inc., solely in its capacity as notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

97.    "*Ordinary Course Professional*" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with an order of the Bankruptcy Court establishing procedures for the employment of Entities (other than Professionals) in the ordinary course of the Debtors' business.

98.    "*Original FILO Claims*" means any Claim against any of the Debtors arising under, derived from, based on, or related to the Original FILO Term Loans, exclusive of the 2024 FILO Claims.

99.    "*Original FILO Term Loans*" means "FILO Term Loans," as such term is defined in the ABL Credit Agreement.  For the avoidance of doubt, the Original FILO Term Loans do not include the 2024 Delayed Draw FILO Loans.

100.    "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

101.    "*Other Secured Claim*" means any Secured Claim (including secured tax claims) against any of the Debtors, other than the Term Loan Secured Claims.

102.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

103.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

104.    "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified, or supplemented from time to time in accordance with the terms hereof).

105.    "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors to have all powers and authorities set forth in the Plan and the Plan Administrator Agreement.

106.    "*Plan Administrator Agreement*" means that certain agreement by and among the Debtors or the Wind-Down Debtors, as applicable, and the Plan Administrator, which shall be included in the Plan Supplement.

107.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) that was Filed at least seven days prior to the deadline to object to Confirmation of the Plan [Docket No. 890], as set forth in the Disclosure Statement Order or such later date as may be approved by the Bankruptcy Court, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement, or such later date as may be approved by the Bankruptcy Court, including the following, as applicable: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) Retained Causes of Action, if any; (c) the Wind-Down Budget, if applicable; (d) the Plan Administrator Agreement, if applicable; (e) the Transaction Steps Memorandum; and (f) any other necessary documentation related to the Wind-Down Transactions.

108.    "*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

109.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

110.    "*Professional*" means an Entity (other than an Ordinary Course Professional): (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

111.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

112.    "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

113.    "*Professional Fee Escrow Account*" means an account funded by the Debtors or the Wind-Down Debtors, as applicable, on the Effective Date in an amount equal to the total Professional Fee Amount.

114.    "*Professional Fee Escrow Remainder*" means "Professional Fee Escrow Remainder" as it is defined in Article II.B.2 of this Plan.

115.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

116.    "*Purchaser*" means Asphalt Buyer LLC, a Delaware limited liability company or its designees and/or assignee(s) pursuant to the Asset Purchase Agreement.

117.    "*Related Party*" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

118.    "*Released Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors and the Wind-Down Debtors, as applicable; (b) the Consenting Stakeholders; (c) the DIP Agents; (d) the Term Loan Agent; (e) the 2024 Delayed Draw FILO Loan Agent; (f) the Committee, and each of its members (in their capacities as such); (g) the ABL Agent; (h) the Purchaser; (i) all Holders of Claims against or Interests in the Debtors who affirmatively opt in to the releases provided by the Plan; (j) each current and former Affiliate of each Entity in clause (a) through the following clause (k); and (k) each Related Party of each Entity in clause (a) through clause (j).

119.    "*Releasing Party*" means, collectively, and in each case, solely in their respective capacities as such:    (a) the Debtors and the Wind-Down Debtors, as applicable; (b) the Consenting Stakeholders; (c) the DIP Agents; (d) the Term Loan Agent; (e) the 2024 Delayed Draw FILO Loan Agent; (f) the Committee, and each of its members (in their capacities as such); (g) the ABL Agent; (h) the Purchaser; (i) all Holders of Claims against or Interests in the Debtors who affirmatively opt in to the releases provided by the Plan; (j) each current and former Affiliate of each Entity in clause (a) through the following clause (k); and (k) each Related Party of each Entity in clause (a) through clause (j) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law.

120.    "*Remaining Waterfall Recovery Allocation*" means the proportionate share of Distributable Proceeds attributable to each Holder of an Allowed Claim in Class 4 and Class 5, which shall be calculated as the proportion that an Allowed Term Loan Deficiency Claim or Allowed General Unsecured Claim, as applicable, bears to the aggregate amount of Allowed Term Loan Deficiency Claims *plus* Allowed General Unsecured Claims at each applicable Debtor Entity.

121.    "*Required Consenting 2024 FILO Roll-Up Lenders*" means, as of the relevant date, the Consenting 2024 FILO Roll-Up Lenders holding more than 50 percent of the aggregate outstanding principal amount of 2024 FILO Roll-Up Claims that are held by Consenting 2024 FILO Roll-Up Lenders.

122.    "*Required Consenting Lenders*" means the Required Consenting New Money DIP Lenders, the Required Consenting 2024 FILO Roll-Up Lenders, and the Required Consenting Prepetition Term Lenders.

123.    "*Required Consenting New Money DIP Lenders*" means, as of the relevant date, Consenting New Money DIP Lenders holding more than 60 percent of the aggregate outstanding principal amount of the New Money Loans that are held by New Money Lenders.

124.    "*Required Consenting Prepetition Term Lenders*" means, as of the relevant date, Consenting Prepetition Term Lenders holding more than 50 percent of the aggregate outstanding principal amount of Term Loan Claims that are held by Consenting Prepetition Term Lenders.

125.    "*Restructuring Expenses*" means the reasonable and documented fees and expenses of the Ad Hoc Group Advisors and the advisors to the DIP ABL Agent, subject to the terms of any applicable engagement letter or reimbursement letter with any of the Debtors or the terms of the DIP Orders, as the case may be.

126.    "*Retained Causes of Action*" means those Causes of Action that shall vest in the Wind-Down Debtors on the Effective Date.  For the avoidance of doubt, Retained Causes of Action shall not include any Avoidance Actions, or any Causes of Action that are settled, released, or exculpated under the Plan or that are assigned to the Purchaser, as set forth in the Asset Purchase Agreement, pursuant to the Sale Order.

127.    "*Revolving Credit Claims*" means any Claim against any of the Debtors arising under, derived from, based on, or related to the Revolving Credit Loans.

128.    "*Revolving Credit Loans*" means "Revolving Credit Loans," as such term is defined in the ABL Credit Agreement.

129.    "*RSA*" means that certain restructuring support agreement, dated as of October 22, 2024, by and among the Debtors and the Consenting Stakeholders, including all exhibits thereto, as may be amended, modified, or supplemented from time to time, in accordance with its terms.

130.    "*Sale Cure*" or "*Sale Cure Claim*" means a monetary Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under any Executory Contract or Unexpired Lease arising at or prior to the time such Executory Contract or Unexpired Lease is assumed by the Debtors and assigned to the Purchaser in connection with the Asset Sale pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

131.    "*Sale Order*" means the order of the Bankruptcy Court approving the Asset Sale.

132.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed, or assumed and assigned, by the Wind-Down Debtors pursuant to the Plan.

133.    "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action, as the same may be amended, modified, or supplemented from time to time.

134.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

135.    "*Section 510(b) Claim*" means any Claim that is subordinated under section 510(b) of the Bankruptcy Code.

136.    "*Secured*" or "*Secured Claim*" means a Claim secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

137.    "*Securities Act*" means the U.S. Securities Act of 1933.

138.    "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

139.    "*Term Loan Agent*" means the administrative agent under the Term Loan Credit Agreement.

140.    "*Term Loan Claim*" means any Claim against any of the Debtors on account of the Term Loans.

141.    "*Term Loan Credit Agreement*" means that certain term loan credit agreement, dated as of October 22, 2021, as amended by that certain Amendment No. 1 to Credit Agreement, dated as of March 26, 2023, as further amended by that certain Amendment No. 2 to Credit Agreement, dated as of March 26, 2023 and as further amended by that certain Amendment No. 3 to Term Loan Credit Agreement, dated as of July 24, 2024, as may be further amended, amended, and restated, or otherwise supplemented from time to time.

142.    "*Term Loan Deficiency Claim*" means a Term Loan Claim (or any portion thereof) that is not a Secured Claim in respect of the Term Loans.

143.    "*Term Loan Secured Claim*" means a Term Loan Claim (or any portion thereof) that is a Secured Claim in respect of the Term Loans.

144.    "*Term Loans*" means loans outstanding under the Term Loan Credit Agreement.

145.    "*Transaction Steps Memorandum*" means the document that sets forth certain steps to be carried out to implement the Wind-Down Transactions in accordance with this Plan, which shall be included in the Plan Supplement.

146.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

147.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

148.    "*Unimpaired*" means a Class of Claims against or Interests in the Debtors that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

149.    "*Voting Deadline*" means March 24, 2025, at 4:00 p.m. (prevailing Eastern Time).

150.    "*Waterfall Recovery*" means the priority by which Distributable Proceeds shall be allocated and paid to the Holders of Claims, other than Allowed Professional Fee Claims, as applicable, until such Claims are paid in full, in each case, on a Pro Rata basis, except as otherwise agreed to by such Holders of Claims, as follows, and subject in all respects to Article III.C hereof:  (a) Allowed Administrative Claims and Allowed Priority Tax Claims; (b) Allowed Other Secured Claims; (c) Allowed Other Priority Claims; and (d) Allowed Term Loan Deficiency Claims and Allowed General Unsecured Claims, in each case that are not assumed by the Purchaser pursuant to the Asset Purchase Agreement.

151.    "*Wind-Down*" means the wind down, liquidation, and dissolution of the Debtors' Estates following the Effective Date as set forth in Article IV.C hereof.

152.    "*Wind-Down Budget*" means a budget for the reasonable activities and expenses to be incurred following (but including, for the avoidance of doubt, taxes arising as a result of) the consummation of the Asset Sale and Confirmation of the Plan in winding down and liquidating and dissolving the Debtors' Estates and as set forth in the Plan Supplement and/or Asset Purchase Agreement.

153.    "*Wind-Down Debtors*" means the Debtors on or after the Effective Date.

154.    "*Wind-Down Debtors' Assets*" means, on the Effective Date, for each Wind-Down Debtor, all assets of the applicable Debtor's Estate, which, for the avoidance of doubt, shall exclude all assets acquired by the Purchaser pursuant to the Asset Sale.

155.    "*Wind-Down Debtors' Expenses*" means all actual and necessary costs and expenses incurred by the Wind-Down Debtors or Plan Administrator in connection with carrying out the obligations of the Wind-Down Debtors pursuant to the terms of the Plan and the Plan Administrator Agreement.

156.    "*Wind-Down Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the amounts under the Wind-Down Budget to fund the Wind-Down and the Wind-Down Transactions.

157.    "*Wind-Down Transactions*" means the transactions described in Article IV.C.

*B.    Rules of Interpretation.*

For purposes of this Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may have been

or may be amended, restated, supplemented, or otherwise modified; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections of the Plan, respectively, hereof or hereto; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (x) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xii) any effectuating provisions may be interpreted by the Debtors or the Wind-Down Debtors and Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (xiii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiv) except as otherwise provided in the Plan, any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (xv) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (xvi) on and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to the Wind-Down Debtors.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided* that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Wind-Down Debtor, as applicable.

E.    *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the currency of the United States of America, unless otherwise expressly provided.

F.        *Reference to the Debtors or the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Wind-Down Debtors, means the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.        *No Substantive Consolidation; Limited Administrative Consolidation.*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

H.        *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the relevant Plan provision shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of any inconsistency between the Plan, the Disclosure Statement, the Plan Supplement, and the Confirmation Order, the Confirmation Order shall control.  In the event of any inconsistency between the Plan and the Asset Purchase Agreement, the Asset Purchase Agreement shall control.  In the event of any inconsistency between the Confirmation Order and the Sale Order, the Sale Order shall control.

# ARTICLE II
## ADMINISTRATIVE CLAIMS AND
## PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, Statutory Fees, and Restructuring Expenses have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.        *Administrative Claims Not Assumed by the Purchaser.*

Except with respect to those Administrative Claims assumed by the Purchaser in connection with the Asset Sale, which are subject to the terms of the Sale Order and Asset Purchase Agreement, unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Wind-Down Debtors, as applicable, or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

16

Except with respect to Administrative Claims that are Professional Fee Claims or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Wind-Down Debtors no later than the Administrative Claims Bar Date. **Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, or their property, and such Administrative Claims shall be deemed released and extinguished as of the Effective Date without the need for any objection from the Debtors or the Wind-Down Debtors or any notice to or action, order, or approval of the Bankruptcy Court.** Objections to such requests must be Filed and served on the Wind-Down Debtors and the requesting party by the Administrative Claims Objection Deadline. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

For the avoidance of doubt, any dispute with respect to the amount of an Assumed Liability (as defined in the Asset Purchase Agreement) under the Asset Purchase Agreement shall be resolved between the Purchaser and the Holder of such Assumed Liability.

B.      *Professional Fee Claims.*

        1.      <u>Final Fee Applications and Payment of Professional Fee Claims.</u>

All final requests for payment of Professional Fee Claims incurred for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five days after the Effective Date (except as otherwise provided in Article II.B.5 of this Plan). All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Debtors or the Wind-Down Debtors, as applicable, shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

        2.      <u>Professional Fee Escrow Account.</u>

On the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Wind-Down Debtors using Cash on hand. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors, as applicable. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Wind-Down Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed, or otherwise payable pursuant to Article II.B.4 of this Plan. When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account (the "<u>Professional Fee Escrow Remainder</u>") shall promptly be distributed to the Wind-Down Reserve, without any further action or order of the Bankruptcy Court. For the avoidance of doubt, the Professional Fee Escrow Remainder shall not be distributed to the Wind-Down Reserve until all reasonable and

documented legal, professional, or other fees and expenses related to administration of the Chapter 11 Cases, implementation of the Plan and Consummation incurred by the Debtors and/or the Committee have been paid, including in accordance with Article II.B.4. of this Plan.

      3.   Professional Fee Amount.

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five Business Days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or the Wind-Down Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount estimated as of the Effective Date shall be utilized by the Debtors or the Wind-Down Debtors, if applicable, to determine the amount to be funded to the Professional Fee Escrow Account.

      4.   Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors and/or the Wind-Down Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to administration of the Chapter 11 Cases, implementation of the Plan and Consummation incurred by the Debtors and/or the Committee. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

      5.   Substantial Contribution.

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors, the Committee, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

*C.*    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

*D.*    *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code (collectively, "Quarterly Fees"), before the Effective Date shall be paid by the Debtors on the Effective Date. On and after the Effective Date, the Debtors, the Wind-Down Debtors, and any entity making disbursements on behalf of any Debtor or any Wind-Down Debtor or on account of an obligation of any Debtor or any Wind-Down Debtor (each, a "Disbursing Entity"), shall be jointly and severally liable to

pay Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due before the Effective Date when they become due using UST Form 11-MOR.  After the Effective Date, the Debtors, the Wind-Down Debtors, and the Disbursing Entities shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each of the Debtors, the Wind-Down Debtors and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first.  The U.S. Trustee shall not be required to file any Administrative Claim in the cases and shall not be treated as providing any release under the Plan.

E.      *Restructuring Expenses.*

On the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall pay in full in Cash any outstanding Restructuring Expenses without any requirement to File retention applications, fee applications, Proofs of Claim, or any other applications in the Chapter 11 Cases, and without any requirement of further notice or Bankruptcy Court review or approval.  Such Restructuring Expenses shall be Allowed as Administrative Claims upon incurrence and shall not be subject to any offset, defense, counter-claim, reduction, or credit.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Except for the Claims addressed in Article II of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

B.      *Summary of Classification.*

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is set forth in the following chart.  This Plan constitutes a separate chapter 11 plan for each Debtor, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors.  Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, Professional Fee Claims, Statutory Fees, and Restructuring Expenses as described in Article II.  Certain of the Debtors may not have Holders of Claims against or Interests in the Debtors in a particular Class or Classes, and such Claims against or Interests in the Debtors shall be treated as set forth in Article III.E hereof.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Term Loan Secured Claims | Impaired | Entitled to Vote |
| 4 | Term Loan Deficiency Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.      *Treatment of Claims and Interests.*

Except to the extent that the Debtors or the Wind-Down Debtors, as applicable, and a Holder of an Allowed Claim agree to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such Holder's Allowed Claim.  Unless otherwise indicated, each Holder of an Allowed Claim shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim becomes Allowed, or as soon as reasonably practicable thereafter.  In no event shall any Holder of a Claim receive more than such Holder's Allowed amount on account of such Claim.

1.   Class 1 – Other Secured Claims

(a)     *Classification*: Class 1 consists of all Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or Wind-Down Debtors, as applicable:

(i)      payment in full in Cash of such Holder's Allowed Other Secured Claim; or

(ii)     the Collateral securing such Holder's Allowed Other Secured Claim.

(c)     *Voting*: Class 1 is Unimpaired under the Plan.  Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan.

2.   Class 2 – Other Priority Claims

(a)     *Classification*: Class 2 consists of all Other Priority Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor or Wind-Down Debtor:

(i)      payment in full in Cash; or

(ii)    such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)    *Voting*: Class 2 is Unimpaired.  Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

3.   Class 3 – Term Loan Secured Claims

(a)    *Classification*:  Class 3 consists of the Term Loan Secured Claims.

(b)    *Allowance*:  The Term Loan Secured Claims, if any, shall be deemed Allowed in an amount equal to the value of any Collateral for the Term Loans that does not constitute an Acquired Asset (as defined under the Asset Purchase Agreement).

(c)    *Treatment*:  Except to the extent that a Holder of an Allowed Term Loan Secured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Term Loan Secured Claim shall receive its Pro Rata share of the proceeds of any Collateral for the Term Loans, if any.

(d)    *Voting*:  Class 3 is Impaired.  Holders of Allowed Term Loan Secured Claims are entitled to vote to accept or reject the Plan.

4.   Class 4 – Term Loan Deficiency Claims

(a)    *Classification*:  Class 4 consists of the Term Loan Deficiency Claims.

(b)    *Allowance*:  The Term Loan Deficiency Claims, if any, shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the Term Loan Credit Agreement, plus accrued and unpaid interest on such principal amount and any other premiums, fees, costs, or other amounts due and owing pursuant to the Term Loan Credit Agreement as of the Petition Date with respect to the Term Loan Claims, reduced by the amount credit bid in connection with the Asset Sale and the amount of Term Loan Secured Claims.

(c)    *Treatment*:  Except to the extent that a Holder of an Allowed Term Loan Deficiency Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Term Loan Deficiency Claim shall receive its share of the Distributable Proceeds attributable to each applicable Debtor, if any, in accordance with the Remaining Waterfall Recovery Allocation.

(d)    *Voting*:  Class 4 is Impaired.  Holders of Allowed Term Loan Deficiency Claims are entitled to vote to accept or reject the Plan.

5.   Class 5 – General Unsecured Claims

(a)    *Classification*:  Class 5 consists of the General Unsecured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or after the Effective Date, each

Holder of an Allowed General Unsecured Claim shall receive its share of the Distributable Proceeds attributable to each applicable Debtor, if any, in accordance with the Remaining Waterfall Recovery Allocation.

(c)     *Voting*: Class 5 is Impaired. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.   <u>Class 6 – Intercompany Claims</u>

(a)     *Classification*: Class 6 consists of Intercompany Claims.

(b)     *Treatment*: On the Effective Date, each Allowed Intercompany Claim shall, at the election of the applicable Debtor or Wind-Down Debtors, be:

(i)      converted to equity;

(ii)     otherwise set off, settled, distributed, contributed, cancelled, or released; or

(iii)    otherwise addressed at the option of the Debtors or Wind-Down Debtors, as applicable, without any distribution, in each case, in accordance with the Transaction Steps Memorandum.

(c)     *Voting*: Class 6 is either Unimpaired, and such Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Allowed Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.   <u>Class 7 – Intercompany Interests.</u>

(a)     *Classification*: Class 7 consists of all Intercompany Interests.

(b)     *Treatment*: On the Effective Date, each Allowed Intercompany Interest shall, at the election of the applicable Debtor or Wind Down Debtors, be:

(i)      set off, settled, addressed, distributed, contributed, merged, cancelled, or released; or

(ii)     otherwise addressed at the option of the Debtors or Wind-Down Debtors, as applicable, without any distribution, in each case, in accordance with the Transaction Steps Memorandum.

(c)     *Voting*: Class 7 is either Unimpaired, and such Holders of Allowed Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Allowed Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Intercompany Interests are not entitled to vote to accept or reject the Plan.

8. <u>Class 8 – Equity Interests.</u>

(a)    *Classification*:  Class 8 consists of all Equity Interests.

(b)    *Treatment*:  On the Effective Date, and without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, members, shareholders or officers of any Debtor or Wind-Down Debtor, as applicable, all Equity Interests shall be cancelled, and the Holders thereof shall not receive or retain any property on account of such interests under the Plan.

(c)    *Voting*:  Class 8 is Impaired.  Holders of Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

9. <u>Class 9 – Section 510(b) Claims</u>

(a)    *Classification*:  Class 9 consists of the Section 510(b) Claims.

(b)    *Treatment*:   On the Effective Date, all Section 510(b) Claims against any applicable Debtor shall be cancelled, released, and extinguished and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of such Section 510(b) Claims.

(c)    *Voting*:  Class 9 is Impaired.  Holders of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

D.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.    *Elimination of Vacant Classes.*

Any Class of Claims against or Interests in the Debtors that does not have a Holder of an Allowed Claim or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims against or Interests in the Debtors.  The Debtors reserve the right to modify the Plan in accordance with Article X to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires

modification, including by modifying the treatment applicable to a Class of Claims against or Interests in the Debtors to render such Class of Claims against or Interests in the Debtors Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.    *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.  Pursuant to section 510 of the Bankruptcy Code, the Plan Administrator reserves the right to seek to reclassify an Allowed Claim in accordance with any contractual legal or equitable subordination relating thereto.

H.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims against or Interests in the Debtors, or any Class of Claims against or Interests in the Debtors, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### ARTICLE IV
### MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

The Plan incorporates certain settlements of issues among the Debtors and various parties in interest, including the Consenting Prepetition Term Lenders.  As among the settlement parties, the applicable provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved among such parties pursuant to the Plan.  Subject to Article VI hereof, all Plan distributions made to Holders of Allowed Claims that are settlement parties are intended to be and shall be final.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement.  All distributions made to Holders of Allowed Claims, in any Class, are intended to be and shall be final.

B.    *Asset Sale.*

The implementation of the Asset Sale shall be addressed in the Sale Order and will be subject to the terms of the Asset Purchase Agreement.  The Distributable Proceeds remaining following consummation of the Asset Sale shall be distributed pursuant to and in accordance with the Plan.

C.    *Wind-Down*

    1.    <u>Wind-Down Transactions.</u>

On or before the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors and Plan Administrator, as applicable, shall take all applicable actions set forth in the Transaction Steps Memorandum and may take any additional action as may be necessary or appropriate to

effectuate the Wind-Down, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Wind-Down that are consistent with and pursuant to the terms and conditions of the Plan and Transaction Steps Memorandum, which transactions may include, as applicable and without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and Transaction Steps Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (c) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Transaction Steps Memorandum, and (if applicable) the Asset Purchase Agreement and having other terms to which the applicable parties agree; and (d) all other actions that the applicable Wind-Down Debtor or the Plan Administrator determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan (including the Transaction Steps Memorandum).

All Holders of Claims receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan (including the Transaction Steps Memorandum), including the Wind-Down, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

2.    <u>Sources of Consideration for Plan Distributions.</u>

The Plan Administrator shall fund distributions to Holders of Allowed Term Loan Secured Claims with the proceeds of any Collateral for the Term Loans and to Holders of Allowed Term Loan Deficiency Claims and Holders of Allowed General Unsecured Claims under the Plan with the Distributable Proceeds (if any) and in accordance with the Waterfall Recovery.

3.    <u>Wind-Down Debtors.</u>

(a)    Wind-Down Debtors.

After the Effective Date, the Wind-Down Debtors shall be responsible for purposes of (1) winding down the Debtors' remaining businesses and affairs, if any, as expeditiously as reasonably possible and liquidating any assets, if any, held by the Wind-Down Debtors after the Effective Date, (2) performing the Debtors' obligations under the Asset Purchase Agreement and any related agreements entered into in connection therewith (to the extent agreed by the Wind-Down Debtors), including the Transition Services Agreement (as defined in the Asset Purchase Agreement), (3) resolving any Disputed Claims, (4) making distributions on account of Allowed Claims in accordance with the Plan, (5) filing appropriate tax returns, and (6) administering the Plan. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings

pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to the Asset Purchase Agreement, a prior order or the Plan, the Wind-Down Debtors specifically retain and reserve the right to assert, after the Effective Date, any and all of the Retained Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan; *provided* that any proceeds received by the Debtors or the Wind-Down Debtors, as applicable, on account of Causes of Action assigned to the Purchaser, shall be immediately transferred to the Purchaser.

(b)     Wind-Down Debtors' Assets.

On the Effective Date, the Wind-Down Debtors shall become successors to the Debtors' rights, title, and interests to any Estate assets remaining following the closing of the Asset Sale, which shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and Consummation of the Plan. The Wind-Down Debtors will not conduct business operations other than as necessary to wind down such operations and will be charged with winding down the Debtors' Estates. The Wind-Down Debtors shall be managed by the Plan Administrator. The Wind-Down Debtors shall be administered in accordance with the terms of the Plan Administrator Agreement and shall be subject to the Wind-Down Budget. Any distributions to be made under the Plan shall be made by the Plan Administrator or its designee. The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan, the Confirmation Order, and the Plan Administrator Agreement.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtors and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and of the Plan Administrator Agreement, compromise or settle any Wind-Down Debtors' Assets remaining with the Wind-Down Debtors as a successor to the Debtors. On and after the Effective Date, the Wind-Down Debtors and the Plan Administrator may, without further Bankruptcy Court approval, commence, litigate, and settle any Retained Causes of Action or Claims relating to any Wind-Down Debtors' Assets remaining with the Wind-Down Debtors as a successor to the Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors and the Plan Administrator on or after the Effective Date, except as otherwise expressly provided for herein and in the Plan Administrator Agreement. All of the Wind-Down Debtors' activities shall be subject to the Wind-Down Budget. The Wind-Down Debtors shall be entitled to enforce all defenses and counterclaims to any and all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

On and after the Effective Date, except as otherwise provided in the Plan, each Wind Down Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

The Wind-Down Debtors shall be deemed to be substituted as plaintiff, defendant, or in any other capacity for the Debtors and the Committee, as applicable, in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Wind-Down Debtors' Asset without the need for filing any motion for such relief. On the Effective Date, the Debtors and the Plan Administrator shall execute the Plan Administrator Agreement and shall have established the Wind-Down Debtors pursuant hereto. In the

event of any conflict between the terms of this Article IV.C and the terms of the Plan Administrator Agreement, the terms of the Plan Administrator Agreement shall control.

Notwithstanding any prohibition on assignability under applicable nonbankruptcy law, on the Effective Date and thereafter, if additional Wind-Down Debtors' Assets become available, such additional Wind-Down Debtors' Assets, subject to this Plan, the Confirmation Order, and the Plan Administrator Agreement, as applicable, shall be treated as if they were transferred to (as applicable) and vested in the applicable Wind-Down Debtor as a successor to the applicable Debtor with all of attendant rights, title, and interests in and to all of the Wind-Down Debtors' Assets, in accordance with section 1141 of the Bankruptcy Code.  At such time when any of the Wind-Down Debtors' Assets vest in the Wind-Down Debtors, all such assets shall automatically vest in the Wind-Down Debtors free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims as set forth herein and the Wind-Down Debtors' Expenses as set forth herein and in the Plan Administrator Agreement.

(c)    Administrative Claims Reserve

On the Effective Date, the Wind-Down Debtors shall establish the Administrative Claims Reserve by depositing Cash in the amount of the Administrative Claims Reserve Amount into the Administrative Claims Reserve (and the Plan Administrator shall deposit Cash into or withdraw Cash from the Administrative Claims Reserve if the Administrative Claims Reserve Amount changes at any time).  The Cash in the Administrative Claims Reserve shall be used to pay Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims.  Any amounts remaining in the Administrative Claims Reserve after payment of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims shall promptly be transferred to the Wind-Down Reserve without further action or order of the Bankruptcy Court.  For the avoidance of doubt, any Allowed Administrative Expense Claims, Allowed Priority Tax Claims or Allowed Other Priority Claims that are Assumed Liabilities (as defined in the Asset Purchase Agreement) shall be satisfied under the Asset Purchase Agreement and not from Cash in the Administrative Claims Reserve.

(d)    Wind-Down Reserve

Any contrary provision hereof notwithstanding, following the occurrence of the Effective Date, (i) any Cash held by the Wind-Down Debtors in excess of the aggregate amount set forth in the Wind-Down Budget and (ii) any amounts remaining in the Wind-Down Reserve after entry of a final decree closing the last of the Chapter 11 Cases shall be payable to the Purchaser in accordance with the Asset Purchase Agreement.

(e)    Appointment of Plan Administrator.

The Plan Administrator shall be appointed by the Debtors, in consultation with the Committee.  The appointment of the Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.  The Plan Administrator shall administer the distributions to Holders of Allowed Claims to the extent provided under the Plan and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of pursuing Retained Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan.

As set forth below, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, board of directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers,

and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order. On the Effective Date, the Persons acting as managers, directors, and officers of the Debtors and/or Wind-Down Debtors, as applicable, except Ronald J. Bienias who will serve as Chief Restructuring Officer for each of the Wind-Down Debtors and Brian C. Maloney who will serve as Interim Chief Financial Officer and Secretary for each of the Wind-Down Debtors, shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors, and shall succeed to the powers of the Debtors' and/or Wind-Down Debtors', as applicable, managers, directors, and officers.

In accordance with the Plan Administrator Agreement, the Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan Administrator Agreement, and (ii) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve.

(f)     Responsibilities of Plan Administrator.

The rights, powers, privileges, obligations, and compensation of the Plan Administrator shall be set forth in the Plan Administrator Agreement, which shall be filed as part of the Plan Supplement.

(g)     Dissolution of Boards of the Debtors.

As of the Effective Date, the existing board of directors or managers, as applicable, of any Debtor shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or members of any Debtor, except Ronald J. Bienias who will serve as Chief Restructuring Officer for each of the Wind-Down Debtors and Brian C. Maloney who will serve as Interim Chief Financial Officer and Secretary for each of the Wind-Down Debtors, shall be dismissed without any further action required on the part of any such Debtor, the equity holders of such Debtor, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor. Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Wind-Down Debtors with respect to their affairs. Subject to the foregoing and in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind-down and dissolve any of the Wind-Down Debtors and shall: (a) file a certificate of dissolution for any of the Wind-Down Debtors together with all other necessary corporate and company documents, to effect the dissolution of any of the Wind-Down Debtors under the applicable laws of each Wind-Down Debtor's state of formation; (b) complete and file all final or otherwise required federal, state, and local tax returns and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Debtors or the Estates before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

The filing by the Plan Administrator of any of the Wind-Down Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of the Wind-Down Debtors or any of their Affiliates.

(h)    Wind-Down Debtors' Expenses.

The payment of the Wind-Down Debtors' Expenses shall be subject to the Wind-Down Budget.

(i)    Insurance.

The Plan Administrator may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Plan Administrator subject to the Wind-Down Budget.

To the extent any current or former directors or officers of the Debtors provide assistance to the Wind-Down Debtors after the Effective Date of the Plan, the Wind-Down Debtors will provide such directors and officers with reasonable and customary indemnification, exculpation, and insurance coverage with respect to such services, consistent with the indemnification, exculpation, and insurance coverage provided to the Plan Administrator and subject to the Wind-Down Budget.

(j)    Fiduciary Duties of the Plan Administrator.

Pursuant hereto and to the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that are entitled to receive distributions pursuant to the Plan.

(k)    Dissolution of the Wind-Down Debtors.

The Wind-Down Debtors will dissolve on the earlier of: (i) (A) the final liquidation, administration, and distribution of the Wind-Down Debtors' Assets in accordance with the terms of the Plan Administrator Agreement and the Plan, and the full performance of all other duties and functions as set forth herein or in the Plan Administrator Agreement and (B) the Chapter 11 Cases of the Debtors have been closed; or (ii) the Plan Administrator determines in its reasonable judgment that the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to him or her under the Plan, the Confirmation Order, and/or the Plan Administrator Agreement. After (i) the final distributions pursuant hereto, (ii) the Filing by or on behalf of the Wind-Down Debtors of a certification of dissolution with the Bankruptcy Court, and (iii) any other action deemed appropriate by the Plan Administrator, the Wind-Down Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions.

D.    *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) selection of the Plan Administrator; (2) implementation of the Wind-Down Transactions (including the steps set forth in the Transaction Steps Memorandum); (3) funding of all applicable escrows and accounts; and (4) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Wind-Down Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). On the Effective Date, all matters provided for in the Plan involving the corporate or organizational structure of the Debtors or the Wind-Down Debtors, as applicable, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equityholders, members, directors, or officers of the Debtors or the Wind-Down Debtors, as applicable. On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed,

to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors. The authorizations and approvals contemplated by this Article IV.D shall be effective notwithstanding any requirements under nonbankruptcy law.

E.    *Cancellation of Securities and Agreements.*

Except as otherwise specifically provided for in the Plan (or to the extent otherwise assigned to the Purchaser, as set forth in the Asset Purchase Agreement, pursuant to the Sale Order) on the Effective Date: (i) the outstanding obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other Securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim against or Interest in the Debtors shall be cancelled and deemed surrendered as to the Debtors, and the Debtors or the Wind-Down Debtors, as applicable, shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors or the Wind-Down Debtors, as applicable, pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised. Notwithstanding the foregoing, no Executory Contract or Unexpired Lease that has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code shall be terminated or cancelled on the Effective Date.

F.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Wind-Down Debtors and the Plan Administrator, as applicable, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Wind-Down in the name of and on behalf of the Wind-Down Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

G.    *Exemption from Certain Taxes and Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor, as applicable, or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Wind-Down Debtors; (2) the Wind-Down Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or

governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code (to the extent applicable), and shall, to the extent required by that section, (a) forego the imposition or collection of any such tax, fee, or governmental assessment, and (b) accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

H.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan or pursuant to a Final Order, and the Asset Purchase Agreement, each Wind-Down Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan or pursuant to a Final Order (including the Final DIP Order), or as assigned and transferred pursuant to the Asset Purchase Agreement, which, in each case, shall be deemed released and waived by the Debtors and the Wind-Down Debtors as of the Effective Date.

The Wind-Down Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the Final DIP Order) or as assigned or transferred pursuant to the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan or pursuant to a Final Order (including the Final DIP Order), or as assigned and transferred pursuant to the Asset Purchase Agreement. Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Wind-Down Debtor, without the need for any objection or responsive pleading by the Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** The Wind-Down Debtors may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or the Wind-Down Debtors, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Final DIP Order), the Wind-Down Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Wind-Down Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the

Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the Final DIP Order), any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise expressly provided in the Plan, including Article VIII of the Plan. The Wind-Down Debtors or the Plan Administrator, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all Causes of Action that belong to the Debtors or Wind-Down Debtors, as applicable.  The Wind-Down Debtors or the Plan Administrator, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action that belong to the Debtors or Wind-Down Debtors, as applicable, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.*      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan; (ii)   is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is to be assumed by the Debtors and assigned to another third party in connection with the Asset Sale, including the Purchaser as set forth in the Asset Purchase Agreement approved pursuant to the Sale Order; (v) is a contract, instrument, release, or other agreement or document entered into in connection with the Plan; or (vi) is a D&O Liability Insurance Policy.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, or the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to the Purchaser pursuant to the Asset Purchase Agreement and any related documents relating to the Asset Sale.  Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Wind-Down Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors.

The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases identified in this Article V of the Plan and in the Plan Supplement at any time through and including

ninety-days after the Closing Date (as defined in the Asset Purchase Agreement) of the Asset Sale. The Debtors or the Wind-Down Debtors, as applicable, shall provide notice of any amendments to the Schedule of Assumed Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby. For the avoidance of doubt, this Article V relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Asset Purchase Agreement and the Sale Order.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contract or Unexpired Lease to the extent of applicable law. Without limiting the general nature of the foregoing, and solely to the extent afforded by applicable law, the Debtors and the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased or services previously received by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtors and the Wind-Down Debtors, as applicable, no later than the later of (i) the Claims Bar Date, or (ii) 11:59 p.m., prevailing Eastern Time, on the date that is thirty days after the later of (a) entry of an order approving the rejection of any Executory Contract or Unexpired Lease of the Debtors or (b) the effective date of rejection of any Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors no later than seven days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will, absent further order of the Bankruptcy Court to the contrary, be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind-Down Debtors, or the property for any of the foregoing without the need for any objection by the Debtors or the Wind-Down Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall, absent further order of the Bankruptcy Court to the contrary, be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection by any Debtor of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor in accordance with Article III.C of the Plan, except as otherwise provided by order of the Bankruptcy

Court; *provided* that all rights of counterparties to the Debtors' Executory Contracts or Unexpired Leases that rejected to file a motion to seek Administrative Claim priority are preserved.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan (it being understood that the assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Assumption Procedures set forth and defined in the Bidding Procedures Order shall be authorized and governed by the Sale Order, and, in the event of any inconsistency between this Plan and Sale Order concerning the assumption and assignment of any such Executory Contract or Unexpired Lease, the terms of the Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree.

For the avoidance of doubt, all Sale Cure Claims and any related objections with respect to Executory Contracts or Unexpired Leases proposed to be assumed or assumed and assigned by the Purchaser in connection with the Asset Sale shall be or have been satisfied and resolved in connection with the Asset Sale and pursuant to the Sale Order and the terms of the Asset Purchase Agreement, and all Cure Claims and any related objections with respect to Executory Contracts or Unexpired Leases proposed to be assumed or assumed and assigned by the Debtors under the Plan shall be or have been satisfied and resolved in connection with the Plan and pursuant to the Confirmation Order.

As set forth in the Bidding Procedures, on **December 11, 2024**, the Debtors distributed, or caused to be distributed, the Cure Notice of proposed assumption or assumption and assignment and proposed amounts of Cure Claims or Sale Cure Claims to the applicable third parties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related Cure or Sale Cure amount must have been Filed, served, and actually received by the parties listed on such Cure Notice no later than **December 26, 2024, at 5:00 p.m. (Eastern Time)**.

Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or amount of any Cure Claim or Sale Cure Claim will be deemed to have assented to such assumption or assumption and assignment and the proposed amount of the Cure Claim or Sale Cure Claim. In the event of a dispute regarding: (i) the amount of any Cure Claim or Sale Cure Claim, (ii) the ability of the Debtors, the Wind-Down Debtors, the Purchaser, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned, as applicable), or (iii) any other matter pertaining to assumption or assignment, then any disputed Cure or Sale Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made as soon as reasonably practicable following, and in accordance with, the entry of a Final Order of the Bankruptcy Court resolving such dispute or as may be agreed upon by the Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, and the counterparty to the Executory Contract or Unexpired Lease, and any such unresolved dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date. Notwithstanding anything to the contrary herein, the rights of any party to an assumed Executory Contract or Unexpired Lease to seek payment of any obligation arising under such Executory Contract or Unexpired Lease after December 26, 2024, (i.e., the date of the Cure Notice) and before the effective date of assumption are fully preserved.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the

filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which a cure has been fully paid or paid in an amount agreed by the non-Debtor contract party shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder. Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed or assumed and assigned to the Purchaser, solely to the extent set forth in the Asset Purchase Agreement, and explicitly provided in the Schedule of Assumed Executory Contracts and Unexpired Leases, all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims; *provided* that any insurance policies that are not assumed and assigned to the Purchaser shall be assumed by the Debtors for the sole purpose of resolving any Claims covered by such insurance policies, resolving any Causes of Action retained in connection with such insurance policies, and collecting any and all outstanding deposits, restricted cash, and letters of credit related thereto to the extent reasonably necessary to implement the Wind-Down in accordance with the Plan.

Nothing in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or the Purchaser, solely to the extent assumed and assigned to the Purchaser under the Asset Purchase Agreement) or draw on any Collateral or security therefor. For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a Cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing Cure amounts or Claims.

F.    *D&O Liability Insurance Policies.*

The D&O Liability Insurance Policies shall be assumed by the Debtors or the Wind-Down Debtors, as applicable, effective as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies, which shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, the D&O Liability Insurance Policies will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policies. In addition, after the Effective Date, none of the Debtors or the Wind-Down Debtors, as applicable, shall terminate or otherwise reduce coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date.

*G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

*H.      Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

*I.      Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.      Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Disbursing Agent on behalf of the Debtors.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on

the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent.*

Distributions under the Plan shall be made by the Disbursing Agent.  The Debtors, the Wind-Down Debtors, and the Disbursing Agent, as applicable, shall not be required to give any bond or surety or other Security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Disbursing Agent is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtors.

C.    *Rights and Powers of the Disbursing Agent.*

1.    <u>Powers of the Debtors and the Disbursing Agent.</u>

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments; and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    <u>Fees of Disbursing Agent and Expenses Incurred on or After the Effective Date.</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Wind-Down Debtors solely in accordance with the Wind-Down Budget.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    <u>Record Date for Distributions.</u>

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed, and the Debtors, and the Disbursing Agent, or any other party responsible for making distributions, shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

2.    <u>Delivery of Distributions in General.</u>

(a)    <u>Payments and Distributions on Disputed Claims.</u>

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall in the reasonable discretion of the Disbursing Agent, be deemed to have been made on the Effective Date unless the Disbursing Agent and the Holder of such Claim agree otherwise.

(b)     Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors, the Wind-Down Debtors, or the Disbursing Agent, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

(c)     Delivery of Distributions.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims on the Effective Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in, as applicable, any Proof of Claim Filed by such Holder, or, if no Proof of Claim has been filed, the address set forth in the Schedules.

Notwithstanding any provision of the Plan to the contrary, the Term Loan Agent shall be deemed to be the Holder of all Allowed Term Loan Secured Claims and Allowed Term Loan Deficiency Claims for purposes of distributions to be made hereunder, and all distributions on account of such Allowed Term Loan Secured Claims and Allowed Term Loan Deficiency Claims shall be made to the Term Loan Agent. As soon as practicable following compliance with the requirements set forth in this Article VI, the Term Loan Agent shall arrange to deliver or direct the delivery of such distributions, if any, to or on behalf of the Holders of Allowed Term Loan Secured Claims and Allowed Term Loan Deficiency Claims in accordance with the terms of the Term Loan Credit Agreement and the Plan. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Term Loan Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the Term Loan Agent.

3.     <u>Minimum Distributions.</u>

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of less than $50 in value (whether Cash or otherwise).

4.     <u>Undeliverable Distributions and Unclaimed Property.</u>

With respect to any undeliverable distribution, no distribution to the relevant Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Wind-Down Debtors and shall become distributable to Holders of Claims pursuant to Article VI, automatically and without need for a further order by the Bankruptcy Court, and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

5. <u>Manner of Payment Pursuant to the Plan.</u>

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent, by check, automated clearing house, credit card, or wire transfer, or as otherwise provided in the applicable agreements, at the sole and exclusive discretion of the Disbursing Agent.

E.      *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, delaying distributions pending receipt of information or forms necessary to facilitate such distributions (including the determination of any withholding in connection therewith), or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent an IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8, as applicable.

F.      *Allocation of Plan Distributions Between Principal and Interest.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of such Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

G.      *Setoffs and Recoupment.*

Except as otherwise expressly provided herein, the Debtors and the Wind-Down Debtors, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors or the Wind-Down Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the Holder of such Claim.  The Debtors and the Wind-Down Debtors, as applicable, shall provide notice to the affected claimant of any setoff and that such claimant may challenge any setoff made by the Debtors or the Wind-Down Debtors in the Bankruptcy Court or any other court with jurisdiction.  Nothing in the Plan, the Confirmation Order, or the Plan Supplement, shall be deemed to affect, diminish, or impair any party's legal and equitable defenses and rights to setoffs and/or recoupment, and all such rights are expressly preserved; *provided* such party (i) asserted such right of setoff in a timely filed Proof of Claim or Cure Claim, as applicable or (ii) Filed a motion requesting the right to perform such setoff on or before the Effective Date.

*H.     No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in a Final Order, the Plan, or the Confirmation Order, or required by applicable bankruptcy and nonbankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

*I.     Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Petition Date.

*J.     Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties.

The Debtors and the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor, *provided* that the Debtors or the Wind-Down Debtors, as applicable, may file a notice of satisfaction or other pleading evidencing such satisfaction, and shall serve the same on the affected claimants, or seek an order of the Bankruptcy Court with respect to same, upon notice to the affected claimants.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2. Claims Payable by Insurance, Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, including the D&O Liability Insurance Policies, other non-Debtor payment agreements, or Collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such insurance policy, other non-Debtor payment agreement, or Collateral, as applicable.  To the extent that one or more of the Debtors' insurers or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or such Collateral or proceeds from such Collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Notwithstanding anything to the contrary in this Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered

party of any of the Debtor's insurance policies with respect to such policies (including the D&O Liability Insurance Policies), nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under any insurance policy, applicable law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

K.      *Indefeasible Distributions.*

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Allowance of Claims.*

On and after the Effective Date, and except with respect to Claims that are Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court or that are Assumed Liabilities (as defined under the Asset Purchase Agreement) under the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases Allowing such Claim.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or has not been Allowed by a Final Order, is not considered Allowed.

For the avoidance of doubt, all Assumed Liabilities under the Asset Purchase Agreement shall be subject solely to the terms of the Asset Purchase Agreement and the Sale Order and shall not be subject to the terms of the Plan.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, by order of the Bankruptcy Court, shall have the authority with regard to all Claims that are not Allowed to File, withdraw, or litigate to judgment objections to Claims, and the sole authority (i) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court and (ii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

For the avoidance of doubt, all Assumed Liabilities under the Asset Purchase Agreement shall be subject solely to the terms of the Asset Purchase Agreement and the Sale Order and shall not be subject to the terms of the Plan.

C.      *Estimation of Claims.*

Before, on, or after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Wind-Down Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim.

D.      *Adjustment to Claims without Objection.*

Any Claim that has been paid or satisfied may be adjusted or expunged on the Claims Register by the Wind-Down Debtors without the Wind-Down Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtors.  **Except as provided herein, otherwise agreed upon by a claimant and the Debtors or Wind-Down Debtors (as applicable), or upon a motion to file a late Proof of Claim, any and all Proofs of Claim Filed after the Claims Bar Date and any and all requests for Administrative Claims filed after the Administrative Claims Bar Date shall, absent further order of the Bankruptcy Court to the contrary, be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

F.      *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, Debtors, or Wind-Down Debtors, as applicable, and any such new or amended Claim Filed shall, absent further order of the Bankruptcy Court to the contrary, automatically be deemed disallowed in full and expunged without any further action; *provided* that a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late Filing.

G.      *No Distributions Pending Allowance.*

If an objection to a Claim or any portion thereof is Filed as set forth in the Plan, no payment or distribution provided under the Plan shall be made on account of such Claim or any portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions, if any, shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided in Article III.C of the Plan.

I.      *Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the applicable Debtor or Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

B.      *Release of Liens.*

**For the avoidance of doubt, upon consummation of the Asset Sale as set forth in the Asset Purchase Agreement, the assets sold in such Asset Sale shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, interests, or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Sale Order and the Asset Purchase Agreement, as applicable.**

**Without limiting the foregoing, except as otherwise specifically provided in the Plan, the Plan Supplement or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the effectuation of the Wind-Down Transactions and applicable distributions made pursuant to the Plan, and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date,**

and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Claim (and the applicable agents for such Holder) shall be authorized and directed to release any Collateral or other property of any Debtor (including any Cash Collateral and possessory Collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors or the Wind-Down Debtors, as applicable, to evidence the release of such Lien pursuant to this section, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, mortgages, deeds of trust, pledges, and other security interests pursuant to this section and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

To the extent that any Holder of a Secured Claim that has been satisfied in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall, at the sole cost and expense of the Wind-Down Debtors take any and all steps reasonably requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.    *Releases by the Debtors*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by the Debtors, their Estates, the Wind-Down Debtors, and any person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or noncontingent, in law, equity, contract, tort or otherwise, that the Debtors, their Estates, the Wind-Down Debtors, including any successors to the Debtors or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court

restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into or Filing of the RSA, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Asset Sale, the Asset Purchase Agreement, the Sale Order, or any Wind-Down Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the DIP Facilities, the DIP Orders, the DIP Documents, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, the Asset Sale, the Asset Purchase Agreement, the Sale Order, the Filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Wind-Down Transaction, the Asset Purchase Agreement, the Sale Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims to receive distributions under the Plan or payment of any Cure Claim (including any Sale Cure Claim), or (iii) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' releases herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtors' releases herein are: (i) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtors' releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtors' releases herein against any of the Released Parties.

D.      *Releases by Holders of Claims and Interests.*

Notwithstanding anything contained in the Plan to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Cause of Action, directly or derivatively, by,

through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or noncontingent, in law, equity, contract, tort, or otherwise, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of the RSA, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Asset Sale, the Asset Purchase Agreement, the Sale Order, or any Wind-Down Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the DIP Documents, the DIP Orders, the DIP Facilities, the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, the Asset Sale, the Asset Purchase Agreement, the Sale Order, the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases set forth above do not (i) release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Wind-Down Transaction, the Asset Purchase Agreement, the Sale Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims to receive distributions under the Plan or payment of any Cure Claim (including any Sale Cure Claim), or (iii)  release any Claims or Causes of Action against any non-Released Party.

E.    *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claims and Cause of Action for any Claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or Filing of the Disclosure Statement, the Plan, the Plan Supplement, the Asset Sale, the Asset Purchase Agreement, the Sale Order, the DIP Facilities, the DIP Documents, the DIP Orders, or any Wind-Down Transaction, contract, instrument, release, or other agreement or document (including

providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Asset Sale, the Asset Purchase Agreement, the Sale Order, the DIP Facilities, the DIP Documents, the DIP Orders created or entered into during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding anything to the contrary herein, nothing in this Article VIII.E shall release or exculpate any Exculpated Party for any act or omission arising before the Petition Date or on or after the Effective Date.

F.    *Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims against or Interests in the Debtors that have been released or satisfied pursuant to the Plan or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Released Parties, or the Exculpated Parties (to the extent of the exculpation provided pursuant to the Plan with respect to the Exculpated Parties):  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims against or Interests in the Debtors; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims against or Interests in the Debtors; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims against or Interests in the Debtors; (iv) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims against or Interests in the Debtors unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, except to the extent that a right of setoff or subrogation is asserted in connection with a timely Filed Proof of Claim, a Cure Claim, or arises from any right of setoff, subrogation, or recoupment that a party to an Unexpired Lease may have under applicable bankruptcy or nonbankruptcy law; (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims against or Interests in the Debtors released or settled pursuant to the Plan (other than appeals of the Confirmation Order); and (vi) taking any actions to interfere with the implementation or Consummation of the Plan.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors until the closing or dismissal of the applicable Debtor's Chapter 11 Case, whichever is earlier.

G.      *Protection Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Subordination Rights.*

The classification and treatment of Claims under the Plan shall conform to the respective contractual, legal, and equitable subordination rights of such Claims, and any such rights shall be settled, compromised, and released pursuant to the Plan.

I.      *Document Retention.*

On and after the Effective Date, the Wind-Down Debtors or the Debtors, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors, subject to the applicable provisions of the Plan Administrator Agreement.

J.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (i) such Claim has been adjudicated as noncontingent; or (ii) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

K.      *Release of Preference Actions*

As of the Effective Date, the Debtors, on behalf of themselves and their Estates, shall be deemed to waive and release all Avoidance Actions arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law to the extent not acquired by the Purchaser in connection with the Asset Sale.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

a.      the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan, and such order shall have become a Final Order;

b.  the Debtors shall not be in default under the Final DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived or cured in a manner consistent with the Final DIP Order);

c.  the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Wind-Down Transactions) all Restructuring Expenses incurred or estimated to be incurred, through the Effective Date;

d.  the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

e.  all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

f.  no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and nonappealable order making illegal or otherwise restricting, preventing, or prohibiting the Consummation of the Plan;

g.  the conditions to effectiveness to the Asset Purchase Agreement shall have been duly satisfied or waived, and the Asset Sale shall have been consummated prior to (or shall be consummated simultaneously with) the Effective Date;

h.  the closing of the Asset Sale shall have occurred, and the Asset Purchase Agreement shall remain in full force and effect;

i.  the Debtors shall have performed all of their obligations through the Effective Date under any transition services agreement with the Purchaser in accordance with the Asset Purchase Agreement;

j.  the Wind-Down Reserve shall have been established and funded consistent with the Wind-Down Budget;

k.  the RSA shall be in full force and effect, no termination event or event that would give rise to a termination event under the RSA upon the expiration of the applicable grace period shall have occurred, and the RSA shall not have been validly terminated prior to the Effective Date; *provided* that this clause (k) will not be deemed unsatisfied if the RSA automatically terminates pursuant to section 13.05 therein;

l.  the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Wind-Down Transactions (and shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), and shall not have been terminated prior to the Effective Date: (a) if applicable, the Sale Order; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) to the extent not included in the foregoing, all financing documents needed to effectuate the Wind-Down Transactions; and (d) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Wind-Down Transactions); and

m. the Debtors shall have otherwise substantially consummated the applicable Wind-Down Transactions in a manner consistent in all respects with the Plan.

B.    *Waiver of Conditions.*

The conditions precedent to the Effective Date set forth in Article IX.A may be waived by the Debtors with the consent of the Required Consenting Lenders, and, with respect to Article IX.A (a), (e), and (h), the Committee, at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

C.    *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.    *Effect of Nonoccurrence of Conditions to the Effective Date.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) release any Liens, mortgages, deeds of trust, pledges, or other security interests against property of the Estates; (iii) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (iv) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect. Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Asset Sale under the Asset Purchase Agreement or the revocation of the Debtors' authority under the Sale Order to consummate such Asset Sale.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modifications and Amendments.*

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan, *provided* that such modifications are consistent with the Asset Purchase Agreement and Sale Order and implemented in accordance with the terms of the RSA. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, *provided* that any alterations, amendments or modifications are consistent with the Asset Purchase Agreement and Sale Order and implemented in accordance with the terms of the RSA. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X. Notwithstanding any other provision of this Plan, the Debtors shall consult the Committee on any modification of the Plan or Plan Supplement that materially affects the treatment of General Unsecured Claims or any other rights of Holders of General Unsecured Claims.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim against or Interest in the Debtors or Class of Claims against or Interests in the Debtors), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan (and not assumed in connection with the Asset Purchase Agreement and pursuant to the Sale Order), and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the maximum extent permitted under applicable law, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims against or Interests in the Debtors;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article X of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

51

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including any sale of the Debtors' real property, to the extent the Plan Administrator asks the Bankruptcy Court to approve such sale pursuant to section 363 of the Bankruptcy Code;

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     Enter an order or final decree concluding or closing any of the Chapter 11 Cases;

16.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

18.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     Hear and determine matters concerning section 1145 of the Bankruptcy Code;

23.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

24.     Enforce all orders previously entered by the Bankruptcy Court in these Chapter 11 Cases;

25.     Hear any other matter related to these Chapter 11 Cases not inconsistent with the Bankruptcy Code; and

26.     Enter an order concluding or closing the Chapter 11 Cases.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

*A.     Immediate Binding Effect.*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims against or Interests in the Debtors (irrespective of whether the Holders of such Claims against or Interests in the Debtors are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has voted on the Plan.

*B.     Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Wind-Down Debtors, and all Holders of Claims against or Interests in the Debtors receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Dissolution of Statutory Committees.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided* that, the Committee shall continue to exist after the Effective Date and have standing and a right to be heard for the following limited purposes and solely in accordance with the Committee's statutory and fiduciary duties given the facts and circumstances of these Chapter 11 Cases: (a) applications, and any relief related thereto, for compensation by Professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeal to which the Committee is a party.

D.      *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court enters the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims against or Interests in the Debtors, unless and until the Effective Date has occurred.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

F.      *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served, including via email in addition to any other method of service, on the parties listed below:

If to the Debtors:

AlixPartners, LLP
300 N. LaSalle Street, Suite 1800
Chicago, Illinois 60654
Attention:  Ronald J. Bienias
Email address:  jbienias@alixpartners.com

with copies to:

Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:  Chad J. Husnick, P.C., David R. Gremling, and Max M. Freedman
Email addresses:  chad.husnick@kirkland.com
                  dave.gremling@kirkland.com
                  max.freedman@kirkland.com

and

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention: Melissa Mertz
Email address: melissa.mertz@kirkland.com

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (which may be by email), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed. After the Effective Date, the Debtors shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.     *Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors, the Wind-Down Debtors and Plan Administrator, as applicable, shall be entitled to enforce the terms of the Confirmation Order, and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

H.     *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.     *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://www.donlinrecano.com/atd or the Bankruptcy Court's website at deb.uscourts.gov.

J.     *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (iii) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, therefore, they will not have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

L.      *Waiver.*

Each Holder of a Claim against or an Interest in the Debtors shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

[*Remainder of page intentionally left blank*]

Respectfully submitted,

Dated: March 25, 2025                    Oldco Tire Distributors, Inc.
                                         on behalf of itself and all other Debtors

                                         /s/ *Ronald J. Bienias*
                                         _____
                                         Name:        Ronald J. Bienias
                                         Title:       Chief Restructuring Officer
                                         Company:     Oldco Tire Distributors, Inc.