# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OLDCO TIRE DISTRIBUTORS, INC., *et al.*,[1] | ) | Case No. 24-12391 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MEMORANDUM OF LAW IN
## SUPPORT OF AN ORDER (I) APPROVING THE DEBTORS'
## DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING THE
## DEBTORS' AMENDED JOINT CHAPTER 11 PLAN (TECHNICAL MODIFICATIONS)

Anup Sathy, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
David R. Gremling (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    anup.sathy@kirkland.com
    chad.husnick@kirkland.com
    dave.gremling@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward A. Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
    tcairns@pszjlaw.com
    ecorma@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Oldco Tire Distributors, Inc. (4594); Oldco Holdings II, Inc. (4985); Oldco Holdings III, Inc. (0977); Oldco Holdings, Inc. (3406); Oldco Sourcing Solutions, LLC (5225); ATD Technology Solutions Inc. (N/A); Oldco FF Logistics, LLC (3334); Hercules Tire International Inc. (N/A); Oldco Town Holdings, LLC (7409); The Oldco Tire & Rubber Company (3365); Oldco Pros Francorp, LLC (1813); Oldcobuyer.com, LLC (9093); and Oldco Data and Analytics LLC (4992).  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 12200 Herbert Wayne Court, Huntersville, NC 28078.

# TABLE OF CONTENTS

RELIEF REQUESTED ........................................................................................................1

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ................................................................................................................3

I.      The Debtors' Chapter 11 Filings and the Marketing Process. .......................3

II.     The Special Committee's Investigation...........................................................5

III.    The Solicitation Process and Voting Results. ..................................................7

ARGUMENT....................................................................................................................10

I.      The Disclosure Statement Contains "Adequate Information" as Required by
        § 1125 and 1126 of the Bankruptcy Code and Satisfies Notice Requirements..........11

        A.      The Disclosure Statement Contains Adequate Information...................11

        B.      The Debtors Complied with Applicable Notice Requirements. ...........15

                1.      The Debtors Complied with the Notice Requirements Set Forth in
                        the Conditional Disclosure Statement Order and the Bankruptcy
                        Rules. ........................................................................................15

                2.      The Ballots Used to Solicit Holders of Claims Entitled to Vote on
                        the Plan Complied with the Conditional Disclosure Statement
                        Order. ........................................................................................16

                3.      The Debtors' Solicitation Period Complied with the Conditional
                        Disclosure Statement Order. ....................................................16

                4.      The Debtors' Vote Tabulation Procedures Complied with the
                        Conditional Disclosure Statement Order. ................................17

                5.      Solicitation of the Plan Complied with the Bankruptcy Code and
                        Was in Good Faith. ..................................................................17

II.     The Plan Satisfies the Requirements of § 1129 of the Bankruptcy Code. .................18

        A.      The Plan Complies with the Applicable Provisions of the Bankruptcy
                Code (§ 1129(a)(1)). ...........................................................................18

                1.      The Plan Satisfies the Classification Requirements of § 1122 of the
                        Bankruptcy Code. ....................................................................19

**Page(s)**

2.      The Plan Satisfies the Mandatory Plan Requirements of § 1123(a)
         of the Bankruptcy Code. .........................................................................21

3.      The Plan Complies with the Discretionary Provisions of § 1123(b)
         of the Bankruptcy Code. .........................................................................24

4.      The Plan Complies with § 1123(d) of the Bankruptcy Code....................40

B.      The Debtors Complied with the Applicable Provisions of the
         Bankruptcy Code (§ 1129(a)(2)).......................................................................41

1.      The Debtors Complied with § 1125 of the Bankruptcy Code. .................42

2.      The Debtors Complied with § 1126 of the Bankruptcy Code. .................43

C.      The Plan Is Proposed in Good Faith (§ 1129(a)(3)). .............................................44

D.      The Plan Provides That the Debtors' Payment of Professional Fees and
         Expenses Are Subject to Court Approval (§ 1129(a)(4)). ....................................45

E.      The Debtors Disclosed All Necessary Information Regarding Post-
         Effective Date Governance (§ 1129(a)(5)). ........................................................47

F.      The Plan Does Not Require Governmental Regulatory Approval
         (§ 1129(a)(6))......................................................................................................48

G.      The Plan Is in the Best Interests of All the Debtors' Creditors
         (§ 1129(a)(7))......................................................................................................48

H.      The Plan Is Confirmable Notwithstanding the Requirements of
         § 1129(a)(8) of the Bankruptcy Code. ................................................................49

I.      The Plan Provides for Payment in Full of All Allowed Priority Claims
         (§ 1129(a)(9))......................................................................................................50

J.      At Least One Class of Impaired, Non-Insider Claims Accepted the Plan
         (§ 1129(a)(10))....................................................................................................51

K.      The Plan Is Feasible (§ 1129(a)(11)). ..................................................................52

L.      All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)). ...........................54

M.      Sections 1129(a)(13) through 1129(a)(16) Do Not Apply to the Plan. .................55

N.      The Plan Satisfies the "Cram Down" Requirements of § 1129(b) of the
         Bankruptcy Code. ...............................................................................................55

**Page(s)**

1.     The Plan Does Not Unfairly Discriminate Under § 1129(B)(1) with Respect to the Impaired Classes That Have Not Voted to Accept the Plan ..................................................................................... 56

O.     The Plan Is Fair and Equitable (§ 1129(b)(2)(B)(ii)) ............................... 58

P.     The Plan Complies with the Other Provisions of § 1129 of the Bankruptcy Code (§ 1129(c)–(e)) ................................................................................... 60

**III.     The Waiver of a Stay of the Confirmation Order and the Proposed Modifications to the Plan Are Appropriate. .................................................. 61**

A.     Good Cause Exists to Waive the Stay of the Confirmation Order. ...................... 61

B.     Modifications to the Plan. ...................................................................... 62

**CONCLUSION** ............................................................................................ **63**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship*,
  190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.
  Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999) ..............................60

*In re Abbotts Dairies of Pa., Inc.*,
  788 F.2d 143 (3d Cir. 1986).....................................................................48

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007).......................................................51

*In re AeroCision Parent, LLC*,
  No. 23-11032 (KBO) (Bankr. D. Del. Mar. 4, 2024) ...............................37

*In re Aleris Int'l, Inc.*,
  No. 09-10478 (BLS) 2010 WL 349266 ...............................................60, 61

*In re Appgate, Inc.*,
  No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024) ..............................32

*In re Armstrong World Indus., Inc.*,
  348 B.R. 111 (D. Del. 2006)......................................................21, 22, 60, 62

*In re Aztec Co.*,
  107 B.R. 585 (Bankr. M.D. Tenn. 1989) ..................................................60

*Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999)...................................................................................51

*Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*,
  764 F.2d 406 (5th Cir. 1985) .....................................................................48

*In re Burns & Roe Enters., Inc.*,
  No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) ................65

*In re Capmark Fin. Grp. Inc.*,
  No. 09-13684 (CSS), 2011 WL 6013718 (Bankr. D. Del. Oct. 5, 2011) ...............56

*In re Casa Systems, Inc.*,
  No. 24-10695 (KBO) (Bankr. D. Del. June 3, 2024)................................37

*In re Century Glove, Inc.*,
  Civ. A. Nos. 90-400-SLR and 90-401-SLR, 1993 WL 239489 (D. Del.
  Feb. 10, 1993) ...........................................................................................48

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
860 F.2d 94 (3d Cir. 1988) ....................................................................... *passim*

*In re Chapel Gate Apartments, Ltd.*,
64 B.R. 569 (Bankr. N.D. Tex. 1986) ..................................................................49

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ........................................................29, 30, 60

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
699 F.2d 599 (2d Cir. 1983) ...............................................................................30

*In re Emerge Energy Servs. LP*,
No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5,
2019) .................................................................................................................37

*In re Exaeris, Inc.*,
380 B.R. 741 (Bankr. D. Del. 2008) ....................................................................30

*In re Exide Techs.*,
303 B.R. 48 (Bankr. D. Del. 2003) ......................................................................31

*In re Express OldCo Winddown, Inc.*,
No. 24-110831 (KBO) (Bankr. D. Del. Dec. 17, 2024)...........................................32

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans
Ltd. P'ship)*,
116 F.3d 790 (5th Cir. 1997) ..............................................................................48

*First Am. Bank of N.Y. v. Century Glove, Inc.*,
81 B.R. 274 (D. Del. 1988) .................................................................................15

*In re Flintkote Co.*,
486 B.R. 99 (Bankr. D. Del. 2012) ......................................................................55

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ..............................................................60

*Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*,
10 F.3d 944 (2d Cir. 1993)..................................................................................22

*In re Future Energy Corp.*,
83 B.R. 470 (Bankr. S.D. Ohio 1988)...................................................................49

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) ....................................................................21

Page(s)

*Gillman v. Cont'l Airlines (In re Cont'l Airlines)*,
203 F.3d 203 (3d Cir. 2000)...........................................................................39

*In re Glob. Safety Textiles Holdings LLC*,
No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009).............................65

*Hargreaves v. Nuverra Env't Sols., Inc. (In re Nuverra)*,
590 B.R. 75 (D. Del. 2018), *aff'd*, 834 F. App'x 729 (3d Cir. 2021), *as
amended* (Feb. 2, 2021) .....................................................................59, 60

*In re Hercules Offshore, Inc.*,
565 B.R. 732 (Bankr. D. Del. 2016) ........................................................33

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ............................................35, 37, 43

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987).................................................................22

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37
Bus. Park Assocs.)*,
987 F.2d 154 (3d Cir. 1993)...........................................................22, 59

*In re Johns-Manville Corp.*
68 B.R. 618 (Bankr. S.D.N.Y 1986)........................................................60

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988).................................................................55

*In re Lapworth*,
1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)...................................44

*In re Lason, Inc.*,
300 B.R. 227, 232 (Bankr. D. Del. 2003) .............................................51

*In re Lernout & Hauspie Speech Prods., N.V.*
301 B.R. 651 (Bankr. D. Del. 2003), *aff'd sub nom, In re Lernout & Hauspie
Speech Prod., N.V.* 308 B.R. 672 (D. Del. 2004) ................................60

*Liberty Nat'l Enters. v. Ambanc La Mesa L.P. (In re Ambanc La Mesa L.P.)*,
115 F.3d 650 (9th Cir. 1997)...........................................................59, 60

*In re Lisanti Foods, Inc.*,
329 B.R. 491 (Bankr. D. N.J. 2005) .................................................15, 49

*In re Louise's, Inc.*,
211 B.R. 798 (D. Del. 1997)...................................................................29

**Page(s)**

*In re Lucky Bucks, LLC*,
   No. 23-10758 (KBO) (Bankr. D. Del. July 28 2023) ............................................37

*In re Master Mortg. Inv. Fund, Inc.*,
   168 B.R. 930 (Bankr. W.D. Mo. 1994)................................................................31

*In re Mercy Hosp.*,
   No. 23-00623 (TJC), 2024 WL 2890139 (Bankr. N.D. Iowa 2024).......................35

*In re Metrocraft Pub. Serv., Inc.*,
   39 B.R. 567 (Bankr. N.D. Ga. 1984) ...................................................................16

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
   25 F.3d 1132 (2d Cir. 1994).................................................................................45

*In re Monnier Bros.*,
   755 F.2d 1336 (8th Cir. 1985) .............................................................................14

*In re MVK FarmCo LLC*,
   No. 23-11721 (LSS) (Bankr. D. Del. Mar. 29, 2024).............................................49

*Myers v. Martin (In re Martin)*,
   91 F.3d 389 (3d Cir. 1996).............................................................................28, 29

*In re Neff*,
   60 B.R. 448 (Bankr. N.D. Tex. 1985), *aff'd* .......................................................51

*In re NII Holdings, Inc.*,
   288 B.R. 356 (Bankr. D. Del. 2002) .....................................................................48

*In re Nutritional Sourcing Corp.*,
   398 B.R. 816 (Bankr. D. Del. 2008) .....................................................................21

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
   848 F.2d 414 (3d Cir. 1988).................................................................................15

*In re PC Liquidation Corp.*,
   383 B.R. 856 (E.D.N.Y. 2008) .............................................................................15

*In re Phoenix Petrol., Co.*,
   278 B.R. 385 (Bankr. E.D. Pa. 2001) .........................................................14, 15, 16

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
   761 F.2d 1374 (9th Cir. 1985) .............................................................................55

*In re Premier Int'l Holdings, Inc.*,
   2010 WL 2745964 No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del.
   Apr. 29, 2010 ....................................................................................................40

Page(s)

*In re Project Sage M Holdings Oldco, Inc.*,
No. 24-10425 (JTD) (Bankr. D. Del. June 18, 2024) ..............................................49

*In re Prussia Assocs.*,
322 B.R. 572 (Bankr. E.D. Pa. 2005) .....................................................................56

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000)...............................................................40, 43, 48

*In re River Village Assoc.*,
181 B.R. 795 (E.D. Pa. 1995) ................................................................................15

*In re S&W Enter.*,
37 B.R. 153 (Bankr. N.D. Ill. 1984) .......................................................................21

*In re Scioto Valley Mortg. Co.*,
88 B.R. 168 (Bankr. S.D. Ohio 1988) .....................................................................16

*In re Sea Garden Motel & Apartments*,
195 B.R. 294, 305 (D.N.J. 1996) ...........................................................................56

*In re Spansion, Inc.*,
426 B.R. 114 (Bankr. D. Del. 2010) ................................................................31, 40

*In re SunPower Corp.*,
No. 24-11649 (CTG) (Bankr. D. Del. Oct. 18, 2024)..............................................32

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del. 2011), *on reconsideration*, 464 B.R. 208
(Bankr. D. Del. 2011) ......................................................................................35, 56

*In re U.S. Brass Corp.*,
194 B.R. 420 (Bankr. E.D. Tex. 1996) ...................................................................16

*In re U.S. Truck Co.*,
47 B.R. 932 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986) .....................55

*In re Unichem Corp.*,
72 B.R. 95 (Bankr. N.D. Ill. 1987) .........................................................................14

*In re Verso Corp.*,
No. 16-10163 (KG), Docket No. 1231 (Bankr. D. Del. June 24, 2016) ..................42

*In re Virgin Orbit Holdings, Inc*.,
No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) ........................................37, 40

*In re Vyaire Med., Inc.*,
No. 24-11217 (BLS) (Bankr. D. Del. Nov. 11, 2024) ..............................................32

**Page(s)**

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012) ................................................................48, 55

*In re Wash. Mut., Inc.*,
   442 B.R. 314, 327 (Bankr. D. Del. 2011) ..............................31, 32, 37, 40

*In re Wheel Pros, LLC*,
   No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024) ..............................32

*Will v. Nw. Univ. (In re Nutraquest, Inc.)*,
   434 F.3d 639 (3d Cir. 2006)....................................................................29

*In re World Health Alts., Inc.*,
   344 B.R. 291 (Bankr. D. Del. 2006) ........................................28, 29, 31

*In re Worldcom, Inc.*,
   No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ........................45

*In re Zenith Elecs. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) ..........................................31, 32, 37

**Statutes**

11 U.S.C. §§ 101–1532 ...............................................................................1

11 U.S.C. § 101(31) ....................................................................................50

11 U.S.C. § 101(51D)(B) ...........................................................................63

11 U.S.C. § 328 ...........................................................................................49

11 U.S.C. § 328(a) ......................................................................................49

11 U.S.C. § 330(a)(1)(A) ...........................................................................49

11 U.S.C. § 365(f) .......................................................................................64

11 U.S.C. § 502 ...........................................................................................46

11 U.S.C. § 503(b) ......................................................................................53

11 U.S.C. § 507(a)(1) .................................................................................53

11 U.S.C. § 507(a)(2) ............................................................................53, 57

11 U.S.C. § 507(a)(8) .................................................................................53

11 U.S.C. § 1122 .............................................................................21, 22, 65

**Page(s)**

11 U.S.C. § 1122(a) .................................................................................21, 22, 24

11 U.S.C. § 1123 ......................................................................................21, 30, 65

11 U.S.C. § 1123(a) ...........................................................................................24

11 U.S.C. § 1123(a)(1) .......................................................................................24

11 U.S.C. § 1123(a)(2) .......................................................................................24

11 U.S.C. § 1123(a)(3) .......................................................................................24

11 U.S.C. § 1123(a)(4) .......................................................................................25

11 U.S.C. § 1123(a)(5) ..................................................................................25, 26

11 U.S.C. § 1123(a)(6) .......................................................................................26

11 U.S.C. § 1123(a)(7) ..................................................................................26, 27

11 U.S.C. § 1123(b) ......................................................................................27, 28

11 U.S.C. § 1123(b)(1) .......................................................................................27

11 U.S.C. § 1123(b)(1)(3) ...................................................................................27

11 U.S.C. § 1123(b)(1)(6) ...................................................................................27

11 U.S.C. § 1123(b)(2) .......................................................................................27

11 U.S.C. § 1123(b)(3) .......................................................................................28

11 U.S.C. § 1123(b)(3)(A) ........................................................................28, 30, 31

11 U.S.C. § 1123(d) ......................................................................................43, 44

11 U.S.C. § 1125 ..........................................................................................*passim*

11 U.S.C. § 1125(a) ......................................................................................18, 46

11 U.S.C. § 1125(a)(1) ..............................................................................14, 15, 45

11 U.S.C. § 1125(b) ...........................................................................................45

11 U.S.C. § 1125(c) ...........................................................................................46

11 U.S.C. § 1125(e) ...........................................................................................20

11 U.S.C. § 1126 ..........................................................................................*passim*

**Page(s)**

11 U.S.C. § 1126(a) ..................................................................................................47

11 U.S.C. §§ 1126(a), (f), (g) ..................................................................................46

11 U.S.C. § 1126(b)(2) ............................................................................................18

11 U.S.C. § 1126(c) .............................................................................................20, 47

11 U.S.C. § 1126(f) ..................................................................................................12

11 U.S.C § 1126(f) ...................................................................................................47

11 U.S.C. § 1126(g) .............................................................................................12, 47

11 U.S.C. § 1127 ......................................................................................................65

11 U.S.C. § 1127(a) .................................................................................................65

11 U.S.C. § 1129 ............................................................................................... *passim*

11 U.S.C. § 1129(a) .................................................................................................58

11 U.S.C. § 1129(a)(1) ............................................................................................21

11 U.S.C. § 1129(a)(2) .............................................................................41, 44, 45, 47

11 U.S.C. § 1129(a)(3) .............................................................................40, 41, 47, 48

11 U.S.C. § 1129(a)(4) .........................................................................................48, 49

11 U.S.C. § 1129(a)(5) .............................................................................................50

11 U.S.C. § 1129(a)(5)(A)(i) ...................................................................................50

11 U.S.C. § 1129(a)(5)(A)(ii) ..................................................................................50

11 U.S.C. § 1129(a)(5)(B) .......................................................................................50

11 U.S.C. § 1129(a)(6) .............................................................................................51

11 U.S.C. § 1129(a)(7) .........................................................................................51, 52

11 U.S.C. § 1129(a)(7)(A)(ii) ..................................................................................51

11 U.S.C. § 1129(a)(8) .............................................................................52, 55, 58, 59

11 U.S.C. § 1129(a)(9) .........................................................................................53, 54

11 U.S.C. § 1129(a)(9)(A) ...................................................................................53, 54

**Page(s)**

11 U.S.C. § 1129(a)(9)(B) ........................................................................................53, 54

11 U.S.C. § 1129(a)(9)(C) ........................................................................................53, 54

11 U.S.C. § 1129(a)(10) ...............................................................................53, 54, 55, 59

11 U.S.C. § 1129(a)(11) ...................................................................................55, 56, 57

11 U.S.C. § 1129(a)(12) ...........................................................................................57

11 U.S.C. § 1129(a)(13) ...........................................................................................58

11 U.S.C. § 1129(a)(14) ...........................................................................................58

11 U.S.C. § 1129(a)(15) ...........................................................................................58

11 U.S.C. § 1129(b) .......................................................................................53, 59, 60, 62

11 U.S.C. § 1129(b)(1) ...................................................................................58, 59, 60, 62

11 U.S.C. § 1129(b)(2) ...........................................................................................62

11 U.S.C. § 1129(b)(2)(B)(ii) ....................................................................................62

11 U.S.C. § 1129(d) .............................................................................................63

11 U.S.C. § 1129(e) .............................................................................................63

11 U.S.C § 1129(c) .............................................................................................63

15 U.S.C. § 77(e) .............................................................................................63

11 U.S.C § (a)(5)(A)(ii) ..........................................................................................50

11 U.S.C § 363(k) ..............................................................................................6

11 U.S.C § 365 ...............................................................................................44

11 U.S.C § 503(b)(9) ............................................................................................7

11 U.S.C § 510(b) ........................................................................................23, 61, 62

11 U.S.C §§ 1107(a) and 1108.....................................................................................4

11 U.S.C §1114 ..............................................................................................58

Bankruptcy Code Chapter 7........................................................................16, 51, 52, 58

Bankruptcy Code Chapter 11 .............................................................................. *passim*

**Page(s)**

Bankruptcy Rule 3018(c) ............................................................................................................19

**Rules**

Fed. R. Bankr. P. 3019 ..............................................................................................................65

Fed. R. Bankr. P. 3020(e) ..........................................................................................................64

Fed. R. Bankr. P. 6004(h) ..........................................................................................................64

Fed. R. Bankr. P. 6004(h) and 6006(d) ....................................................................................64

Fed. R. Bankr. P. 6006(d) ..........................................................................................................64

**Other Authorities**

H.R. Rep. No. 95-595, *reprinted in* 1978 U.S.C.C.A.N. 5963 ....................................................21

S. Rep. No. 95-989, *reprinted in* 1978 U.S.C.C.A.N. 5787 ........................................................21

## RELIEF REQUESTED

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this memorandum of law (this "Memorandum") in support of confirmation of the *Amended Joint Chapter 11 Plan of Oldco Tire Distributors, Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 927] (as modified, amended, or supplemented from time to time, the "Plan"), pursuant to sections 1125, 1126, and 1129, respectively, of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). In support of confirmation of the Plan, the Debtors have filed the *Declaration of Ronald J. Bienias, Chief Restructuring Officer of Oldco Tire Distributors, Inc., in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Amended Joint Chapter 11 Plan of Oldco Tire Distributors, Inc. and Its Debtor Affiliates (Technical Modifications)* (the "Bienias Declaration"), the *Declaration of Roger Meltzer in Support of the Amended Joint Chapter 11 Plan of Oldco Tire Distributors, Inc. and Its Debtor Affiliates (Technical Modifications)* (the "Meltzer Declaration"), and the *Declaration of John Burlacu Regarding the Solicitation and Tabulation of Votes on the Amended Joint Chapter 11 Plan of American Tire Distributors, Inc. and Its Debtor Affiliates* (the "Voting Report" and, collectively with the Bienias Declaration and the Meltzer Declaration, the "Confirmation Declarations").[2] In further support of confirmation of the Plan, the Debtors state as follows.

## PRELIMINARY STATEMENT[3]

1. The Debtors commenced these Chapter 11 Cases to effectuate one or more value-maximizing sale transactions for the benefit of all stakeholders. After a thorough marketing

---

[2] The Debtors have filed the Confirmation Declarations substantially contemporaneously herewith.

[3] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Ronald J. Bienias, Chief Restructuring Officer of American Tire Distributors, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration") and the *Disclosure Statement for the Amended Joint Chapter 11 Plan of American Tire Distributors, Inc. And Its Debtor Affiliates* [Docket No.762] (as may be amended, modified, or

process, the Debtors pursued a sale of substantially all of the Debtors' assets to the Purchaser (as defined below) (the "Sale Transaction") that preserved the Debtors' operations as a going concern, saved a significant number of jobs, and provided for the payment of the Debtors' administrative, other secured, and priority claims.  On February 11, 2025, the United States Bankruptcy Court for the District of Delaware (this "Court") entered the Sale Order (as defined herein) approving the Sale Transaction, and on February 28, 2025, the Sale Transaction closed.[4]  The Sale Transaction offered the best possible outcome for the Debtors and their stakeholders.

2.      The Debtors now seek confirmation of the Plan to effectuate a post-sale Wind-Down of the Debtors' estates (the "Estates") and bring finality to these Chapter 11 Cases. The Plan enjoys the support of the Consenting Stakeholders, who hold approximately 90 percent of the outstanding obligations under the Term Loan Credit Agreement, and all Voting Classes (as defined herein) voted to accept the Plan.  The Plan is the product of arm's-length negotiations with the Debtors' major stakeholders, including the Purchaser and the Official Committee of Unsecured Creditors (the "Committee").

3.      Timely confirmation and consummation of the Plan will enable the Debtors to pursue an orderly Wind-Down of the Estates and bring closure to these Chapter 11 Cases.  For the reasons stated herein, the Plan and the Disclosure Statement satisfy all applicable provisions of the Bankruptcy Code.  Therefore, and as set forth more fully in this Memorandum, the Plan should be confirmed, and the Disclosure Statement should be approved on a final basis.

---

supplemented from time to time, the "Disclosure Statement").  Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, the Conditional Disclosure Statement Order, the Sale Order, or the Asset Purchase Agreement, as applicable.

[4]    *Notice of Occurrence of Sale Closing Pursuant to the Asset Purchase Agreement on February 28, 2025,* [Docket No. 843] (the "Sale Transaction Closing Notice").

# BACKGROUND

## I.     The Debtors' Chapter 11 Filings and the Marketing Process.

4.      On October 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On November 4, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to sections 1107(a) and 1108 of the Bankruptcy Code [Docket No. 128].   No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.  As of the Petition Date, the Debtors operated one of the largest replacement tire distributors in North America based on number of warehouses and dollar amount of wholesale sales.

5.      Shortly before the commencement of these Chapter 11 Cases, after arm's-length, good faith negotiations, the Debtors and the Ad Hoc Group executed the RSA.  The RSA contemplated an in-court marketing process (the "Marketing Process"), pursuant to which the Debtors would run a market test for their assets and negotiate and execute a stalking horse asset purchase agreement, by and between the Debtors and the Ad Hoc Group (or an entity designated by it).

6.      On November 26, 2024, the Court entered the Bidding Procedures Order, which established the Bidding Procedures for the Debtors' assets [Docket No. 361].  After running the Marketing Process in accordance with the Bidding Procedures, the highest and best—and only—bid received by the Debtors in advance of the Bid Deadline was the credit bid submitted by Asphalt Buyer, LLC, a limited liability company formed by the members of the Ad Hoc Group.  Therefore, consistent with the Bidding Procedures Order, the Debtors filed the *Notice of (I) Selection of Winning Bidder and (II) Cancellation of Auction* [Docket No. 596] on January 12, 2025, identifying the credit bid as the winning bid and cancelling the auction.  On February 11, 2025, this Court entered the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets*

*Free and Clear of All Liens, Claims, Interests, Encumbrances, and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 730] (the "Sale Order"). On March 3, 2025, the Debtors filed the Sale Transaction Closing Notice, indicating that the Sale Transaction closed on February 28, 2025.

7.     Concurrent with the Marketing Process, the Debtors spent significant time formulating and negotiating the terms of a chapter 11 plan, setting forth the terms by which the Debtors would liquidate any assets remaining in the Estates following the Sale Transaction and wind down the Estates and preparing a disclosure statement related thereto. On January 31, 2025, the Debtors filed the *Joint Chapter 11 Plan of American Tire Distributors, Inc., and Its Debtor Affiliates* [Docket No. 675] and the *Disclosure Statement for the Joint Chapter 11 Plan of American Tire Distributors, Inc., and its Debtor Affiliates* [Docket No. 674], along with the Conditional Disclosure Statement Motion,[5] pursuant to which the Debtors sought a hearing on the conditional approval of the Disclosure Statement and the related Solicitation and Voting Procedures (as defined herein).

8.     On February 18, 2025, the Debtors filed with this Court the *Amended Joint Chapter 11 Plan of American Tire Distributors, Inc. and Its Debtor Affiliates* [Docket No. 761] and, on February 19, 2025, the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of American Tire Distributors, Inc. and Its Debtor Affiliates* [Docket No. 762].

---

[5]    "Conditional Disclosure Statement Motion" shall mean the *Motion of Debtors for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Approving the Form of Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates and Deadlines and Shortening Notice with Respect Thereto, and (V) Granting Related Relief* [Docket No. 676].

9.      On March 17, 2025, the Debtors filed with this Court the *Plan Supplement for the Joint Chapter 11 Plan of American Tire Distributors, Inc. and Its Debtor Affiliates* [Docket No. 890] (as amended, modified, or supplemented from time to time, the "Plan Supplement"), which included the (a) Schedule of Assumed Executory Contracts and Unexpired Leases, (b) Schedule of Retained Causes of Action, (c) Form of Plan Administrator Agreement, and (d) the Transaction Steps Memorandum.

10.     Substantially contemporaneously with the filing of this Memorandum, the Debtors filed with this Court the *Amended Joint Chapter 11 Plan of Oldco Tire Distributors, Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. [●]].

## II.    The Special Committee's Investigation.

11.     Prior to the Petition Date, the Company's board of directors appointed three disinterested directors:  Roger Meltzer, James Micali, and Patrick Bartels (collectively, the "Special Committee").[6] The scope of the Special Committee's authority included, among other things, conducting an investigation into any transactions and any matters in which a conflict of interests exists or is reasonably likely to exist between the Company, on the one hand, and any of the Related Parties, on the other hand (the "Special Committee Investigation").

12.     The Special Committee, with the assistance of the Debtors and their professional advisors, conducted a broad investigation of dealings involving the Debtors and their Related Parties, including certain activities and transactions involving the Debtors' current and former directors and officers and potential prepetition Claims and Causes of Action, in part, to evaluate the appropriate scope of any releases contained in the Plan.[7]  The Special Committee was also

---

6    *See* Meltzer Declaration, ¶ 5.

7    *See* Meltzer Declaration, ¶ 15.

actively involved in supervising, advising, and analyzing all facets of the Marketing Process. During the Special Committee Investigation, the Special Committee was provided unqualified access to Company documents and personnel.[8]  The Special Committee Kirkland & Ellis LLP ("Kirkland") and a team of AP Services, LLC, an affiliate of AlixPartners LLP ("AlixPartners") professionals focused on investigatory diligence and forensic accounting to conduct a thorough review of the Company's books and records, transactions, and actions taken since the Debtors emerged from their prior bankruptcy on December 19, 2018.  Throughout this process, and at the direction and under the supervision of the Special Committee, Kirkland and AlixPartners reviewed upwards of 20,000 internal documents, board materials, and emails, and communicated regularly with Company management and the Debtors' current and former professional service advisors.

13.    The Special Committee, with assistance from Kirkland and AlixPartners, evaluated a wide range of transactions and other activities, including: (1) ATD's investments in certain tire-adjacent businesses—*i.e.*, the Adjacencies—and internal technologies between 2020 and 2024; (2) ATD's 2021 refinancing efforts; (3) a potential sale of the business contemplated by ATD in 2022; (4) the departures of ATD's former Chief Executive Officer, Stuart Schuette, and former Chief Financial Officer, Ryan Walsh, in 2024; (5) all payments and distributions by the Company to insiders and equity holders since October 22, 2020; and (6) the Company's continuing cost-reduction efforts.[9]  Based upon the findings of the Special Committee Investigation, the Special Committee supports the releases outlined in the Plan.[10]  Despite the comprehensive scope of the

---

[8]    *See* Meltzer Declaration, ¶ 11.

[9]    *See* Meltzer Declaration, ¶ 11(vi)

[10]    *See* Meltzer Declaration, ¶ 16.

Special Committee Investigation, the Special Committee failed to locate any viable Claims and Causes of Action.

**III.    The Solicitation Process and Voting Results.**

14.    On February 3, 2025, the Debtors filed the Conditional Disclosure Statement Motion seeking a hearing to consider conditional approval of the adequacy of the Disclosure Statement.  On February 19, 2025, this Court entered the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan, (III) Approving the Form of Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates and Deadlines and Shortening Notice with Respect Thereto, and (V) Granting Related Relief* [Docket No. 766] (the "Conditional Disclosure Statement Order") that (a) conditionally approved the Disclosure Statement; (b) established March 24, 2025 at 12:00 p.m., prevailing Eastern Time, as the Plan Objection Deadline; (c) approved the procedures for:  (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "Solicitation and Voting Procedures"); (d) approved the form and manner of the notice of the hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing Notice"), the Notice of Non-Voting Status, the Ballots, the Opt In Form, and the Solicitation Packages; and (e) approved the usage of the Opt In Portal, all as more fully set forth in the Conditional Disclosure Statement Motion.

15.    On February 20, 2025 (the "Solicitation Commencement Date"), the Debtors caused their notice, claims, and solicitation agent, Donlin Recano & Company, LLC (the "Notice, Claims, and Solicitation Agent"), to distribute solicitation packages (the "Solicitation Packages") pursuant to the terms of the Conditional Disclosure Statement Order.  Solicitation was completed on February 21, 2025.  Although proposed jointly for administrative purposes, the Plan constitutes

a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.

16.    As more fully described in the Conditional Disclosure Statement Order and the Voting Report, and as set forth in the *Affidavit of Donlin Recano and Company, LLC, Regarding Service of Solicitation Packages with Respect to Disclosure Statement for the Amended Joint Chapter 11 Plan of American Tire Distributors, Inc., and its Debtor Affiliates* [Docket No. 820], the Debtors caused the Notice, Claims, and Solicitation Agent to distribute to Holders of Claims in Classes 3, 4, and 5—the only Classes entitled to vote to accept or reject the Plan (the "Voting Classes")—the Solicitation Packages containing, in accordance with sections 1125 and 1126 of the Bankruptcy Code, (a) the Conditional Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures), (b) a copy of the Solicitation and Voting Procedures, (c) a Ballot, with applicable voting instructions, (d) a pre-addressed, postage prepaid return envelope, to the extent a Holder of Claims is solicited by mail, (e) a cover letter in support of the Plan, and (f) the Combined Hearing Notice.[11]   The Notice, Claims, and Solicitation Agent transmitted the Solicitation Packages to Holders of Claims in the Voting Classes by first-class mail, and such Holders were directed in the Solicitation and Voting Procedures, the Disclosure Statement, and the Ballot to follow the instructions contained in the Ballot (and additionally described in the Disclosure Statement) to complete and submit their respective Ballot(s) to vote to accept or reject the Plan.[12]

---

[11]   *See* Voting Report, ¶¶ 6-8.

[12]   *See Affidavit of Donlin Recano and Company, LLC, Regarding Service of Solicitation Packages with Respect to Disclosure Statement for the Amended Joint Chapter 11 Plan of American Tire Distributors, Inc., and its Debtor Affiliates* [Docket No. 820].

17.     Each Holder of a Claim in the Voting Classes was expressly and conspicuously informed in the Disclosure Statement and the Ballot that if a Ballot was not actually received by the Notice, Claims, and Solicitation Agent on or before March 24, 2025, at 4:00 p.m. (prevailing Eastern Time) (as may be modified, the "Voting Deadline"), such Ballot would not be counted. Holders of Claims and Interests that are either (a) Unimpaired and conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code or (b) Impaired and deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code (the "Non-Voting Classes") were not provided a Solicitation Package.  In lieu of a Solicitation Package, Holders in the Non-Voting Classes received an applicable notice of non-voting status (the "Notice of Non-Voting Status") and an opt in form related to the Plan's Third-Party Releases (the "Opt In Form").[13]  Each Notice of Non-Voting Status and/or Opt In Form included, among other things:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Conditional Disclosure Statement Order, and all other materials in the Solicitation Package (excluding Ballots) from the Notice, Claims, and Solicitation Agent; (b) an Opt In Form by which all Holders or potential Holders of Claims or Interests can elect to opt in to the Third-Party Releases contained in Article VIII of the Plan; (c) a disclosure regarding the releases and the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (d) notice of the Plan Objection Deadline; (e) notice of the Combined Hearing; and (f) information related thereto.

18.     Importantly, each Ballot contained the complete text of the release provisions contained in Article VIII.D of the Plan, and detailed instructions on how Holders of Claims in the Voting Classes may elect to opt in to the releases by checking a clearly-marked check box on the

---

[13]   *See* Voting Report, ¶ 8.

face of the Ballot and returning the Ballot in accordance with the Solicitation and Voting Procedures.[14]  Similarly, each Holder of a Claim or Interest in the Non-Voting Classes received, in addition to the applicable Notice of Non-Voting Status, a returnable Opt In Form providing the complete text of the releases and giving detailed instructions on how Holders of Claims and Interests in the Non-Voting Classes may elect to opt in to the releases.[15]

19.     As set forth in the Voting Report, the Voting Classes voted in favor of accepting the Plan.  As reflected in the Voting Report, (i) 96.12% in number and 98.38% in amount of Holders of Claims in Class 3 voted in favor of confirmation of the Plan, (ii) 96.12% in number and 98.3% in amount of Holders of Claims in Class 4 voted in favor of confirmation of the Plan, and (iii) 73.68% in number and 87.96% in amount of Holders of Claims in Class 5 voted in favor of confirmation of the Plan.[16]  Accordingly, the voting requirements of section 1126 of the Bankruptcy Code are satisfied.[17]

20.     The Debtors filed a proposed Confirmation Order substantially contemporaneously with the filing of this Memorandum.

## ARGUMENT

21.     This Memorandum is organized as follows:  ***First***, the Debtors present their case for approval of the Disclosure Statement on a final basis.  ***Second***, the Debtors present their case-in chief that the Plan satisfies the applicable requirements of section 1129 of the Bankruptcy Code

---

[14]   The forms of ballots used in solicitation were each attached, respectively, as Exhibit 3, Exhibit 4, and Exhibit 5 to the Conditional Disclosure Statement Order.

[15]   The Form of Non-Voting Status Notice (Unimpaired), the Form of Non-Voting Status Notice (Impaired), and the Form of Non-Voting Status Notice (Disputed) were each attached, respectively, as Exhibit 6, Exhibit 7, and Exhibit 8 to the Conditional Disclosure Statement Order.

[16]   *See* Voting Report, ¶ 16.

[17]   *See* Voting Report, ¶ 16.

by a preponderance of the evidence and should therefore be confirmed.   *Third*, the Debtors submit

that good cause exists to waive the stay of the Confirmation Order.   The Debtors' resolutions to

certain informal objections are set forth in the Confirmation Order, as applicable.

I.      **The Disclosure Statement Contains "Adequate Information" as Required by §§ 1125
        and 1126 of the Bankruptcy Code and Satisfies Notice Requirements.**

        A.      **The Disclosure Statement Contains Adequate Information.**

        22.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed

chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired

claims and interests entitled to vote on the plan.[18]   Specifically, section 1125(a)(1) of the

Bankruptcy Code provides, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan. . ."[19]

        23.     The primary purpose of a disclosure statement is to provide all material

information, or "adequate information," that allows parties entitled to vote on a proposed plan to

make an informed decision about whether to vote to accept or reject the plan.[20]   Congress intended

---

[18]   11 U.S.C. § 1125(a)(1)

[19]   *Id.*

[20]   *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks
to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*,
755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the
information they need to decide whether to accept the plan."); *In re Phoenix Petrol., Co.*, 278 B.R. 385, 392
(Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information'
to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed
plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr.
N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which

that such informed judgments would be needed to both negotiate the terms of, and vote on, a chapter 11 plan.[21]

24.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case.[22] Courts within the Third Circuit and elsewhere have acknowledged that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.[23] Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.[24]

---

creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan.").

[21]    *See Century Glove, Inc.*, 860 F.2d at 100 ("The necessity of 'adequate information' was intended to help creditors in their negotiations.").

[22]    *See* 11 U.S.C. § 1125(a)(1) ( "'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of [section] 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 (stating that "the information required will necessarily be governed by the circumstances of the case").

[23]    *See, e.g.*, *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phoenix Petrol.*, 278 B.R. at 393 ("This determination [of what is adequate information] is largely within the discretion of the bankruptcy court.").

[24]    *See In re Phoenix Petrol.*, 278 B.R. at 393; *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court." (citations omitted)); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D. N.J. 2005) (stating that "[t]he information required will necessarily be governed by the circumstances of the case").

25.     In determining whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

1.  the events that led to the filing of a bankruptcy petition;

2.  the relationship of the debtor with its affiliates;

3.  a description of the available assets and their value;

4.  the debtor's anticipated future performance;

5.  the source of information stated in the disclosure statement;

6.  the debtor's condition while in chapter 11;

7.  claims asserted against the debtor;

8.  the estimated return to creditors under a chapter 7 liquidation of the debtor;

9.  the future management of the debtor;

10. the chapter 11 plan or a summary thereof;

11. the financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

12. the information relevant to the risks posed to creditors under the plan;

13. the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

14. the litigation likely to arise in a nonbankruptcy context; and

15. the tax attributes of the debtor.[25]

---

[25]  *See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case. *In re U.S. Brass Corp.*, 194 B.R. at 425 ("Disclosure of all factors is not necessary in every case."); *see also In re Phoenix Petrol.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

26.     The Disclosure Statement contains a number of categories of information that courts consider "adequate information," including:

- ***The Debtors' Corporate History, Structure, and Business Overview***.  An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure is described in Article VI and Article VII of the Disclosure Statement;

- ***Events Leading to the Chapter 11 Filings***.  An overview of the Debtors' liquidity challenges amidst a difficult macroeconomic landscape, a shift in the tire distribution marketplace, and the sale and marketing process are described in Article VIII of the Disclosure Statement;

- ***Events of the Chapter 11 Cases***.  A summary of the course of events of these Chapter 11 Cases, including the Marketing Process, is described in Article IX of the Disclosure Statement;

- ***Risk Factors***.  Certain risks associated with the Debtors' business, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement, are described in Article XII of the Disclosure Statement;

- ***Solicitation and Voting Procedures***.  A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan is provided in Article V of the Disclosure Statement;

- ***Confirmation of the Plan***.  Confirmation procedures and statutory requirements for confirmation and consummation of the Plan are described in Article XI of the Disclosure Statement;

- ***Certain United States Federal Income Tax Consequences***.  A description of certain U.S. federal income tax law consequences of the Plan is provided in Article XIII of the Disclosure Statement;

- ***Releases and Retained Causes of Action***.  Descriptions of the Plan's release provisions are provided in Article X of the Disclosure Statement. Descriptions of the Plan's release provisions and details regarding the Wind-Down Debtors' ability to pursue Retained Causes of Action, as appropriate, are provided in Article X of the Disclosure Statement; and

- ***Recommendation***.  A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan is included in Article XIV of the Disclosure Statement.

27.     In addition, prior to the solicitation, the Disclosure Statement, the Plan Supplement, and the Plan were subject to review and comment by various parties, including the Ad Hoc Group, the Committee, and the U.S. Trustee.  On February 19, 2025, this Court entered the Conditional

Disclosure Statement Order, approving the Disclosure Statement on a conditional basis as containing adequate information to commence solicitation. Only one party has filed an objection to the adequacy of the Disclosure Statement, which objection has since been withdrawn. For the reasons set forth above, the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code in satisfaction of section 1126(b)(2) and should be approved on a final basis.

**B.      The Debtors Complied with Applicable Notice Requirements.**

28.      The Conditional Disclosure Statement Order, among other things, (a) conditionally approved the Disclosure Statement, (b) established the Voting Record Date, Publication Deadline, Solicitation Deadline, Plan Objection Deadline, and Voting Deadline, and (c) approved the form and manner of the Combined Hearing Notice and the Ballots. The Debtors complied with the solicitation and noticing procedures, timeline, and all associated notice requirements approved by the Conditional Disclosure Statement Order.

**1.      The Debtors Complied with the Notice Requirements Set Forth in the Conditional Disclosure Statement Order and the Bankruptcy Rules.**

29.      The Debtors satisfied the notice requirements set forth in the Conditional Disclosure Statement Order, Bankruptcy Rule 3017, and Local Rule 3017-1. *First*, on or about February 21, 2025, the Debtors distributed the Solicitation Packages to Holders of Claims entitled to vote on the Plan as of the Voting Record Date.[26] *Second*, the Debtors caused the Publication Notice to be published in *The New York Times* (National Edition) on February 24, 2025 [Docket No. 853] and in *The Charlotte Observer* on February 26, 2025 [Docket No. 852].[27]

---

[26]   *See* Solicitation Affidavit.

[27]   *See* Publication Affidavit.

***Third***, the Combined Hearing Notice included instructions on how to obtain the Plan and the Disclosure Statement without a fee through the Debtors' restructuring website or for a fee at this Court's PACER website.[28]

>    2.    **The Ballots Used to Solicit Holders of Claims Entitled to Vote on the Plan Complied with the Conditional Disclosure Statement Order.**

30.    The forms of Ballots used comply with the Bankruptcy Rules and were approved on an interim basis by this Court pursuant to the Conditional Disclosure Statement Order.[29]  The form of Ballots provide sufficient detail on acceptance or rejection of the Plan as required under Bankruptcy Rule 3018(c).  No party has objected to the sufficiency of the Ballots.  Based on the foregoing, the Debtors submit that they complied with the Conditional Disclosure Statement Order and satisfied the requirements of Bankruptcy Rule 3018(c).

>    3.    **The Debtors' Solicitation Period Complied with the Conditional Disclosure Statement Order.**

31.    The Debtors' solicitation period complied with the Conditional Disclosure Statement Order, the Bankruptcy Code, Bankruptcy Rules, and Local Rules.  ***First***, the Solicitation Packages, including instructions for accessing electronic or hard-copy versions of the Plan and Disclosure Statement, were transmitted to all Holders of Claims entitled to vote on the Plan.[30] ***Second***, the solicitation period, which lasted from February 20, 2025, through March 24, 2025, complied with the Conditional Disclosure Statement Order and was adequate under the facts and

---

[28]    *See* Combined Hearing Notice.

[29]    *See* Conditional Disclosure Statement Order ¶ 2.

[30]    *See* Solicitation Affidavit.

circumstances of these Chapter 11 Cases.[31]  Accordingly, the Debtors submit that the solicitation period complied with the Conditional Disclosure Statement Order.

### 4. The Debtors' Vote Tabulation Procedures Complied with the Conditional Disclosure Statement Order.

32.      The Debtors request that this Court find that the Debtors' tabulation of votes complied with the Conditional Disclosure Statement Order.  The Notice, Claims, and Solicitation Agent reviewed all Ballots received in accordance with the Solicitation and Voting Procedures approved pursuant to the Conditional Disclosure Statement Order.[32]  Accordingly, the Debtors respectfully submit that this Court should approve the Debtors' tabulation of votes, confirming that the requisite Claims voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.

### 5. Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith.

33.      Section 1125(e) of the Bankruptcy Code provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan.[33]

34.      As set forth in the Disclosure Statement and Conditional Disclosure Statement Motion, and as demonstrated by the Debtors' compliance with the Conditional Disclosure Statement Order, the Debtors at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with

---

[31]   *See* Conditional Disclosure Statement Order ¶ 5; Solicitation Affidavit.

[32]   *See* Conditional Disclosure Statement Order ¶ 5.

[33]   11 U.S.C. § 1125(e).

section 1125 of the Bankruptcy Code.  Therefore, the Debtors respectfully request that this Court

grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

## II.     The Plan Satisfies the Requirements of § 1129 of the Bankruptcy Code.

35.     To confirm the Plan, this Court must find that the Debtors have satisfied the

provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[34]   The

Debtors have met or exceeded this burden, demonstrating satisfaction of the relevant provisions of

the Bankruptcy Code by clear and convincing evidence.   As set forth herein, the Plan fully

complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125,

1126, and 1129—as well as the Bankruptcy Rules and applicable nonbankruptcy law.

### A.     The Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1)).

36.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan "compl[y] with the

applicable provisions of [the Bankruptcy Code]."[35]   The legislative history of section 1129(a)(1)

of the Bankruptcy Code explains that this provision also encompasses the requirements of

sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the

contents of a chapter 11 plan, respectively.[36]   As explained below, the Plan complies with the

requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, as well as other

applicable provisions.

---

[34]   *See In re Armstrong World Indus.*, 348 B.R. 111, 120 (Bankr. D. Del. 2006) (providing that preponderance of the evidence is the applicable standard for confirmation of a plan); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 (Bankr. D. Del. 2001) (same).

[35]   11 U.S.C. § 1129(a)(1).

[36]   S. Rep. No. 95-989, at 126, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123.").

1.    **The Plan Satisfies the Classification Requirements of § 1122 of the Bankruptcy Code.**

37.    The classification requirement of section 1122(a) of the Bankruptcy Code provides, in pertinent part, that "[e]xcept as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[37]  For a classification structure to satisfy section 1122 of the Bankruptcy Code, substantially similar claims or interests need not be grouped in the same class.[38]  Instead, claims or interests placed in a particular class must be substantially similar to each other.[39]  Courts in this jurisdiction and others have recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis for doing so.[40]

38.    The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into nine separate Classes, with Claims and Interests in each Class differing from the Claims and Interests

---

[37]   11 U.S.C. § 1122(a).

[38]   *See*, *e.g.*, *In re Nuverra Env't Sols., Inc.,* 590 B.R. 75, 96 (D. Del. 2018).

[39]   *Id.*

[40]   Courts have identified grounds justifying separate classification, including where members of a class possess different legal rights or there are good business reasons for separate classification. *See*, *e.g.*, *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs (In re Route 37 Bus. Park Assocs.)*, 987 F.2d 154, 158–59 (3d Cir. 1993) (holding that as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–611 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes); *see also Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because the classification scheme had a rational basis on account of the bankruptcy court-approved settlement).

in each other Class based on legal or factual distinctions or other relevant criteria.[41]  Specifically,

the Plan provides for the separate classification of Claims and Interests into the following Classes:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Term Loan Secured Claims | Impaired | Entitled to Vote |
| 4 | Term Loan Deficiency Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

39.     Here, each of the Claims and Interests in each Class is substantially similar to the

other Claims and Interests in such Class.  The Plan's classification scheme generally corresponds

to the Debtors' corporate and capital structure, thereby taking into account the relative priority

among Claims and Interests, including the relative priorities between secured and unsecured

claims.  In addition, valid business, legal, and factual reasons justify the separate classification of

the particular Claims or Interests into the Classes created under the Plan, and no unfair

discrimination exists between or among Holders of Claims and Interests.  Namely, the Plan

separately classifies the Claims and Interests because each Holder of such Claims or Interests may

hold (or may have held) rights in the Debtors' Estates legally dissimilar to the Claims or Interests

in other Classes.[42]

---

[41]    *See* Plan, Art. III.

[42]    *See* Bienias Declaration, ¶ 16-18.

40.     For example, the classification scheme distinguishes Holders of Term Loan Secured Claims (Class 3) from Holders of General Unsecured Claims (Class 5), because General Unsecured Claims are not secured and entirely unrelated to the Term Loan, in each case distinguishable from the Term Loan Secured Claims.  As another example, Other Priority Claims (Class 2) are classified separately due to their required treatment under the Bankruptcy Code.

41.     Accordingly, the Claims or Interests assigned to each particular Class described above are substantially similar to the other Claims or Interests in each such Class.  Furthermore, the distinctions among Classes are based on valid factual and legal reasons.  The Plan fully complies with and satisfies section 1122(a) of the Bankruptcy Code.

### 2.    The Plan Satisfies the Mandatory Plan Requirements of § 1123(a) of the Bankruptcy Code.

42.     The seven applicable requirements of section 1123(a) of the Bankruptcy Code generally relate to the specification of claims treatment and classification, the equal treatment of claims within classes, and the mechanics of implementing a plan.  The Plan satisfies each of these requirements.

### a.    Designation of Classes of Claims and Equity Interests, Specification of Unimpaired Classes, and Treatment of Impaired Classes (§§ 1123(a)(1)–(3)).

43.     The first three requirements of section 1123(a) of the Bankruptcy Code require that a plan specify (a) the classification of claims and interests, (b) whether such claims and interests are impaired or unimpaired, and (c) the treatment of any impaired class under the plan.[43]  Article III of the Plan sets forth these specifications in detail, in satisfaction of these three requirements.[44]

---

[43]   11 U.S.C. § 1123(a)(1)–(3).

[44]   *See* Plan, Art. III.A, III.C.

b.      **Equal Treatment Within Classes (§ 1123(a)(4)).**

44.      Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest[.]"[45]  The Plan satisfies this requirement because Holders of Allowed Claims or Interests will receive the same treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class.[46]

c.      **Means for Implementation (§ 1123(a)(5)).**

45.      Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[47]  The Plan satisfies this requirement because Article IV of the Plan, as well as other provisions, sets forth the means by which the Plan will be implemented.[48]  Among other things, Article IV of the Plan describes (a) to the extent applicable, the sources of consideration for Plan distributions,[49] (b) to the extent applicable, the vesting of assets in the Wind-Down Debtors and the authorization for the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, to take corporate actions necessary to effectuate the Plan,[50] (c) the cancellation of instruments, certificates, and other documents,[51] and (d) the preservation and retention of certain Causes of Action.[52]  The Plan also provides for the

---

[45]    11 U.S.C. § 1123(a)(4).

[46]    *See* Plan, Art. III.C.

[47]    11 U.S.C. § 1123(a)(5).

[48]    *See* Plan, Art. IV.

[49]    *See* Plan, Art. IV.C.2.

[50]    *See* Plan, Art. IV.C.3.

[51]    *See* Plan, Art. IV.E.

[52]    *See* Plan, Art. IV.H.

appointment of the Plan Administrator to manage the Wind-Down Debtors, and describes the Plan Administrator's duties and compensation.  The precise terms governing the execution of these transactions are set forth in the Transaction Steps Memorandum, attached to the Plan Supplement as Exhibit D,[53] which outlines certain steps to be carried out to implement the Wind-Down Transactions in accordance with the Plan both on the Effective Date and after.[54]  Thus, the Plan sets forth adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code.

### d.    Issuance of Non-Voting Securities (§ 1123(a)(6)).

46.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities.[55]  Because the Debtors and Wind-Down Debtors are not issuing any new securities under the Plan, section 1123(a)(6) of the Bankruptcy Code does not apply to the Plan.

### e.    Directors and Officers (§ 1123(a)(7)).

47.    Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions with respect to the manner of selection of any director, officer, or trustee, or other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy[.]"[56] The Plan satisfies this requirement by providing for the appointment of a Plan Administrator as a director and officer of each of the Wind-Down Debtors, and the retention of Brian C. Maloney and Ronald J. Bienias as Interim Chief Financial Officer and Secretary and Chief Restructuring

---

[53]    *See* Plan Supplement.

[54]    *See* Plan, Art. IV.F.

[55]    11 U.S.C. § 1123(a)(6).

[56]    11 U.S.C. § 1123(a)(7).

Officer, respectively, by the Wind-Down Debtors to assist the Plan Administrator in effectuating the Wind-Down of the Wind-Down Debtors' Estates.[57]  The Plan also provides that, as soon as practicable on or after the Effective Date, but in no event later than the closing of these Chapter 11 Cases, the authority, power, and incumbency of the persons acting as directors and managers of the Debtors and/or Wind-Down Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be immediately and automatically deemed appointed as the sole director, officer, and manager, as applicable, of each of the Wind-Down Debtors and shall succeed to the powers of the Debtors' directors and officers.[58]  The manner for selection of the Plan Administrator is set forth in the Plan and the Plan Supplement.[59]  The Debtors also filed the Plan Administrator Agreement in the Plan Supplement, which provides the identity of the Plan Administrator.[60]   Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### 3.    The Plan Complies with the Discretionary Provisions of § 1123(b) of the Bankruptcy Code.

48.    Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  Section 1123(b) of the Bankruptcy Code provides that a plan, among other things, may:  (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates or the retention and enforcement by a debtor, trustee, or other representative of claims or

---

[57]    *See* Plan, Art. IV.C.3.

[58]    *See id.*

[59]    *See* Plan, Art. IV.C.3; Plan Supplement.

[60]    *See* Plan Supplement.

interests; (d) modify or leave unaffected the rights of holders of secured or unsecured claims; or (e) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.[61]

49.     As set forth herein, the Plan includes certain of these discretionary provisions consistent with section 1123(b) of the Bankruptcy Code.  The Debtors have determined, as fiduciaries of their Estates and in the exercise of their reasonable business judgment, that each of the discretionary provisions of the Plan is appropriate given the circumstances of these Chapter 11 Cases.

> a.     **The Plan Appropriately Implements Settlements of Claims and Interests in Compliance with the Bankruptcy Code and the Bankruptcy Rules.**

50.     The Plan implements certain settlements among the Debtors and various parties in interest, including the Consenting Prepetition Term Lenders.[62]  The terms of the settlements represent a fair exchange among the applicable settlement parties and benefit all stakeholders and parties in interest.

51.     Section 1123(b)(3) of the Bankruptcy Code provides that a plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[63]  In order to "minimize litigation and expedite the administration of the bankruptcy estate, 'compromises are favored in bankruptcy.'"[64]  Whether to approve a proposed settlement is

---

[61]   *See* 11 U.S.C. §§ 1123(b)(1)–(3), (6).

[62]   *See* Plan, Art. IV.A.

[63]   11 U.S.C. § 1123(b)(3)(A).

[64]   *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. rev. 1993)); *see also In re World Health Alts., Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements are "generally favored in bankruptcy.").

committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate."[65]  In exercising that discretion, the Third Circuit has stated that courts should consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[66]  The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'"[67]

52.    The four *Martin* factors weigh heavily in favor of approval of the settlements embodied in the Plan.  The settlements resolve complex, fact-intensive matters that may otherwise have required costly and protracted litigation to determine, with an uncertain outcome.  It is undeniable that litigating chapter 11 disputes with the applicable settlement parties would have been complex and time-consuming and could unnecessarily extend these Chapter 11 Cases while administrative costs continue to be incurred, thereby eroding the value of the Estates to the detriment of all stakeholders.  Therefore, the Plan's settlement provisions are reasonable, and the Debtors have satisfied the requirements of section 1123 of the Bankruptcy Code and the *Martin* factors.

---

[65]    *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

[66]    *In re Martin*, 91 F.3d at 393; *see also, e.g., Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

[67]    *In re World Health*, 344 B.R. at 296 (citations omitted) (internal quotation marks omitted); *see also, e.g., In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.")

b.      **The Plan's Release, Exculpation, and Injunction Provisions Are Appropriate and Comply with the Bankruptcy Code.**

53.      The Plan also includes certain Debtor and third-party releases, an exculpation provision, and an injunction provision.  These provisions are proper because, among other things, they are the product of extensive good-faith, arm's-length negotiations, are consistent with applicable precedent because they are granted by the Released Parties (as defined in the Plan) on an opt-in basis, and are overwhelmingly supported by the Debtors and their key stakeholders.  Furthermore, these provisions were fully and conspicuously disclosed to all parties in interest through the Combined Hearing Notice, the Opt In Form, and the Ballots, each of which excerpted in bold font the full text of the releases, the exculpation provision, and the injunction provision as set forth in the Plan.

(i)      **The Debtor Release Is Appropriate and Complies with the Bankruptcy Code.**

54.      The Bankruptcy Code supports the inclusion of debtor releases in a chapter 11 plan.  Section 1123(b)(3)(A) of the Bankruptcy Code states that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[68]  Furthermore, a debtor may release a claim under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[69]  In determining whether a debtor release is proper, courts in Delaware and elsewhere generally may consider the following five factors:

---

[68]   *See In re Coram Healthcare Corp.*, 315 B.R. at 334–35.   Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "is above the lowest point in the range of reasonableness."  *Id.* at 330 (citation omitted); *see also In re Exaeris, Inc.*, 380 B.R. 741, 746–47 (Bankr. D. Del. 2008); *see Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (examining whether settlement "fall[s] below the lowest point in the range of reasonableness") (alteration in original) (citation omitted)); *In re World Health*, 344 B.R. at 296 (stating that settlement must be "within the reasonable range of litigation possibilities" (citation omitted)).

[69]   *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) (citation omitted); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court

1. whether the non-debtor has made a substantial contribution to the debtor's reorganization;

2. whether the release is essential to the debtor's reorganization;

3. whether there is an agreement by a substantial majority of creditors to support the release;

4. whether there is an identity of interest between the debtor and the third party; and

5. whether a plan provides for payment of all or substantially all of the claims in the class or classes affected by the release.[70]

Not all of the above factors need to be satisfied for a court to approve a debtor release.[71]

55.     Article VIII.C of the Plan sets forth certain releases by the Debtors, as of the Effective Date, of, among other things, certain Claims, rights, and Causes of Action that the Debtors and the Wind-Down Debtors, and their Estates, may have against the Released Parties (the "Debtor Release").[72] The scope of the Debtor Release is tailored to exclude any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud,

---

must determine whether the compromise is fair, reasonable, and in the best interest of the estate." (citation omitted)).

[70]     *See*, *e.g.*, *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)); *In re Spansion, Inc.*, 426 B.R. at 143 n.47 (citing the *Zenith* factors).

[71]     *See*, *e.g.*, *In re Wash. Mut.*, 442 B.R. at 346 ("These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the [c]ourt's determination of fairness." (citation omitted)); *In re Exide Techs.*, 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that *Zenith* factors are not exclusive or conjunctive requirements).

[72]     Article II of the Plan defines "*Released Parties*" as, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors and the Wind-Down Debtors, as applicable; (b) the Consenting Stakeholders; (c) the DIP Agents; (d) the Term Loan Agent; (e) the 2024 Delayed Draw FILO Loan Agent; (f) the Committee, and each of its members (in their capacities as such);(g) the ABL Agent; (h) the Purchaser; (i) all Holders of Claims against or Interests in the Debtors who affirmatively opt in to the releases provided by the Plan; (j) each current and former Affiliate of each Entity in clause(a) through the following clause (k); and (k) each Related Party of each Entity in clause (a) through clause (j).

gross negligence, or willful misconduct.[73]   The Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.  The Debtor Release meets the applicable standard because it is fair, reasonable, and in the best interests of the Debtors' Estates, the product of extensive arm's-length negotiations, and was critical to obtaining support for the Plan.  Indeed, the Debtor Release was negotiated as part of the Plan and is an indispensable component to achieve final resolution of potential disputes that would otherwise negatively affect the Debtors' Estates to the detriment of all stakeholders.  Further, the scope of the Debtor Release is consistent with those regularly approved in this district.[74]

56.    *First*, each Released Party has made a substantial contribution to the Debtors' Estates.  Delaware bankruptcy courts have recognized that a wide variety of acts may illustrate a substantial contribution to a debtor's estate.[75]  Certain Released Parties played a beneficial role prepetition by preparing the Debtors to transition into chapter 11 and postpetition by negotiating, facilitating, and coordinating the Marketing Process and formulation of the Plan.  Prepetition, certain Released Parties contributed to, through among other things, management of liquidity issues, negotiations with the Debtors' and Purchasers' chapter 11 professionals, and coordination

---

[73]    *See* Plan, Art. VIII.C.

[74]    *See In re EXP OldCo Winddown, Inc.*, No. 24-110831 (KBO) (Bankr. D. Del. Dec. 17, 2024) (confirming a chapter 11 plan including a similar scope of debtor releases); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. Nov. 11, 2024) (same); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Oct. 18, 2024) (same); *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024) (same); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024) (same).

[75]    *See In re Indianapolis Downs. LLC* 486 B.R. 286, 304 (Bankr. D. Del. 2013) (finding that the non-debtor party had substantially contributed by performing services for the debtors post-petition without receiving compensation); *In re Wash. Mut., Inc.*, 442 B.R. at 347 (finding substantial contribution required the contribution of "cash or anything else of a tangible value to the [chapter 11 plan] or to creditors"); *In re Zenith Elecs. Corp.*, 241 B.R. at 111 (finding that directors' and officers' prepetition contribution of work in negotiating a plan constituted adequate consideration for debtor's release).

between the Company's former investment bank and its bankruptcy sale advisors.[76]  In these cases, and in addition to their day-to-day roles, the Debtors' directors and officers, among other things, prepared the Debtors' bankruptcy schedules, negotiated with stakeholders, oversaw the Company's communications strategy, and met with customers.  The Debtors' directors and officers played a crucial role in the sale process as well, by responding to significant diligence requests, meeting with potential purchasers, and preparing for, assisting with, and advising on various issues related to the Sale Transaction.  Further, the opt-in parties have also made contributions to the Plan by waiving certain claims they held against the Debtors and other Released Parties.  Critically, the Releases are necessary for the finality contemplated by the Plan.  Without the Releases contemplated in the Plan, stakeholders may continue to litigate over the Wind-Down Debtors' Estates, which would extend related Wind-Down issues and expenses.  The Releases provide finality, facilitate the consummation of the Plan, and allow for an orderly Wind-Down.  In the absence of these parties' contributions, the Wind-Down process contemplated by the Plan would be exceptionally challenging, if not entirely impossible, to effectuate.  The Debtor Release, therefore, is key to the success of the Debtors' Plan.

57.    ***Second***, the Debtor Release is essential to the success of the Debtors' Plan because it constitutes an integral term of the Plan.  Indeed, absent the Debtor Release, the Debtors may not have been able to build the level of consensus with respect to the Plan and the transactions contemplated thereby.  Importantly, the Debtor Release is the product of arms-length negotiations between the Debtors and their key stakeholders and is limited in scope.  The Debtor Release does not release any entity other than the Released Parties, their respective Affiliates, and each of their

---

[76]    *See In re Hercules Offshore, Inc.*, 565 B.R. 732, 758 (Bankr. D. Del. 2016) (approving debtor releases granted to former officers and directors when the record reflected "an intensive and thoughtful effort by management and the Special Committee to respond to market challenges.").

Related Parties (to the extent such Related Parties would be obligated to grant a release under principles of agency if they were so directed by the Releasing Parties to which they are related) or Debtor Related Parties, as applicable, and does not release the Claims and Causes of Action expressly set forth and preserved by the Plan.[77]  In consideration for the Debtor Release, the Debtors and their Estates will receive mutual releases from potential Claims and Causes of Action of each of the Releasing Parties.[78]  The Debtors do not believe that they have material causes of action against any of the Released Parties that would justify the risk, expense, and delay of pursuing any such causes of action as compared to the results and benefits achieved under the Plan. The Debtors believe the Debtor Release is appropriate in light of the risk, expense, and delay of pursuing any such Causes of Action with respect to the Released Parties as compared to the results and benefits achieved under the Plan.  The Debtor Release provides finality and closure to the Wind-Down process and these Chapter 11 Cases and underpins the various compromises of issues achieved by the Plan.  Therefore, the inclusion of the Debtor Release is integral to the Plan's success, is worthwhile, and inures to the benefit of the Debtors' stakeholders.

58.    ***Third,*** as evidenced by the Voting Report and noted herein, the Debtors' stakeholders overwhelmingly support the Plan, and no stakeholder has objected to the Debtor Release contained in the Plan.  The Voting Classes voted to accept the Plan.[79]  This degree of consensus evidences the Debtors' stakeholders' support for the Debtor Release and Plan.

59.    ***Fourth***, an identity of interest exists between the Debtors and the Released Parties. Whether there is an identity of interest depends on whether the debtor and non-debtor are

---

[77]    *See* Plan, Art. IV.H.

[78]    *See* Plan, Art. VIII.D.

[79]    *See* Voting Report, Ex. A.

sufficiently interlinked such that a lawsuit against the non-debtor would effectively be a lawsuit against the debtor or would deplete the assets of the Estate.[80]  Lawsuits against the Released Parties may implicate the Debtors, and each Released Party shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated thereunder.[81]

60.     For these reasons, the Debtor Release is justified, is in the best interests of creditors and all stakeholders, is an integral part of the Plan, and satisfies key factors considered by courts in determining whether a debtor release is proper.

### (ii)     The Third-Party Release Is Consensual and Appropriate.

61.     The Plan also provides for the Releasing Parties' release of the Released Parties to the extent set forth in the Plan (the "<u>Third-Party Release</u>").[82]  Here, the Plan includes, among other specifically enumerated entities, the following persons as "Releasing Parties" under the Plan and the Third-Party Release:  (a) the Debtors and the Wind-Down Debtors, as applicable; (b) the Consenting Stakeholders; (c) the DIP Agents; (d) the Term Loan Agent; (e) the 2024 Delayed Draw FILO Loan Agent; (f) the Committee, and each of its members (in their capacities as such); (g) the ABL Agent; (h) the Purchaser; (i) all Holders of Claims against or Interests in the Debtors who affirmatively opt in to the releases provided by the Plan; (j) each current and former Affiliate of each Entity in clause (a) through the following clause (k); and (k) each Related Party

---

80   *In re Master Mortgage Inv. Fund*, Inc., 158 B.R. 930 (Bankr. W.D. Mo. 1994).

81   *In re Mercy Hosp.*, No. 23-00623 (TJC), 2024 WL 2890139, at *4 (Bankr. N.D. Iowa 2024) ("Particularly persuasive [to finding that there exists an identity of interest] is the fact that these releases were integral to the consensual nature of the Plan and necessary to avoid the prospect of immense and complex litigation absent the releases."); *see also In re Tribune*, 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding that the debtors and released parties "share the common goal" of confirming a plan dependent on settlement of complex multi-party litigation resulted in an "identity of interest").

82   *See* Plan, Art. VIII.D; *see also* Meltzer Declaration, ¶ 20.

of each Entity in clause (a) through clause (j) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law.[83]   The scope of the Third-Party Release is tailored to exclude any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.[84] The Third-Party Release is appropriate under the circumstances and should be approved because it is consistent with Third Circuit law, integral to the Plan, and is granted on a consensual basis.

62.     Courts in this jurisdiction routinely approve such release provisions if, as here, they are consensual and appropriately tailored.[85]   Consensual releases are permissible on the basis of general principles of contract law.[86]   The law is clear that a release is consensual where parties have received sufficient notice and have had an opportunity to object to and/or opt in to the releases.   In *Emerge*, this Court recognized that a release by a non-debtor third party is consensual where the releasing party indicates its consent by an affirmative act.[87]   Since *Emerge*, this Court and others have approved numerous third-party releases as consensual where the releasing third parties were required to indicate their consent by returning a form indicating the party's desire to

---

[83]   *See* Plan, Art. I.A.136.

[84]   *See* Plan, Art. VIII.D.

[85]   *See*, *e.g.*, *In re Wash. Mut., Inc.,* 442 B.R. at 352 (observing that consensual third-party releases are permissible); *In re Zenith Elecs.*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of the plan).

[86]   *See In re Indianapolis Downs*, *LLC*, 486 B.R. at 305.

[87]   *Compare In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (declining to approve third-party release where holders of claims and interests were presumed to consent to participation in the third-party release if they did not return an opt-out form, regardless of whether such holder returned a ballot); *with*, *e.g.*, *In re AeroCision Parent, LLC*, No. 23-11032 (KBO) (Bankr. D. Del. Mar. 4, 2024) (approving a consensual third-party release that included, among others, all holders of claims who return a ballot voting to accept the plan, with no option to opt out); *In re Virgin Orbit*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) (same); *In re Lucky Bucks,* No. 23-10758 (KBO) (Bankr. D. Del. July 28, 2023) (same, also including all holders of claims who return a ballot voting to reject plan who do not opt out).

participate in the third-party release.[88]

63.     Furthermore, the Supreme Court's decision in *Purdue* is not at odds with the release provisions commonly approved by this Court, and its holding is generally inapplicable to the release provisions contemplated by the Debtors.  In *Purdue*, the Supreme Court made clear the narrow scope of the decision by pointing out that "nothing in this opinion should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan."[89]  Therefore, *Purdue*'s applicability is limited to cases where a debtor or debtors seek approval of non-consensual third-party releases.

64.     Here, all parties in interest were provided extensive notice of these Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan.  Moreover, the Disclosure Statement, the Combined Hearing Notice, the Ballots, the Notices of Non-Voting Status, and the Opt In Forms provided recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Releases.  The Debtors required all Holders of Claims or Interests to affirmatively opt in to the Third-Party Releases by either checking a box on the Ballot and returning the Ballot, or by completing and returning the applicable Opt In Form, and provided each Holder of a Claim or Interest with ample notice and instructions on how to do so.  As of the time of filing, 131 parties have affirmatively opted into the Third-Party Release by completing and returning a Ballot with the applicable box checked, or by completing and returning the applicable Opt In Form.[90]

---

[88]    *See, e.g.*, *In re Casa Systems, Inc.*, No. 24-10695 (KBO) (Bankr. D. Del. June 5, 2024); *In re Restoration Forest Prods. Grp., Inc.*, No. 24-10120 (KBO) (Bankr. D. Del. Mar. 27, 2024); *In re Zymergen*, No. 23-11661 (KBO) (Bankr. D. Del. Feb. 5, 2024); *In re AeroCsision*, No. 23-11032 (KBO) (Bankr. D. Del. March 4, 2024); *In re Virgin Orbit*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023); *In re Stimwave Techs. Inc.*, No. 22-10541 (KBO) (Bankr. D. Del. March 21, 2023); *In re Alto Maipo*, No. 21-11507 (KBO) (Bankr. D. Del. May 13, 2022).

[89]    144 S. Ct. at 2074 (2024).

[90]    *See* Voting Report, ¶ 19.

65.     For all of these reasons, the inclusion of "Holders of Claims Against or Interests in the Debtors who affirmatively opt in to the releases provided by the Plan" as "Releasing Parties" under the Plan and with respect to the Third-Party Release is appropriate and should be approved. Importantly, the Combined Hearing Notice, the Ballots, and the Informational Appendix to Notice of Opt In Form Regarding Releases and Non-Voting Status to Holders of Unimpaired, Impaired, or Disputed Claims or Interests Conclusively Presumed to Accept the Plan, as applicable, quoted the entirety of the Third-Party Release in bold, conspicuous font, and clearly provided such Holders with detailed instructions on how to opt in to the Third-Party Release. Thus, affected parties were on notice of the Third-Party Release, including the option to opt into the Third-Party Release. All Holders of Claims and Interests also had the opportunity to object to the Third-Party Release by timely filing an objection to the Plan. The Third-Party Release is therefore consensual as to all creditors and interest holders who affirmatively opted in to the Third-Party Release.

66.     The Third-Party Release brought key stakeholders to the table for negotiations around the DIP Facilities, the Sale Transaction, and the Plan, each of which contributed to the Debtors' success in chapter 11. As noted in the Meltzer Declaration, the Third-Party Release was critical to incentivizing key parties to support the Plan.[91] And importantly, the Third-Party Release only applies to those parties who have (a) actively participated in the chapter 11 or Plan process, including in the formulation and negotiation of the Third-Party Release or (b) manifested their affirmative consent to the Third-Party Release. Thus, the Third-Party Release is wholly consensual and the factors governing non-consensual third-party releases under *In re Cont'l Airlines* and its progeny are inapplicable.[92]

---

[91]     *See* Meltzer Declaration, ¶ 21.

[92]     *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 213-14 (3d Cir. 2000).

67.      The Debtors submit that the inclusion of "Affiliates" and "Related Parties" as "Releasing Parties" is also appropriate, even though those parties have not necessarily manifested consent to the Third-Party Releases.[93]  Courts in this district regularly approve such provisions, so long as the Plan specifies that such entities are "Releasing Parties" solely to the extent they can be bound under principles of applicable agency law by the "Releasing Party" to which they are related, so that a hypothetical future court may intelligibly interpret the Plan to determine if a party was released or not.[94]   Here, the Plan provides that "Affiliates" and "Related Parties" are "Releasing Parties" to the extent that "such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law."[95] Therefore, the inclusion of "Affiliates" and "Related Parties" in the Third-Party Release should be approved.

68.      For the foregoing reasons, the Third-Party Release is consensual, permissible, and should be approved.

### (iii)      The Exculpation Provision Is Appropriate.

69.      Exculpation provisions that apply only to estate fiduciaries and are limited to claims not involving actual fraud, willful misconduct, or gross negligence, are customary and generally approved in this district under appropriate circumstances.[96]   Unlike third-party releases, exculpation provisions do not affect the liability of third parties *per se*, but rather set a standard of care of actual fraud, gross negligence, or willful misconduct in future litigation by a non-releasing

---

[93]    *See* Plan, Art. VIII.D.

[94]    *See*, *e.g.*, *In re Virgin Orbit Holdings, Inc.,* No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023).

[95]    Plan, Art. I.A.119.

[96]    *See In re Wash. Mut., Inc.*, 442 B.R. 314, 350–51 (Bankr. D. Del. 2011) (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate); *see also In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) (approving exculpation of related parties "to the extent they are estate fiduciaries").

party against an "Exculpated Party" for acts arising out of the Debtors' restructuring.[97]

A bankruptcy court has the power to approve an exculpation provision in a chapter 11 plan because a bankruptcy court cannot confirm a chapter 11 plan unless it finds that the plan has been proposed in good faith.[98]  As such, an exculpation provision represents a legal conclusion that flows inevitably from the findings a bankruptcy court must reach in confirming a plan.  Once the court makes its good faith finding, it is appropriate to set the standard of care of the fiduciaries involved in the formation of that plan.[99]

70.    Article VIII.E of the Plan provides for the exculpation of the Exculpated Parties.[100] The exculpation provision is fair and appropriate under both applicable law and the facts and circumstances of these Chapter 11 Cases.  The Plan's exculpation provision was critical to obtaining the support of various constituencies for the Plan.  The exculpation provision was important to the development of a feasible, confirmable Plan, and the Exculpated Parties participated in the negotiation, formulation, and solicitation of the Plan in reliance upon the protections afforded to those constituents by the exculpation.

---

[97]   *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l Holdings, Inc.*, 2010 WL 2745964, at *10 (approving a similar exculpation provision as that provided for under the Plan); *In re Spansion, Inc.,*, No. 09-10690 (KJC), 2010 WL 2905001, at *16 (Bankr. D. Del. 2010) (same).

[98]   *See* 11 U.S.C. § 1129(a)(3)

[99]   *See In re PWS Holding Corp.*, 228 F.3d at 246 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . .for actions within the scope of their duties").

[100]  Article VIII.E of the Plan sets forth the terms of the exculpation of the Exculpated Parties.  Article I.A.78 of the Plan defines "*Exculpated Parties*" as, to the extent they are estate fiduciaries, and in each case in their respective capacities as such on or after the Petition Date through and including the Effective Date:  (a) the Debtors; (b) the Committee and each of its respective members; and (c) with respect to the Entities in clause (a) and (b), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

71.    Moreover, the exculpation provision and the liability standard it sets represents a conclusion of law that flows logically from certain findings of fact that this Court must reach in confirming the Plan as it relates to the Debtors.  As discussed above, this Court must find, under section 1129(a)(2) of the Bankruptcy Code, that the Debtors have complied with the applicable provisions of the Bankruptcy Code.  Additionally, this Court must find, under section 1129(a)(3) of the Bankruptcy Code, that the Plan has been proposed in good faith and not by any means forbidden by law.  These findings apply to the Debtors and, by extension, to certain of the Debtors' current and former officers, directors, employees, and professionals.  Furthermore, these findings imply that the Plan was negotiated at arm's-length and in good faith.  Where such findings are made, parties who have been actively involved in such negotiations should be protected from collateral attack.

72.    Here, the Debtors and their officers, directors, and professionals who served in such capacities on or after the Petition Date actively negotiated with Holders of Claims and Interests across the Debtors' capital structure, including the Ad Hoc Group, the ABL Lenders, and the Committee, among others, in connection with formulating, and/or implementing the DIP Facilities, the Sale Transaction, and the Plan.[101]   Such negotiations were extensive and conducted at arm's- length.[102]   As a result, the Debtors have largely achieved their chapter 11 objectives, and the Plan enjoys broad support from Holders of Claims entitled to vote.[103]   The Exculpated Parties played a critical role in negotiating, formulating, and implementing the DIP Facilities, the Sale Transaction, the Disclosure Statement, the Plan, and related documents in furtherance of the

---

[101]  *See* Meltzer Declaration, ¶ 23.

[102]  *See* Meltzer Declaration, ¶ 23.

[103]  *See*, *e.g.*, Voting Report, Ex. A.

Wind-Down Transactions.[104]   Accordingly, this Court's findings of good faith vis-à-vis the Debtors' Chapter 11 Cases should also extend to the Exculpated Parties.  The Exculpated Parties have participated in good faith in formulating and negotiating the Plan as it relates to the Debtors and assisted with the Sale Transaction of substantially all of the Debtors' assets, and they should be entitled to protection from exposure to lawsuits filed by disgruntled creditors or other unsatisfied parties.

73.     In addition, the promise of exculpation played a significant role in facilitating negotiations on the Plan.  As set forth in the Plan, the scope of the exculpation provision is narrowly tailored to exclude actual fraud, willful misconduct, or gross negligence, relates only to acts or omissions in the Exculpated Party's capacity as an Estate fiduciary in connection with or arising out of the Debtors' restructuring, is limited to the duration of time between the Petition Date and Effective Date, and ultimately inures to the benefit of only those parties traditionally considered Estate fiduciaries and their agents.[105]

74.     Accordingly, under the circumstances, it is appropriate for this Court to approve the exculpation provision and to find that the Exculpated Parties have acted in good faith and in compliance with the law.[106]

### (iv)     The Injunction Provision Is Appropriate.

75.     The injunction provision set forth in Article VIII.F of the Plan merely implements the Plan's release and exculpation provisions by enjoining all entities from commencing or

---

[104]   *See* June 23, 2016, Hr'g Tr., 58:18–19, *In re Verso Corp.*, No. 16-10163 (KG), Docket No. 1231 (Bankr. D. Del. June 24, 2016) ("[T]he debtors did not do this alone; they did it with the help of many others.").

[105]   *See* Plan, Art. VIII.E.

[106]   *See In re PWS Holding Corp.*, 228 F.3d at 246–47 (approving plan exculpation provision exception for willful misconduct and gross negligence); *In re Indianapolis Downs, LLC*, 486 B.R. at 306 (same).

maintaining any action against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any Claims or Interests released or subject to exculpation. Courts in this district hold that, under a chapter 11 plan of liquidation, although a debtor may not receive a discharge under section 524 of the Bankruptcy Code in the form of "***permanent*** injunctive relief," a liquidating debtor may nevertheless receive "***temporary*** injunctive relief that will remain in effect only as long as those entities hold assets."[107]. Thus, the injunction provision is a key provision of the Plan because it enforces the release and exculpation provisions that are centrally important to the Plan. Moreover, this injunction provision is narrowly tailored to achieve its purpose and consensual as to any party that did not specifically object to it. As such, to the extent this Court finds that the exculpation and release provisions are appropriate, the Debtors respectfully submit that the injunction provision must also be appropriate.

### 4.    The Plan Complies with § 1123(d) of the Bankruptcy Code.

76.    Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."[108]

77.    The Plan complies with section 1123(d) of the Bankruptcy Code. The Plan provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan in accordance with section 365 of the Bankruptcy Code, by payment of the default amount, if any, on the Effective Date or as soon as reasonably practicable thereafter, subject to any limitations described in the Plan, the Sale Order, or the Confirmation

---

[107]  Letter Ruling at 3, *In re Kabbage Inc.,* No. 22-10951 (CTG) (Bankr. D. Del. Mar. 15, 2025).

[108]  11 U.S.C. § 1123(d).

Order.[109]  Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases, with the consent of the Purchaser, at any time through and including ninety-days after the Closing Date of the Sale Transaction.[110]

78.    Accordingly, the Debtors submit that the Plan fully complies with Section 1123(d) of the Bankruptcy Code.

**B.    The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).**

79.    The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a chapter 11 plan comply with the applicable provisions of the Bankruptcy Code.[111]  The legislative history of section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.[112]  As discussed below, the Debtors have complied with sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and solicitation of the Plan.

---

[109]  *See* Plan, Art. V.D.

[110]  *See* Plan, Art. V.A.

[111]  11 U.S.C. § 1129(a)(2).

[112]  *See*, *e.g.*, *In re Lapworth*, 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)." (citations omitted)); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code").

### 1.    The Debtors Complied with § 1125 of the Bankruptcy Code.

80.    Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[113]  Section 1125 of the Bankruptcy Code ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision on whether to approve or reject the plan.[114]

81.    Section 1125 of the Bankruptcy Code is satisfied here.  Before the Debtors solicited votes on the Plan, the Court conditionally approved the Disclosure Statement in accordance with section 1125(a)(1).[115]  The Court also approved the contents of the Combined Hearing Notice, the Solicitation Packages provided to Holders of Claims entitled to vote on the Plan, the applicable Notices of Non-Voting Status, Opt In Forms, and other materials provided to parties not entitled to vote on the Plan, and the relevant dates for voting and objecting to the Plan.[116]  As stated in the Voting Report, the Debtors, through the Notice, Claims, and Solicitation Agent, complied with the content and delivery requirements of the Conditional Disclosure Statement Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code.[117]  The Debtors also satisfied

---

[113]  11 U.S.C. § 1125(b).

[114]  *See Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the Plan).

[115]  *See* Conditional Disclosure Statement Order.

[116]  *Id.*

[117]  *See* Voting Report; *see also Affidavit of Service* with respect to the Disclosure Statement Order [Docket No. 780].

section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.[118]

82.    Based on the foregoing, the Debtors have complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Conditional Disclosure Statement Order.

### 2.    The Debtors Complied with § 1126 of the Bankruptcy Code.

83.    Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a chapter 11 plan.  Specifically, under section 1126 of the Bankruptcy Code, only holders of allowed claims and allowed interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan.  Section 1126 of the Bankruptcy Code provides, in pertinent part, that:

(a)    The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .

(f)    Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g)    Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive any property under the plan on account of such claims or interests.[119]

84.    As set forth in the Disclosure Statement Order, in accordance with section 1125 of the Bankruptcy Code, the Debtors solicited votes from the Holders of Allowed Claims in Classes 3, 4, and 5—the only Classes entitled to vote on the Plan.  The Debtors did not solicit votes from

---

[118]  *See* Voting Report.

[119]  11 U.S.C. §§ 1126(a), (f), (g).

Holders of Claims and Interests in Classes 1, 2, 6, 7, 8 or 9 because Holders of such Claims and Interests are either Unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or Impaired and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. For example, depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan. Thus, pursuant to section 1126(a) of the Bankruptcy Code, only Holders of Claims in Classes 3, 4, and 5 were entitled to vote to accept or reject the Plan.[120]

85.    With respect to the Voting Classes, section 1126(c) of the Bankruptcy Code provides that a class accepts a plan where holders of claims holding at least two-thirds in amount and more than one-half in number of allowed claims in such class of those voting vote to accept such plan. The Voting Report reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.[121] Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

C.    **The Plan Is Proposed in Good Faith (§ 1129(a)(3)).**

86.    Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[122] Where a plan satisfies the purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement

---

[120]  *See* Plan, Art. III.

[121]  *See generally* Voting Report.

[122]  11 U.S.C. § 1129(a)(3).

of section 1129(a)(3) of the Bankruptcy Code is satisfied.[123]  To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[124]

87.    The Debtors negotiated, developed, and proposed the Plan in good faith. Throughout these Chapter 11 Cases, the Debtors worked to build consensus among their stakeholders.  The Plan is the result of extensive arm's-length negotiations among the Debtors, the Consenting Stakeholders, the Committee, and their respective advisors.  Accordingly, the Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.[125]

**D.    The Plan Provides That the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)).**

88.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent or by the debtor be subject to approval by the court as reasonable.[126]

---

123  *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985)); *In re Century Glove, Inc.*, Civ. A. Nos. 90-400-SLR and 90-401-SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

124  *See, e.g.*, *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012) ("[A] determination of good faith associated with a Chapter 11 reorganization plan requires a factual inquiry into a totality of the circumstances surrounding the plan's proposal." (citing *In re Sun Country Dev., Inc.*, 764 F. 2d at 408)); *Century Glove*, 1993 WL 239489, at *4 ("The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start." (citing *In re Sun Country Dev., Inc.*, 764 F.2d at 408)); *T-H New Orleans*, 116 F.3d at 802 (same).

125  *See* Bienias Declaration, ¶ 30.

126  *See* 11 U.S.C. § 1129(a)(4).

Courts have construed this section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the court as to their reasonableness.[127]

89.    The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.  The payment of Professional Fee Claims is the only category of payments that fall within the ambit of section 1129(a)(4) of the Bankruptcy Code in these Chapter 11 Cases.  The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 and 330 of the Bankruptcy Code.[128]  The Plan also provides that the requirement of Court approval with respect to compensation of Professionals' fees and expenses will terminate on the Confirmation Date.[129]  Similar relief has been approved in comparable chapter 11 cases in this Court.[130]  Moreover, the Plan provides that the Debtors' Professionals shall file all final requests for payment of Professional Fee Claims no later than forty-five (45) days after the Effective Date, thereby providing an adequate period of time for interested parties to review the requests for payment of Professional Fee Claims.[131]

---

[127]   *See In re Lisanti Foods, Inc.*, 329 B.R. 491, 503 (D.N.J. 2005) ("Pursuant to § 1129(a)(4), a [p]lan should not be confirmed unless fees and expenses related to the [p]lan have been approved, or are subject to the approval, of the Bankruptcy Court."); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) (holding that fees and expenses related to the plan are subject to the approval by the bankruptcy court); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[128]   11 U.S.C. §§ 328(a), 330(a)(1)(A); *see* Plan, Art. II.B.

[129]   Plan, Art. II.B.1.

[130]   *See, e.g.*, *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024) (confirming a plan where the requirement of court approval of debtors' professional fees would terminate on the confirmation date); *In re Project Sage M Holdings Oldco, Inc.*, No. 24-10425 (JTD) (Bankr. D. Del. June 18, 2024) (same); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Mar. 29, 2024) (same).

[131]   Plan Art. II.B.1.

E.    **The Debtors Disclosed All Necessary Information Regarding Post-Effective Date Governance (§ 1129(a)(5)).**

90.    Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires that a plan proponent disclose "the identity and affiliations" of the proposed officers and directors of any successor to the debtor,[132] and section 1129(a)(5)(A)(ii) requires that any such appointment be "consistent with public the interests of creditors and equity security holders and with public policy."[133] Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the identity of an "insider" (as defined by section 101(31) of the Bankruptcy Code) to be employed or retained by a successor to the debtor, and the nature of any compensation for such insider.

91.    The Plan satisfies section 1129(a)(5) of the Bankruptcy Code.  Article IV.C of the Plan provides for the appointment of a Plan Administrator to act as the sole director and sole officer of each of the Wind-Down Debtors, and the retention of Brian C. Maloney and Ronald J. Bienias as Interim Chief Financial Officer and Secretary and Chief Restructuring Officer, respectively, by the Wind-Down Debtors to assist the Plan Administrator in effectuating the Wind-Down of the Wind-Down Debtors' Estates.[134]  The Debtors have disclosed the identity, responsibilities, and compensation of the Plan Administrator, who was appointed by the Debtors, in consultation with the Committee.[135]  The Plan provides that the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of Holders of Claims and Interests who are entitled receive distributions

---

[132]  11 U.S.C. § 1129(a)(5)(A)(i).

[133]  11 U.S.C. § 1129(a)(5)(A)(ii).

[134]  *See* Plan, Art. IV.C.3.

[135]  *See* Plan Supplement.

pursuant to Plan.[136]   Therefore, the requirements under section 1129(a)(5) of the Bankruptcy Code are satisfied.

**F.     The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6)).**

92.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.   Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

**G.     The Plan Is in the Best Interests of All the Debtors' Creditors (§ 1129(a)(7)).**

93.     Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a value of not less than the value such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.[137]   The best interests test applies to individual dissenting holders of impaired claims and interests rather than classes,[138] and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's chapter 11 plan.[139]

---

[136]   Plan, Art. IV.C.3(e).

[137]   *See* 11 U.S.C. § 1129(a)(7)(A)(ii).

[138]   *See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[139]   *See In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985) (stating that "best interests" of creditors means "creditors must receive distributions under the Chapter 11 plan with a present value at least equal to what they would have received in a Chapter 7 liquidation of the Debtor as of the effective date of the plan"), *aff'd*, 785 F.2d 1033 (5th Cir. 1986); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a

94.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test.  As set forth in the Disclosure Statement, the Debtors believe that the Plan satisfies the best interests test because, among other things, the recovery to be available to Holders of Allowed Claims or Interests under the Plan—if any—will be not less than the recoveries expected to be available in a chapter 7 liquidation—if any.  While the Debtors do not presently anticipate that any Holders of Claims against the Debtors in Class 3 (Term Loan Secured Claims), Class 4 (Term Loan Deficiency Claims), and Class 5 (General Unsecured Claims) will receive any distribution or recovery on account of their Claim(s), the Debtors believe that the same would be true in a chapter 7 liquidation, which may also involve incremental costs, delays, and uncertainties.  The Plan therefore provides Holders of Claims in Classes 3, 4, and 5 with value that is not less than the amount that would be retained under a chapter 7 proceeding.  In light of the minimal remaining assets and incremental costs of a liquidation, no party would be better off in a chapter 7 liquidation.[140]  Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

**H.      The Plan Is Confirmable Notwithstanding the Requirements of § 1129(a)(8) of the Bankruptcy Code.**

95.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  Under the Plan, certain Classes of Claims and Interests were Unimpaired and conclusively presumed to accept the Plan and certain Classes of Claims and Interests are deemed to have rejected the Plan and, thus, were not entitled

---

determination whether a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization." (citation omitted) (internal quotation marks omitted)).

[140]  As discussed herein, the Debtors believe that they have sufficient resources to consummate the transactions contemplated in the Plan and satisfy certain administrative, priority, and other claims necessary to confirm a plan.  Despite this, it is highly unlikely that material assets will remain for distribution.  This is because the funds left behind by the Purchaser, to the extent not used to confirm the Plan and wind-down the Debtors' estates, are required to be returned to the Purchaser pursuant to section 3.2(b) of the Asset Purchase Agreement.  In the absence of this provision, the Debtors would have been left with more limited funds to pursue confirmation of the Plan and a wind-down of their estates, putting the Debtors at a greater risk of administrative insolvency.

to vote.[141]  While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect

to the Impaired Classes that were deemed to reject the Plan, the Plan is confirmable nonetheless

because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

### I.    The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)).

96.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be

paid in full on the effective date of a plan or receive certain other specified treatment as agreed by

the claim holder in satisfaction of the claim and that the holders of certain other priority claims

receive deferred cash payments.[142]  In particular, pursuant to section 1129(a)(9)(A) of the

Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the

Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—

must receive on the effective date cash equal to the allowed amount of such claims.[143]

Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind

specified in sections 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage,

employee benefit, and deposit claims are entitled to priority—must receive deferred cash payments

of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such

class has accepted the plan), or cash value on the effective date of the plan equal to the allowed

amount of such claim (if such class has not accepted the plan).[144]  Finally, section 1129(a)(9)(C)

of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8)

of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not

---

141  *See* Plan, Art. III.

142  *See* 11 U.S.C. § 1129(a)(9).

143  11 U.S.C. § 1129(a)(9)(A).

144  11 U.S.C. § 1129(a)(9)(B).

to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.[145]

97.    The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.  *First*, Article II.A of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Claim not assumed by the Purchaser that is Allowed on or prior to the Effective Date, will receive payment in full in Cash on the Effective Date or as soon as reasonably practicable thereafter, or on such terms as agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable. *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no Holders of the types of Claims specified by 1129(a)(9)(B) of the Bankruptcy Code are Impaired under the Plan and such Claims have been paid in the ordinary course.  *Third*, Article II.C of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that Holders of Allowed Priority Tax Claims shall be treated in accordance with the terms of Section 1129(a)(9)(C) of the Bankruptcy Code.   The Plan therefore satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.    At Least One Class of Impaired, Non-Insider Claims Accepted the Plan (§ 1129(a)(10)).**

98.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider," as an alternative to the requirement

---

[145]  11 U.S.C. § 1129(a)(9)(C).

under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.[146]

99.    Here, Classes 3,4, and 5, which are Impaired, voted to accept the Plan independent of any insiders' votes with respect to every Debtor entity.[147]  Thus, the Plan has been accepted by at least one Voting Class holding Impaired, non-insider claims with respect to each Debtor.

100.    Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**K.    The Plan Is Feasible (§ 1129(a)(11)).**

101.    Section 1129(a)(11) of the Bankruptcy Code requires that this Court find that a plan is feasible as a condition precedent to confirmation.  Specifically, this Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[148]  To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[149]  Rather, a debtor must provide only a reasonable assurance of success.[150]  There is a relatively low threshold of proof necessary to satisfy

---

[146] 11 U.S.C. § 1129(a)(10).

[147] *See* Voting Report, Ex. A.

[148] 11 U.S.C. § 1129(a)(11).

[149] *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed."); *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012) (stating that the bankruptcy court "need not require a guarantee of success" (citations omitted) (internal quotation marks omitted)); *In re W.R. Grace & Co.*, 475 B.R. at 115; *In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

[150] *Kane*, 843 F.2d at 649; *In re Flintkote Co.*, 486 B.R. at 139; *In re W.R. Grace & Co.*, 475 B.R. at 115; *see also Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation" (internal quotation marks omitted) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11] (15th ed. 1984)));

the feasibility requirement.[151]  As demonstrated below, the Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.

102.    The Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code by providing that the Debtors will be able to satisfy all of their obligations under the Plan.[152]  The Plan provides for the orderly liquidation and Wind-Down of the Debtors' Estates.[153]  The Debtors and their Advisors have analyzed the Debtors' and/or Wind-Down Debtors' ability to meet their obligations under the Plan.  The Debtors have analyzed the Debtors' and Wind-Down Debtors' ability to maintain adequate liquidity to effectively Wind-Down the Wind-Down Debtors' Estates and determined that, following the consummation of the Sale Transaction, the Debtors have adequate funds, primarily from, the Retained Cash, which provides sufficient funding for the activities and expenses that will be incurred in connection with the Wind-Down, and may be increased subject to the approval of the Purchaser.  The Debtors, along with their professionals, have closely evaluated their Cash situation to ensure that they will be able to make all Plan payments required on the Effective Date as well as the months to come and as a result anticipate being able to satisfy all Debtor obligations under the Plan. [154]

---

*In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

[151]  *See, e.g.*, *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility" (citations omitted) (internal quotation marks omitted)); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D.N.J. 1996); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *on reconsideration,* 464 B.R. 208 (Bankr. D. Del. 2011).

[152]  *See* Plan, Art. IV.C.2 (describing "Sources of Consideration for the Plan Distributions").

[153]  *See* Plan, Art. IV.C.

[154]  *See* Bienias Declaration, ¶ 42.

103.    The Plan provides closure and assurance that the assets of the Debtors' Estates, through the Wind-Down, will be distributed in an efficient and value-maximizing manner subject to the Debtors' obligations under the Plan without the need for any further financial restructuring. Thus, the Plan satisfies the feasibility requirement under section 1129(a)(11) of the Bankruptcy Code.

**L.    All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)).**

104.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan."[155]  Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.[156]  The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article II.D of the Plan provides that all fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, to the extent applicable, the Debtors or the Wind-Down Debtors, as applicable, shall pay or cause to be paid any and all such fees when due and payable, and shall file with this Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor or Wind-Down Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first.[157]

---

[155]  11 U.S.C. § 1129(a)(12).

[156]  11 U.S.C. § 507(a)(2).

[157]  *See* Plan, Art. II.D.

**M.      Sections 1129(a)(13) through 1129(a)(16) Do Not Apply to the Plan.**

105.     A number of the Bankruptcy Code's confirmation requirements are inapplicable to the Plan.  Section 1129(a)(13) of the Bankruptcy Code requires chapter 11 plans to continue all "retiree benefits" (as defined in section 1114 of the Bankruptcy Code).[158]  The Debtors have no obligations to pay retiree benefits after the Effective Date and, as such, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.  Section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan because the Debtors are not subject to any domestic support obligations.[159]  Section 1129(a)(15) is inapplicable to the Plan because none of the Debtors are "individuals" as that term is defined in the Bankruptcy Code.[160]  Section 1129(a)(16) of the Bankruptcy Code is also inapplicable because the Plan does not provide for any property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.[161]

**N.      The Plan Satisfies the "Cram Down" Requirements of § 1129(b) of the Bankruptcy Code.**

106.     Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[162]  To confirm a plan that has not been

---

[158]  11 U.S.C. § 1129(a)(13).  Section 1114(a) of the Bankruptcy Code defines "retiree benefits" as: "[P]ayments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title."

[159]  *See id.* 11 U.S.C. § 1129(a)(14).

[160]  *See id.* 11 U.S.C. § 1129(a)(15).

[161]  *See id.* 11 U.S.C. § 1129(a)(16).

[162]  *See* 11 U.S.C. § 1129(b).

accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[163]  Notwithstanding the fact Classes 8 and 9, and, potentially, Classes 6 and 7, are deemed to have rejected the Plan, the Plan is confirmable because it complies with sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

### 1. The Plan Does Not Unfairly Discriminate Under § 1129(B)(1) with Respect to the Impaired Classes That Have Not Voted to Accept the Plan.

107.    Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[164]  In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if (a) it provides less favorable treatment to a dissenting class of creditors than to another class of creditors with similar legal rights, taking into account whether the different treatment is material and the relative risks

---

[163]  *See* 11 U.S.C. § 1129(b)(1); *In re Route 37 Bus. Park Assocs.*, 987 F.2d at 157 n.5; *Liberty Nat'l Enters. v. Ambanc La Mesa L.P. (In re Ambanc La Mesa L.P.)*, 115 F.3d 650, 653 (9th Cir. 1997) ("[T]he [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

[164]  *See Hargreaves v. Nuverra Env't Sols., Inc. (In re Nuverra)*, 590 B.R. 75, 93 (D. Del. 2018), *aff'd*, 834 F. App'x 729 (3d Cir. 2021), *as amended* (Feb. 2, 2021) ("As unfair discrimination is not defined in the Bankruptcy Code, courts must examine the facts and circumstances of the particular case to determine whether unfair discrimination exists."); *In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."), *rev'd on other grounds, 203 N. LaSalle St. P'ship*, 526 U.S. 434; *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination.").

associated with each class's treatment, and (b) there is not sufficient justification for doing so.[165] A threshold inquiry to assessing whether a proposed chapter 11 plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[166]

108.    With respect to Class 6 (Intercompany Claims), which may be either Impaired or Unimpaired at the discretion of the applicable Debtor or Wind-Down Debtor, the Plan's classification of Intercompany Claims is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment and the Plan's classification scheme rests on a legally acceptable rationale, including in relation to their priority within the Debtors' capital structure, their differing legal nature, and their respective rights against the Debtors.[167]

109.    With respect to Class 7 (Intercompany Interests), the relevant Interests may be Impaired or Unimpaired, at the election of the applicable Debtor or Wind-Down Debtor. These Intercompany Interests, which exist to support the Debtors' corporate structure, ultimately may be, *inter alia*, set off, settled, addressed, distributed, contributed, merged, cancelled, or released at the election of the applicable Debtor or Wind Down Debtor. This treatment of Intercompany

---

[165] *See In re Nuverra*, 590 B.R. at 75, 93 (D. Del. 2018) (holding that a plan's unequal treatment of substantially similar claims did not constitute unfair discrimination where such unequal treatment was justified); *In re Aleris Int'l*, No. 09-10478 (BLS) 2010 WL 3492664, at *31 (Bankr. D. Del. May 13, 201) ("[S]ection 1129(b) of the Bankruptcy Code ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value the dissenting class will receive under a plan when compared to the value given to all other similarly situated classes." (citing *In re Armstrong World Indus.*, 348 B.R. at 121)); *In re Coram Healthcare Corp.*, 315 B.R. at 321, 349 (D. Del. 2004) (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie Speech Prods., N.V.* 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination), *aff'd sub nom, In re Lernout & Hauspie Speech Prod., N.V.* 308 B.R. 672 (D. Del. 2004); *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d. 650, 656-57 (9th Cir. 1997) (same); *In re Johns-Manville Corp.* 68 B.R. 618, 636 (Bankr. S.D.N.Y 1986) (stating that interests of objecting class were not similar to comparable to those of any other class and thus there was no unfair discrimination).

[166] *See In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *31 (citing *In re Armstrong World Indus.*, 348 B.R. at 121).

[167] *See* Plan, Art. III.C.6.

Interests advances the Debtors' Wind-Down Transactions by avoiding the need to unwind and recreate the corporate structure and relationships of the Wind-Down Debtors.[168]  This treatment, including Reinstatement, does not affect the economic substance of the Plan for the Debtors' stakeholders.

110.    With respect to Class 8 (Equity Interests), the Debtors formed Class 8 to include Holders of Equity Interests in ATD New Holdings, Inc.  Equity Interests are classified separately from Intercompany Interests (i) due to the fundamental difference between being a third-party stockholder in ATD New Holdings, Inc. and holding an Interest (which is broader than Equity Interest) in an entity housed under the same corporate umbrella as the Holder of such Interest; and also (ii) to preserve the option to address Intercompany Interests at the election of the applicable Debtor or Wind-Down Debtor.  Significantly, Holders of Equity Interests will not receive a recovery under the Plan.[169]  Thus, the Plan's treatment of Class 8 is proper because no similarly situated class will receive more favorable treatment.  Finally, Class 9 (Section 510(b) Claims) is separately classified to reflect the treatment of such Claims under section 510(b) of the Bankruptcy Code.

111.    Thus, the Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code and may be confirmed notwithstanding the deemed rejection by Classes 6, 7, 8, and 9, as applicable.

### O.    The Plan Is Fair and Equitable (§ 1129(b)(2)(B)(ii)).

112.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.  This

---

[168]  *See* Plan, Art. III.C.7.

[169]  *See* Plan, Art. III.C.8.

requires either that an impaired rejecting class of claims or interests be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.[170] Under the Plan, no Holder of a Claim or Interest junior to an Impaired rejecting Class of Claims or Interests will receive any recovery due to such Claim or Interest.[171] To the extent that Intercompany Claims and Intercompany Interests are Unimpaired because of certain distributions received pursuant to the Plan, such distributions are not being received by Holders of such Intercompany Claims and Intercompany Interests on account of their Intercompany Claims and Intercompany Interests but, rather, for the purposes of administrative convenience and efficiency, for the ultimate benefit of all parties in interest. Any distribution with respect to Intercompany Claims and Intercompany Interests will thus have no economic substance.[172] Accordingly, the Plan is "fair and equitable" with respect to all Impaired Classes of Claims and Interests and satisfies section 1129(b) of the Bankruptcy Code.

---

[170] *See* 11 U.S.C. 1129(b)(2); *see also In re Armstrong World Indus.*, 348 B.R. at 114 (stating that the absolute priority rule is embodied in section 1129(b) of the Bankruptcy Code).

[171] *See* Plan, Art. III.C.

[172] *See In re ION Media Networks, Inc.*, No. 09-13125 (JMP), 419 B.R. 585 (Bankr. S.D.N.Y. Nov. 24, 2009) ("This technical preservation of equity is a means to preserve the corporate structure that does not have any economic substance and that does not enable any junior creditor or interest holder to retain or recover any value under the Plan. The Plan's retention of intercompany equity interests for holding company purposes constitutes a device utilized to allow the Debtors to maintain their organizational structure and avoid the unnecessary cost of having to reconstitute that structure.").

**P.    The Plan Complies with the Other Provisions of § 1129 of the Bankruptcy Code (§ 1129(c)–(e)).**

113.    The Plan satisfies the remaining provisions of section 1129 of the Bankruptcy Code.  Section 1129(c), prohibiting confirmation of multiple plans, is not implicated because there is only one proposed joint chapter 11 plan.[173]

114.    Section 1129(d) of the Bankruptcy Code provides that "on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[174]  The principal purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.[175]  Rather, the Debtors are proposing the Plan for the purpose of providing for an orderly wind-down of the Debtors' Estates.[176]  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

115.    Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because none of the Debtors' chapter 11 cases is a "small business case."[177]  Thus, the Plan satisfies the Bankruptcy Code's mandatory confirmation requirements.

---

[173]  *See* 11 U.S.C. § 1129(c).

[174]  11 U.S.C. § 1129(d).

[175]  15 U.S.C. § 77(e).

[176]  Bienias Declaration, ¶ 45.

[177]  *See* 11 U.S.C. § 1129(e).  A "small business debtor" cannot be a member "of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $3,024,725 (excluding debt owed to 1 or more affiliates or insiders)."  11 U.S.C. § 101(51D)(B).

## III.    The Waiver of a Stay of the Confirmation Order and the Proposed Modifications to the Plan Are Appropriate.

### A.    Good Cause Exists to Waive the Stay of the Confirmation Order.

116.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."[178] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.[179]  Each rule also permits modification of the imposed stay upon court order.

117.    The Debtors submit that good cause exists for waiving and eliminating any stay of the proposed Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the proposed Confirmation Order will be effective immediately upon its entry.  As noted above, these Chapter 11 Cases and the related transactions under the Plan are consensual and have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information.  The Debtors have undertaken great efforts to efficiently close the Sale Transaction, Wind-Down the remaining operations, and march toward their exit from chapter 11 as soon as practicable.  Additionally, for each day the Debtors remain in chapter 11, they incur administrative and professional costs, which will be reduced if the Debtors emerge expeditiously.[180]

118.    For these reasons, the Debtors, along with their advisors and other key constituents, are working to expedite the Debtors' entry into and consummation of the documents and

---

[178]  Fed. R. Bankr. P. 3020(e).

[179]  Fed. R. Bankr. P. 6004(h), 6006(d).

[180]  *See* Bienias Declaration, ¶ 51.

transactions related to the Plan, ensuring that the Effective Date occurs as soon as possible after the Confirmation Date.  Based on the foregoing, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

### B.    Modifications to the Plan.

119.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Furthermore, when a plan proponent files a modified plan with the court, the modified plan becomes the Plan.  Bankruptcy Rule 3019 provides that modifications made after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts have consistently held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[181]

120.    The Debtors filed a modified version of the Plan on February 18, 2025 [Docket No. 761] and a further revised version of the Plan substantially contemporaneously with the filing of this Memorandum, which includes technical clarifications and resolves certain formal and informal comments to the Plan by parties in interest.  Such modifications are immaterial and thus

---

[181] *See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Committee and the U.S. Trustee support the modifications.[182] No modifications will require additional solicitation or disclosure, and such modifications should be deemed accepted by all creditors that previously accepted the Plan.

## **CONCLUSION**

121.    For all of the reasons set forth herein and in the Confirmation Declarations, and as will be further shown at the Combined Hearing, the Debtors respectfully request that this Court approve the Disclosure Statement on a final basis and confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the proposed Confirmation Order, overruling any remaining objections, and granting such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

---

182 *See* Bienias Declaration, ¶ 52.

Dated:  March 25, 2025
Wilmington, Delaware

/s/  Laura Davis Jones
_____

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:          ljones@pszjlaw.com
                tcairns@pszjlaw.com
                ecorma@pszjlaw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
David R. Gremling (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          anup.sathy@kirkland.com
                chad.husnick@kirkland.com
                dave.gremling@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*      *Co-Counsel for the Debtors and Debtors in Possession*