## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OLDCO TIRE DISTRIBUTORS, INC.,[1] | Case No. 24-12391 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: TBD** |
| | Related Docket Nos. 109, 286, 355, 730, 1084, 1097, 1203 |

## RESPONSE OF HEF NC SC QRS 14-86 INC. TO PLAN ADMINISTRATOR'S SECOND (SUBSTANTIVE) OMNIBUS OBJECTION SEEKING, _INTER ALIA_, TO RECLASSIFY CERTAIN CLAIMS

HEF (NC-SC) QRS, 14-86, Inc. (the "**HEF Landlord**"), by and through its undersigned attorneys, hereby submits this response to the Plan Administrator's Second (Substantive) Omnibus Objection seeking, inter alia, to reclassify certain claims [D.I. 1203] ("**Objection**").[2]

### PRELIMINARY STATEMENT

Regarding the HEF Landlord's claims, the Objection, which objects to asserted administrative priority and secured status of a portion of the HEF Landlord's claims, has three deficiencies. _First_, the Objection addresses only the HEF Landlord's original proof of claim and, therefore, fails to account for the HEF Landlord's timely filed and operative Amended Claim (as defined below) that was filed after the HEF Landlord's Lease (as defined below) was purportedly rejected. Thus, the Objection is moot. _Second_, the HEF Landlord is entitled to allowed

---

[1] The Post Effective Date Debtor in this Chapter 11 case, along with the last four digits of its federal tax identification number, is Oldco Tire Distributors, Inc. (4594). The Post-Effective Date Debtor's mailing address is 12200 Herbert Wayne Court, Huntersville, NC 28078.

[2] Each capitalized term used and not otherwise defined herein has the meaning given to it in the Objection. If the Plan Administrator needs to communicate with the HEF Landlord in connection with this response, please contact HEF Landlord's counsel.

administrative expense claims for both: (a) unpaid post-petition/prerejection Lease obligations of the Debtors as tenant for accrued and unpaid 2025 real estate taxes on the Leased Premises (as defined below); and (b) the costs to remove <u>non-estate</u> property and hazardous materials left by the Debtors and/or the Buyer at the Leased Premises when the Lease purportedly was rejected. *Third*, the HEF Landlord's rights under the Lease and applicable law entitle the HEF Landlord's claim to potential secured status for both: (x) the proceeds from the letter of credit ("**LOC**") the HEF Landlord holds pursuant to the Lease; and (y) the HEF Landlord's right of setoff and/or recoupment to the extent, if any, the Debtors assert a claim against the HEF Landlord.  Each of these flaws compels denial of the Objection as it relates to the HEF Landlord's claims.

## **RELEVANT BACKGROUND**

*The Lease*

1.      The HEF Landlord is the landlord under the single "triple net" Lease Agreement, dated March 26, 2002 (as amended, the "**Lease**"), with Debtor American Tire Distributors, Inc., as successor to Heafner Tire Group, Inc., as tenant (the "**Debtor Tenant**").  The Lease covers two facilities located in Lincolnton, North Carolina, and Mauldin, South Carolina (together, the "**Leased Premises**").

2.      Among other things, the Lease requires the Debtor Tenant to pay the real estate taxes for each of the Leased Premises.  <u>See</u> Lease ¶ 9(a).  Those taxes for 2025 are unpaid and will not be due until January 2026.  For 2024, those annual taxes collectively were $153,093.88 and the amount for 2025 should equal or exceed the amount for 2024.[3]  The prorated real estate taxes for the period January 1, 2025, through at least the Proposed Rejection Date (as defined below) (and perhaps through a later date as the Lease has not yet been rejected) are an

---

[3]    The Debtors and, therefore, presumably the Plan Administrator, have copies of and access to the 2024 real estate tax bills for the Leased Premises.

administrative liability of the Debtor Tenant.  The HEF Landlord understands payment of that obligation will be funded by the Buyer (as defined below), but either way those taxes are valid administrative claims against the Debtors.

***The Sale of the Debtors' Assets***

3.       On October 30, 2024, the Debtors filed a motion seeking relief to facilitate the sale of all or substantially all the Debtors' assets [D.I. 109].   Pursuant to that motion, on November 26, 2024, the Debtors entered into an asset purchase agreement for the sale of substantially all the Debtors' assets (as amended on February 9, 2025, and as it may have been modified, amended, or supplemented, the "**APA**") [D.I. 355] with Asphalt Buyer LLC ("**Buyer**").  See D.I. 730, Exhibits 1 & 2.  The sale to Buyer was approved by an Order of this Court, dated February 11, 2025 [D.I. 730] (the "**Sale Order**").

4.       The closing of the APA occurred on February 28, 2025.  See Notice of the Occurrence of Sale Closing [D.I. 843].  Since then, and until approximately the Proposed Rejection Date, the Buyer used and occupied the Leased Premises during a transition period while the Debtor Tenant remained the tenant under the Lease.

5.       The Sale Order repeatedly provides that Buyer purchased and became the owner of substantially all the Debtors' assets, including the Improperly Abandoned Assets (as defined below), upon the sale's closing:

- The "Sale Transaction" is defined to include "the sale of the Acquired Assets (as defined in the APA) to" Buyer.  Sale Order p. 2.

- The Sale Transaction is "approved in all respects" and the Debtors "are authorized to . . . close the Sale Transaction, including: (i) the sale to the Buyer of all Acquired Assets, . . . ." Id. ¶¶ 4, 5.

- The transfer of the Acquired Assets to the Buyer is "free and clear of all Claims" "[p]ursuant to Bankruptcy Code sections 105(a) and 363(f)." Section 363(f) only applies when a debtor seeks to "sell property" free and clear of other interests. Id. ¶ 7; 11 U.S.C. § 363(f).

- "At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Acquired Assets, . . ., shall be immediately vested in the Buyer . . . ."  "Such transfer shall constitute a legal, valid, binding, and effective transfer of, and shall vest the Buyer with good and marketable title to, the Acquired Assets."  Id. ¶ 8.

- "The Buyer is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and, as such is entitled to the full protections of Bankruptcy Code section 363(m)."  Id. ¶ 22.  Section 363(m) only applies to a debtor's "sale or lease of property."  11 U.S.C. § 363(m).

6.     Similarly, the APA provides that upon the sale closing the Buyer owned the Acquired Assets, including the Improperly Abandoned Assets.  Specifically, section 2.1 of the APA provides that "on the Closing Date, Sellers shall sell . . . to Buyer . . . and Buyer shall purchase . . ." all of Sellers' assets other than "Excluded Assets."  Those purchased assets are listed in section 2.1 of the APA, which defines "Acquired Assets" as including, among other things: "(e) all Equipment."  The definition of "Equipment" includes "all furniture, fixtures, equipment, . . . and all other tangible personal property of any kind and description, . . . wherever located."  Id.

**The Lease Rejection Notice**

7.     On November 18, 2024, this Court entered the Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief [D.I. 286] (the "**Rejection Procedures Order**").  Among other things, that Order requires a lease rejection notice to set forth, inter alia, "the personal property to be abandoned . . ., if any, and an estimate of the book value of such property, if practicable."  Id. ¶ 2.a.  The Rejection Procedures Order further provides that "[t]he Debtors are not authorized to abandon, and are directed to remove, any hazardous material defined under applicable law from any non-residential real property subject to a rejected [lease] as, and to the extent they are required to do so by applicable law."  Id. ¶ 13.

8.      On May 5, 2025, the Debtors filed the Rejection Notice [D.I. 1084] (the "**Rejection Notice**") listing HEF Landlord's Lease, with the two Leased Premises listed as separate items, as among the unexpired leases to be rejected and setting May 20, 2025, as the proposed Lease rejection date (the "**Proposed Rejection Date**").  Regarding property to be abandoned at the Leased Premises, the applicable Schedule attached to the Rejection Notice states: "None Identified." Id. Schedule 2.

9.      The Rejection Notice further provides that "parties seeking to object to the proposed rejection of any of the Contracts must file and serve a written objection so that such objection is filed with the Court on the docket of the Debtors' chapter 11 cases no later than seven days after the date that the Debtors served this Notice . . . ." Id. p. 2.  Accordingly, on May 12, 2025, the HEF Landlord filed an Objection to the Rejection Notice [D.I. 1097].  Among the bases for that Objection was that as of the deadline to object to the Rejection Notice, which was more than one week before the Proposed Rejection Date, the HEF Landlord did not know whether any property would be left at the Leased Premises upon the future proposed rejection date for the Lease.  Accordingly, the HEF Landlord filed a provisional objection in case property not owned by the Debtors was left at the Leased Premises despite the fact the Debtors and the Buyer had no right to abandon property not owned by the Debtors at the Leased Premises.  Id. ¶ 5.

10.     No hearing on that Objection ever occurred and no order or other determination resolving that Objection has been entered or approved.  Hence, the Lease has not yet been rejected.[4]

---

[4]    See Rejection Procedures Order ¶ 2.e. ("If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties. If such objection is overruled or withdrawn, such Contract(s) shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty agree, or as ordered by the Court.").

*Transfer and Improper Abandonment of Property at the Leased Premises*

11.    On May 20, 2025, the Mauldin, South Carolina Leased Premises were turned over to the HEF Landlord.  The furniture, fixtures, and equipment ("**FF&E**") then left at those premises included racks, IT equipment, and miscellaneous FF&E in office areas.

12.    On May 21, 2025, the Lincolnton, North Carolina Leased Premises were turned over to the HEF Landlord.  The FF&E and other property then left at the Lincolnton premises (collectively, with the FF&E left at the Maudlin premises, the "**Improperly Abandoned Assets**") included:

- forklifts inside the building;

- racks in the building;

- miscellaneous boxes at various locations in the building;

- steel racks in the yard outside the building;

- tools;

- a full 55-gallon drum labeled as containing hazardous materials; and

- miscellaneous FF&E in office areas.

13.    Commencing on May 22, 2025, the HEF Landlord requested that the Improperly Abandoned Assets, which were owned by the Buyer at the time of abandonment and, therefore, improperly "abandoned" and left behind at the Leased Premises, be removed by the Debtors and/or Buyer.  No response to these requests was received by the HEF Landlord.  The projected cost to remove those items is not less than $123,000 (the "**Removal Costs**").

*The HEF Landlord's Filed Claims*

14.    On February 13, 2025, due to the claims Bar Order in these cases, the HEF Landlord filed claim number 443 (the "**Claim**") respecting amounts then outstanding under the executory Lease.  The Claim is the claim identified in the pending Objection.

15.     On June 20, 2025, as the Debtors had asserted the Lease has been rejected pursuant to the Rejection Notice, the HEF Landlord filed an amended claim, claim number 665 (the "**Amended Claim**"), based on any alleged rejection of the Lease.  The Amended Claim, <u>inter alia</u>, details the bases for the portions of the HEF Landlord's Claim entitled to administrative priority under section 507(a) of the Bankruptcy Code:

> Section 507(a)(2) applies to and confers an administrative priority to any and all claims, rights and/or remedies Claimant may have arising out of, accruing, and/or relating to the Lease from the Petition Date through the actual rejection date.  The actual Lease rejection date has not yet been determined as there has been no resolution of Claimant's objection to the Debtors' Notice of Rejection of the Lease [Docket No. 1097].  If the actual Lease rejection date is the Noticed Rejection Date; then the portions of Claimant's Claim entitled to administrative priority would include, without limitation: (a) not less than $60,849.34 representing the prorated portion of the estimated real estate taxes accrued under the Lease for the 2025 calendar year commencing from January 1, 2025 through the Noticed Rejection Date; and (b) not less than $445,000.00 for the failure to remove (or require removal by the Buyer of) "abandoned" equipment and other property from the leased premises in accordance with the Lease and applicable law. Claimant reserves the right to assert that 11 U.S.C. § 507(a)(2) applies to other portions of the Claim.

Amended Claim, Item 12.[5]

16.     Respecting the extent to which the Amended Claim is secured, the Amended Claim states under the subsection of Item 9 titled "Nature of Property," "[a]ny security deposit, right to setoff, or letter of credit (to the extent, if any, Debtor's property)."  Amended Claim, Item 9. Pursuant to the Lease the HEF Landlord holds the LOC in the amount of $1,308,693.00 to cover the Debtor Tenant's unpaid Lease obligations.  <u>See</u> Lease ¶ 36(a).  As proceeds from the LOC might be alleged to be property of the Debtors that the HEF Landlord holds as collateral rather than being held by the HEF Landlord free and clear (which is the proper result), the LOC is listed

---

[5]     Subsequently, the HEF Landlord was able to obtain a lower bid for the Removal Costs than is referenced in the Amended Claim.

as potentially being collateral for a secured claim.  As the HEF Landlord has potential rights of setoff or recoupment, those are also listed as potential portions of a secured claim.  See Lease ¶¶ 8(a) and (d).

***The Objection***

17.     On June 25, 2025, the Plan Administrator filed the Objection, which states the following basis for objecting to the HEF Landlord's original Claim:

> Claimant asserts secured and priority status 11 U.S.C. § 507(a) for amounts owing under real property lease.  The Debtors rejected the real property lease on 5/5/25 (docket 1084).  All post-petition amounts due under the real property lease have been paid by the Debtors.  Only an unliquidated general unsecured claim for lease rejection damages remains.

Objection, Schedule 2.[6]  The Objection does not reference the Amended Claim.

## ARGUMENT

### I.     THE OBJECTION FAILS TO ADDRESS THE HEF LANDLORD'S AMENDED CLAIM

18.     The Objection is moot as to the HEF Landlord because the original Claim (No. 443) referenced in the Objection was superseded by the HEF Landlord's Amended Claim (No. 665). Nonetheless, out of an abundance of caution and on the presumption the Debtors meant to object to the HEF Landlord's operative claim, the substance of the Objection is addressed below regarding the Amended Claim.

### II.    THE HEF LANDLORD IS ENTITLED TO RECOVER AS AN ADMINISTRATIVE CLAIM THE COSTS OF REMOVING NON-DEBTOR PROPERTY LEFT AT THE LEASED PREMISES

#### A.    The Improperly Abandoned Assets Were Not Property Of The Debtors When "Abandoned"

---

[6]     While the Objection cites Docket No. 1084 to support the assertion the Lease has been rejected, that entry is merely the Rejection Notice.  In fact, an an order rejecting the Lease is required by the Rejection Procedures Order once an objection to the Rejection Notice was filed.  See [D.I. 286] ¶ 2.e.

19.     The APA and Sale Order signify the Buyer acquired, and the Debtors no longer

owned, all the Improperly Abandoned Assets:

- "Without limiting the generality of the prior sentence, the Acquired Assets shall include . . . all Equipment, whether owned or leased. . ." APA, § 2.1(e). The definition of "Equipment" includes "all furniture, fixtures, equipment, . . . and all other tangible personal property of any kind and description, . . . wherever located." Id.

- The "Sale Transaction" is defined to include "the sale of the Acquired Assets (as defined in the APA) to" Buyer.  Sale Order p. 2.

- The Sale Transaction is "approved in all respects" and the Debtors "are authorized to . . . close the Sale Transaction, including: (i) the sale to the Buyer of all Acquired Assets, . . . ." Id. ¶¶ 4, 5.

- The transfer of the Acquired Assets to the Buyer is "free and clear of all Claims" "[p]ursuant to Bankruptcy Code sections 105(a) and 363(f)." Section 363(f) only applies when a debtor seeks to "sell property" free and clear of other interests.  Id. ¶ 7; 11 U.S.C. § 363(f).

- "At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Acquired Assets, . . ., shall be immediately vested in the Buyer . . . ."  "Such transfer shall constitute a legal, valid, binding, and effective transfer of, and shall vest the Buyer with good and marketable title to, the Acquired Assets.").  Sale Order ¶ 8.

- "The Buyer is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and, as such is entitled to the full protections of Bankruptcy Code section 363(m)."  Id. ¶ 22.  Section 363(m) only applies to a debtor's "sale or lease of property."  11 U.S.C. § 363(m).

20.     Accordingly, the Improperly Abandoned Assets left at the Leased Premises were

not property of the Debtors when "abandoned."

21.     Moreover, the Debtors' own Rejection Notice confirms no property of the Debtors

was left at the Leased Premises by stating "None Identified" regarding whether there was any

abandoned property to be left at the Leased Premises.  See Notice of Rejection, Schedule 2.

**B.  Abandonment Under Section 554 Only Applies To The Debtors' Property**

22.     Section 554 of the Bankruptcy Code permits a debtor to "abandon any property of

the estate." 11 U.S.C. § 554(a) (emphasis added).  Correspondingly, the Rejection Procedures

Order provides that "[t]he Debtors are not authorized to abandon, and are directed to remove, any hazardous material defined under applicable law from any non-residential real property subject to a rejected [lease] as, and to the extent they are required to do so by applicable law." Rejection Procedures Order ¶ 13.

23.    As the Improperly Abandoned Assets were not property of the Debtors' estates, the Debtors lacked the ability to abandon them under section 554. Likewise, nothing authorizes the Buyer to abandon property it owned at the Leased Premises pursuant to section 554.

24.    Moreover, neither the Debtors nor the Buyer were authorized to abandon hazardous materials at the Leased Premises, yet that is what occurred.

**C.    The HEF Landlord's Claim For Removal Costs Is Entitled To Administrative Priority**

25.    The Debtor Tenant, as tenant under the Lease, was obligated to surrender the Leased Premises free and clear of property and hazardous materials. See Lease ¶ 26; Rejection Procedures Order ¶ 13. The only exception to that obligation could be abandonment of the Debtors' property pursuant to section 554. The Debtors' (and Buyer's) failure to comply with those obligations resulted in the HEF Landlord incurring or needing to incur necessary and substantial Removal Costs.

26.    These costs qualify as actual, necessary expenses of preserving the estate under 11 U.S.C. § 503(b)(1)(A). Section 503 provides that, after notice and a hearing, there shall be allowed administrative expenses, including the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Removing the Improperly Abandoned Assets is a necessary cost and expense of preserving the Debtors' estates (or an obligation in whole or part of the Buyer). As such, the Court should compel the Debtors to immediately pay an allowed administrative expense claim in favor of the HEF Landlord in the full amount of Removal Costs.

27.    There is no question the sale of substantially all the Debtors' assets to the Buyer, together with the use of the HEF Landlord's premises during the transition period to implement that transaction, was of substantial benefit to the Debtors' estates.   Hence, removal of the Improperly Abandoned Assets that were left behind in connection with that use is a necessary cost and expense of preserving the Debtors' estates (or an obligation in whole or part of the Buyer).   For example, courts, including this Court, consistently have held that a debtor's post-petition breach of its obligations to repair or maintain leased property gives rise to an administrative expense claim under section 503(b).   See, e.g., *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 479–80 (Bankr. D. Del. 2006) (holding that a lessor is entitled to an administrative expense claim when the debtor's post-petition breach of its lease repair obligations conferred a benefit on the estate by conserving resources for continued operations); *In re United Trucking Serv., Inc.*, 851 F.2d 159, 162 (6th Cir. 1988) ("[The Lessee's] asserted failure to maintain and repair the trailers in accord with the lease obligation allowed [the Lessee], the debtor, to use the money saved and not paid for [the Lessor's] benefit as contemplated under the lease, to continue its operations. . . . Accordingly, the damages under the breached lease covenant, to the extent that they occurred post-petition, provided benefits to the bankrupt estate and were properly accorded priority under § 503 . . . ."); *In re Atl. Container Corp.*, 133 B.R. 980, 992 (Bankr. N.D. Ill. 1991) ("By failing to repair and maintain the Premises, the [debtor] and the Trustee may have spared the estate substantial amounts of money which could then have been used for other purposes, such as paying employees and trade vendors in an attempt to reorganize.").   By analogy, the same principle supports allowance of the HEF Landlord's claim for the Removal Costs as an administrative expense in these cases to the extent the Removal Costs are the Debtors' liability.

28.    Also, there is flexibility for a court to apply section 503(b)(1) to enable a landlord recover on a debtor-tenant's lease obligations.   See *In re Goody's Fam. Clothing, Inc.*, 401 B.R.

656, 666 (D. Del. 2009), aff'd sub nom. *In re Goody's Fam. Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010) ("If the leased premises are used post-petition, and the use is necessary to preserve the estate, the landlord may recover rent, on a priority basis, for the reasonable value of the used premises. 11 U.S.C. § 503(b)(1).").

29.     To the extent removal of the Improperly Abandoned Assets is the Debtors' obligation under the Lease, which should be the case as the assets <u>did not belong</u> to the Debtors and paragraph 26 of the Lease requires the Debtor Tenant to surrender the Leased Premises empty and to pay any related removal costs, no benefit conferred on the Debtor Tenant's estate must be proven under section 365(d)(5) to support allowance of an administrative claim here.[7] <u>See</u> <u>Hayes Lemmerz</u>, 340 B.R. at 472.[8]

### III.    THE HEF LANDLORD IS ENTITLED TO AN ADMINISTRATIVE CLAIM FOR ALL THE DEBTOR TENANT'S LEASE OBLIGATIONS THAT ACCRUED DURING THE POST-PETITION – PRE-REJECTION PERIOD

30.     It is black letter law that a debtor tenant is obligated under section 365(d)(4) to pay its accrued lease obligations for the period from its petition date through the applicable lease

---

[7]   The allocation of responsibility between the Debtors and Buyer for the Removal Costs is unclear and will need to be resolved by those parties.  One relevant factor is that the Debtors are liable to the HEF Landlord under the Lease for the Removal Costs: "<u>Surrender</u>. Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises or Affected Premises, is applicable, to Landlord in the same condition in which the Leased Premises or Affected Premises, if applicable, was at the commencement of this Lease, except as repaired, rebuilt, restored, altered, replaced or added to as permitted or required by any provision of this Lease, and except for ordinary wear and tear. Upon such surrender, <u>Tenant shall (a) remove from the Leased Premises or Affected Premises, if applicable, all property which is owned by Tenant or third parties other than Landlord and (b) repair any damage caused by such removal</u>. Property not so removed shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises or Affected Premises, if applicable. <u>The cost of removing and disposing of such property and repairing any damage to any of the Leased Premises or Affected Premises, if applicable, caused by such removal shall be paid by Tenant to Landlord upon demand</u>. Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any such property which becomes the property of Landlord pursuant to this Paragraph 26."  Lease ¶ 26 (emphasis added); <u>see also</u> Rejection Procedures Order ¶ 13.

[8]   To the extent the failure to remove the Improperly Abandoned Assets constitutes a tort (such as trespass or private nuisance), damages from a Debtors' post-petition tort are entitled to administrative expense status.  <u>See</u>, <u>e.g.</u>, <u>Reading Co. v. Brown</u>, 391 U.S. 471, 477 (1968); <u>Hayes Lemmez</u>, 340 B.R. at 480; <u>In re First Women Healthcare, Inc.</u>, 332 B.R. 115, 123 (Bankr. D. Del. 2005) (no benefit to the estate is required as long as the harm results from the debtors' "post-petition activity").

rejection date.  Here, those lease obligations include real estate taxes for both Leased Premises.
<u>See</u> Lease § 9(a).  As the 2025 real estate taxes for the Leased Premises have not yet been paid,
the pre-Lease rejection portion of such taxes should be allowed as an administrative claim.

31.     As noted, the 2025 real estate taxes for the Leased Premises will not come due until
January 2026.  The HEF Landlord is entitled to an allowed administrative claim for and full
payment of such prorated taxes once they become due and the Lease's rejection date is
determined.

### IV.     THE HEF LANDLORD'S RIGHTS UNDER THE LEASE AND APPLICABLE LAW REGARDING THE LOC, SETOFF, RECOUPMENT, OR OTHER BASES THAT COULD GIVE RISE TO A CLAIM WITH "SECURED" STATUS SHOULD BE PRESERVED

32.     The HEF Landlord holds an LOC issued in connection with the Lease to secure the
Debtor Tenant's Lease obligations.  <u>See</u> Amended Claim, Item 9; Lease ¶ 36(a).  The Objection
provides no basis to interfere with the HEF Landlord's rights respecting the LOC.  Consequently,
to the extent, if any, the LOC or proceeds thereof represent collateral for a secured claim, the HEF
Landlord's rights in that regard must be preserved.

33.     Additionally, the HEF Landlord has rights of setoff and/or recoupment under the
Lease and applicable law.  <u>See</u> Lease ¶¶ 8(a) and (d).  Further, the Amended Claim expressly
preserves all rights of setoff and recoupment.  <u>See</u> Amended Claim, Item 9.  To date, the HEF
Landlord is not aware of any claims by the Debtors that could invoke such rights.  Nonetheless,
any setoff or recoupment type (or similar) rights of the HEF Landlord that constitute a secured
claim must be preserved.

### <u>RESERVATION OF RIGHTS</u>

34.     The HEF Landlord reserves its rights to amend and/or supplement this response.

## CONCLUSION

WHEREFORE, the HEF Landlord respectfully requests that the Court: (a) deny the Objection as it relates to the HEF Landlord's claims; and (b) grant the HEF Landlord such other and further relief as the Court may deem just or proper.

Dated: July 16, 2025
      Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

*/s/ Curtis S. Miller*
Curtis S. Miller (No. 4583)
Avery Jue Meng (No. 7238)
1201 North Market Street, Suite 1600
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
cmiller@morrisnichols.com
apark@morrisnichols.com

*- and -*

**CHAFFETZ LINDSEY LLP**
Alan J. Lipkin
1700 Broadway, 33rd Floor
New York, NY  10019
Telephone: (212) 257-6960
Facsimile: (212) 257-6950
alan.lipkin@chaffetzlindsey.com

*Counsel to HEF (NC-SC) QRS 14-86, Inc.*