IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| OLDCO TIRE DISTRIBUTORS, INC.,[1] | ) Case No. 24-12391 (CTG) |
| Post-Effective Date Debtor. | ) |
| | ) Docket Ref. Nos. 1203, 1244, 1305 |

**DEBTORS' REPLY TO LANDLORD HEF IN SUPPORT OF SECOND OMNIBUS OBJECTION TO CLAIMS AND RESPONSE TO HEF'S MOTION SEEKING TO COMPEL PAYMENT OF ADMINISTRATIVE CLAIMS**

The undersigned counsel to Patrick Bartels (the "Plan Administrator"), as Plan Administrator under the confirmed *Amended Joint Chapter 11 Plan of Oldco Tire Distributors, Inc. and its Debtor Affiliates (Technical Modification)* [Docket No, 968-1] (the "Plan"), and on behalf of the post-confirmation debtors and debtors in possession (collectively, the "Debtors"), presents the following (a) reply in support of the Second Omnibus Objection to the Claims [Docket No. 1203] (the "Claim Objection") seeking, in part, reclassification of the asserted administrative claims (the "Administrative Claims") of HEF (NC-SC) QRS, 14-86, Inc. ("HEF") and contesting HEF's response to the Claim Objection [Docket No. 1244] (the "Response") and (b) response to HEF's motion to compel payment of the Administrative Claims [Docket No. 1305] (the "Motion to Compel") as follows:

**Preliminary Statement**

1. The Debtors leased two warehouses from HEF pursuant to a prepetition lease (the "Lease"). After the closing of the sale of substantially all of the Debtors' businesses to Asphalt

---

[1] The Post-Effective Date Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Oldco Tire Distributors, Inc. (4594). The Post-Effective Date Debtor's mailing address is 501 South College Street, PMB #139, Charlotte, NC 28202.

Buyer LLC (the "Purchaser"), the Purchaser determined not to accept assignment of the Lease and the Debtors noticed the Lease for rejection. HEF filed claims against the estate as a result of the rejection of the Lease. The Plan Administrator filed the Claim Objection to reclassify all claims asserted by HEF through its filed proof of claim to general unsecured claims. HEF filed a Response objecting to the reclassification, and then filed a Motion to Compel reasserting the same administrative claims subject to the Claim Objection.

2.   In both the Response and the Motion to Compel, HEF seeks payment for: (a) prorated property taxes accrued prior to rejection of the Lease (the "Prorated Taxes") and (b) the costs associated with removal of equipment and fixtures that remained on the premises after rejection (the "Cleanup Costs"). After further analysis of the Administrative Claims, the Debtors agree to allow HEF's administrative claims for the value of the prorated, pre-rejection property taxes, subject to review of invoices from the relevant taxing authorities or other evidence in support of the claim value.

3.   HEF's asserted administrative claims related to Cleanup Costs, however, should be reclassified as unsecured rejection damage claims. As HEF argues repeatedly in both the Response and the Motion to Compel, the equipment and materials remaining at the leased property (the "Premises") were owned by Purchaser. The Purchaser remains solely responsible to HEF for any property remaining on the Premises after rejection of the Lease. As to the Debtors' potential liability for Cleanup Costs, HEF's Administrative Claims against the estate fail under both the Lease and applicable law. The Cleanup Costs did not arise until after the rejection of the Lease, and cannot represent administrative claims against the Debtors under either sections 365(d)(3) or 503(b)(1) of the Bankruptcy Code.

4. The Debtors do not dispute that HEF may have a rejection damage claim against the estate for the Cleanup Costs, and that HEF (upon submitting proper proof of such claim) may be entitled to reimbursement of the amount of the Cleanup Costs as beneficiary to a $1,308,693 letter of credit (the "Letter of Credit") established as security deposit under the Lease. But HEF's rejection damage claims should not be elevated to an administrative claim. With respect to the Cleanup Costs, the Claim Objection should be sustained and the Motion to Compel should be denied.

5. HEF's Response further asserts unliquidated secured claims against the estate related to its rejection damage claims. Any asserted secured claim by HEF that may result in draw from the Letter of Credit must be supported by evidence that has yet to be provided to the Debtors or submitted to the Court. The Debtors reserve all rights to review the evidence provided by HEF in support of its unliquidated claims, and further reserve the right to amend its existing objection as necessary to respond to the evidence.

## The Cleanup Costs Are Not Administrative Claims

6. HEF asserts administrative claims against the estate to remove property remaining on the Premises upon rejection of the lease. HEF's claims for Cleanup Costs did not arise until after the rejection of the Lease and can't qualify as administrative claims under either 365(d)(3) or 503(b) of the Bankruptcy Code. The Cleanup Costs represent only unsecured, rejection damage claims against the estates. *See, e.g., In re Unidigital, Inc.*, 262 B.R. 283, 289 (Bankr. D. Del. 2001) (finding that no administrative claim is allowable for the costs of cleaning the premises of a rejected lease, absent evidence that it benefitted the estate); *In re Universal Bldg. Prods.*, 2011 Bankr. LEXIS 784, (Bankr. D. Del. Mar. 7, 2011) (finding landlords' claims for clean-up costs to be rejection damages and treated as prepetition claims).

7.	Determining whether a creditor has an administrative claim is a two-prong test: the expense must have arisen from a post-petition transaction between the creditor and the debtor, and the transaction must have been "actual and necessary" to preserve the estate. *See, e.g., Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976); *In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999).

8.	Here, the only post-petition transaction between HEF and the Debtors was the Lease that was rejected by the Debtors. The rejection of that lease created a pre-petition breach by operation of section 502(g), which provides that "[a] claim arising from the rejection, under 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed … or disallowed … the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. §502(g). Accordingly, all claims associated with the rejection of the Lease are deemed prepetition claims.

9.	As to the second prong, HEF provides no evidence that the Cleanup Costs were "actual and necessary" to preserve value or otherwise benefit the estate. As HEF argues repeatedly, the property remaining at the Premises at the time of Lease rejection was owned by the Purchaser, not the Debtors. No agreement in the Sale between the Debtors and Purchaser establishes a continuing obligation of the estate related to the disposition of the Purchaser's property remaining on the Premises, and the Debtors should not be assessed an administrative expense for the post-rejection cleanup of the Purchaser's property. *See, e.g., In re Insilco Techs., Inc.*, 309 B.R. 111, 114 (Bankr. D. Del. 2004) (finding that only costs incurred to cleanup

property for which an estate has an interest in or owns may qualify as administrative expenses). Rather than provide benefit to the estate, the elevation of the Cleanup Costs claim from unsecured to administrative would cause harm to the estate and its creditors. HEF is not entitled to an administrative claim for Cleanup Costs that benefit itself, not the estate. *See, e.g., Universal Bldg. Prods.*, 2011 Bankr. LEXIS 784 at 6-7.

10. None of the arguments or caselaw presented by HEF provide support to classify Cleanup Costs as administrative expense claims. To support its position that Section 365(d)(3) compels payment of the Cleanup Costs, HEF argues that the Lease requirements to return the property in broom clean condition support an administrative expense claim for post-rejection costs incurred by a landlord. However, as pointed out above, these remediation costs do not arise until after Lease rejection and aren't included in the Debtors' pre-rejection obligations under Section 365(d)(3). *Cf. In re Filene's Basement, LLC*, 2015 Bankr LEXIS 1350 (Bankr. D. Del. 2015) (finding that obligation to remove property results from termination of lease and granting landlord capped rejection damage claim for removal costs).

11. More tenuous is HEF's assertion that the Court's narrow rulings to compel the payment of stub rent in *In re Goody's Fam. Clothing, Inc.*, 401 B.R.656, 666 (D. Del. 2009), *aff'd sub nom In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 819 (3rd Cir. 2010), provides "flexibility for a court to apply section 503(b)(1) to enable a landlord recover on a debtor-tenant's lease obligations." Motion to Compel, ¶46. *Goody's* and its progeny does not provide the "second bite at the apple" for lease obligations beyond Section 365(d)(3) that HEF seeks here. It stands merely as a narrow expansion of a debtor's lease obligation to cover a stub rent period early in a case. The facts here are not analogous to the facts of *Goody's* and do not support administrative priority for the Cleanup Costs. In fact, HEF does not provide a single

case to refute the long-standing precedent of *Unidigital* and *Universal Building Products* classifying post-rejection costs to cleanup leased premises as unsecured, rejection damage claims. The Second Omnibus Objection seeking to re-classify any administrative claims for Cleanup Costs to unsecured should be sustained.

### The Buyer is Obligated to Pay HEF's Claims

12. Pursuant to orders of this Court and related agreements, the Purchaser is obligated to satisfy HEF's Administrative Claims against the estates. HEF's efforts to blur the responsibilities of the Debtors and Purchaser related to the sale are not supported by the record in these cases, and reveal its intent to convert claims against the Purchaser into administrative claims against the Debtors.

13. On November 26, 2024, the Debtors entered into that certain asset purchase agreement for the sale of substantially all of the Debtors' assets (as amended on February 9, 2025 and which may be modified, amended, or supplemented, the "APA") [Docket No. 355] with the Purchaser. On February 11, 2025, the Court entered an order [Docket No. 730] (the "Sale Order") approving, among other things, (i) the Debtors' entry into and performance under the APA and authorizing the sale of substantially all of the Debtors' assets to the Purchaser (and/or its designees) and (ii) assumption by the Debtors and assignment to the Purchaser (and/or its designees) of certain executory contracts and unexpired leases to be designated by the Purchaser as "Assumed Contracts" pursuant to the Sale Order, the APA, and sections 363 and 365 of the Bankruptcy Code, subject to, and effective as of, the closing of the Sale Transaction (such date, the "Closing Date").

14. On the Closing Date, the Debtors and the Purchaser identified certain post-petition contracts that were to be assigned to the Purchaser in accordance with the procedures set forth in the Sale Order and APA in connection with the Sale Transaction. In addition, pursuant

to the Sale Order and APA, the Purchaser retained the right to compel assumption and assignment of certain contracts (the "Excluded Contracts") during the period from the Closing Date to 90 days after the Closing Date (the "Designation Rights Period").[2] The Purchaser provided the Debtors with a list of these Excluded Contracts at closing, and assumed responsibility to pay all administrative claims owed to the counter parties of such Excluded Contracts until the Purchaser decided to assume or reject prior to the end of the Designation Rights Period. *See* APA, Section 2.5(c) ("Buyer shall be responsible for timely paying all reasonable and documented costs incurred and unpaid as of the Closing Date by Sellers under such Excluded Contracts until they are either (A) rejected by the Sellers or (B) assumed and assigned pursuant to Section 2.5(c)(ii) during the Designation Rights Period.").

15. The Purchaser included the Lease on the list of Excluded Contracts provided to the Debtors at the Closing Date. The Purchaser did not ultimately decide to assume the Lease, and the Debtors filed a notice seeking rejection of the Lease. *See* Docket No. 1084.[3] Pursuant to the Sale Order and APA, the Purchaser remains obligated to satisfy all administrative claims HEF may have against the estates for claims accrued during the Designation Rights Period. To the extent the Court allows any of HEF's Administrative Claims, the order allowing such claims should provide that such claims should be paid by the Purchaser.

---

[2] During the Designation Rights Period, the Debtors filed nine supplemental notices of assumed contracts each upon the decision of the Purchaser to assume certain of the Excluded Contracts.

[3] HEF maintains that the Debtors' Rejection Notice was ineffective due to a reservation of rights HEF filed in response. The Debtors contest that a reservation of rights can effectively serve as a barrier to rejection in perpetuity. However, assuming for the sake of argument that HEF's filed reservation tolled the effective rejection date of May 20, 2025, the Lease would have been rejected on May 29, 2025 – the effective date of the confirmed plan and the end of the Designation Rights Period. *See* Plan, Article V(A). Additionally, because HEF had not consented to further extension of the Debtors' period to assume or reject the Lease, 365(d)(4) would also compel rejection on May 29, 2025. An adjustment of the effective rejection date from May 20 to May 29 would result only in a de minimis increase to the Pro-Rated Taxes.

**The Debtors Reserve All Rights to Contest HEF's Unliquidated Claims**

16. In its Response and Motion to Compel, HEF asserts a number of unliquidated claims against the estate (the "Unliquidated Claims"). As of the date hereof, HEF has not provided evidentiary support for its Unliquidated Claims, including claims made for the following:

- administrative claims for 2025 real estate taxes;
- administrative claims for removal of equipment and other property; and
- secured claims related to the rejection of the Lease, including any right to draw upon the Letter of Credit previously established as a security deposit.

17. The Debtors reserve the right to review and object to any of the evidence provided by HEF to support its Unliquidated Claims on any grounds, and to amend, modify, or supplement the Claim Objection, including, without limitation, to object to amended or newly-filed claims.

**Conclusion**

18. The Debtors seek entry of the an order (a) allowing HEF's administrative claim for Prorated Taxes in an amount to be determined based upon tax invoices or other evidence of the final amount of the claim provided by HEF, (b) sustaining the Second Omnibus Objection and reclassifying all HEF claims for Cleanup Costs as unsecured claims, and (c) reserving the Debtors' rights to review and object to all other evidence submitted by HEF to support its administrative and secured claims.

Dated: October 15, 2025
Wilmington, Delaware

*/s/ Laura Davis Jones*
**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:     (302) 652-4100
Facsimile:      (302) 652-4400
Email:            ljones@pszjlaw.com
                      tcairns@pszjlaw.com
                      ecorma@pszjlaw.com

*Counsel for the Plan Administrator and Post-Confirmation Debtor*