## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OLDCO TIRE DISTRIBUTORS, INC.,[1] | ) | Case No. 24-12391 (CTG) |
| | ) | |
| Post-Effective Date Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 1305 & 1308** |

### ASPHALT BUYER II LLC'S OBJECTION TO
### HEF (NC-SC) QRS 14-86, INC.'S MOTION FOR ALLOWANCE
### AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Asphalt Buyer II LLC (the "<u>Buyer</u>"), by and through its undersigned counsel, hereby files this objection (the "<u>Objection</u>") to the *Motion of HEF NC SC QRS 14-86 Inc. for Entry of an Order: (I) Requiring Payment of Administrative Claim for Unpaid Prorated 2025 Real Estate Taxes; (II) Compelling Payment of Claim for Removal of Improperly "Abandoned" Property as Either an Administrative Expense Claim Against the Debtors and/or Liability of Buyer; and (III) Granting Related Relief* [Docket No. 1305] (the "<u>Motion</u>")[2] filed by HEF NC SC QRS 14-86 Inc. ("<u>HEF</u>" or "<u>Landlord</u>").  In support of this Objection, the Buyer respectfully states as follows:

### PRELIMINARY STATEMENT

1. Through the Motion, HEF seeks (a) under sections 365(d)(3) and 503(b)(1) of the Bankruptcy Code, to recover as an administrative expense, (i) the Prorated RE Taxes relating to the Leased Premises for the period of January 1, 2025 through May 20, 2025; (ii) the cost of

---

[1] The Post-Effective Date Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Oldco Tire Distributors, Inc. (4594). The Post-Effective Date Debtor's mailing address is 12200 Herbert Wayne Court, Huntersville, NC 28078.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion, Sale Motion (defined below), the *Declaration of Marina Folz* [Docket No. 1308] (the "<u>Folz Decl.</u>"), the APA (defined below), or the Sale Order (defined below), as applicable.

removing (the "Removal Costs") certain fixtures, equipment, and other personal property (the "Abandoned Property") remaining on the Leased Premises after May 20, 2025 (the "Proposed Rejection Date"); and/or (b) a judgment against the Buyer in the amount of the Removal Costs, in the event the Buyer is determined to be responsible for such costs.[3]

2.      As an initial matter, for the reasons set forth in the *Debtors' Reply to Landlord HEF in Support of Second Omnibus Objection to Claims and Response to HEF's Motion Seeking to Compel Payment of Administrative Claims* [Docket No. 1309] (the "Debtors' Response"), the Buyer does not dispute that HEF is entitled to an administrative expense claim for the value of the Prorated RE Taxes, subject to review of invoices from the relevant taxing authorities or other evidence in support of the claim value.  With respect to the Removal Costs, however, HEF's asserted administrative expense claim should be disallowed.  Although HEF is understandably unhappy about being saddled with the Removal Costs, HEF cannot satisfy the heavy burden to show that the Removal Costs were actual, necessary costs and expenses of preserving the bankruptcy estates because the Debtors are not in possession of the Leased Premises or the Abandoned Property and, therefore, the Debtors' estates are not continuing to benefit from the Lease or from the Abandoned Property—which the Debtors (and the Buyer) do not own. Additionally, there is no basis under the facts or law to circumvent the longstanding precedent, under *inter alia*, *Unidigital, Inc.*, that post-rejection expenses such as cost of cleaning and removing equipment from a landlord's premises do not benefit the estate.  Further, even if there was an obligation to remove the Abandoned Property, such obligation will have arisen after the

---

[3] For the reasons set forth in this Objection, the Buyer believes it is not responsible for the Removal Costs.  To the extent the Court determines that the property left at the premises is property of the Buyer, Buyer reserves all rights to argue and submit supplemental briefing that such claims are not properly within the jurisdiction of the Court, the existence of any such claims under applicable state law and that any such claims are not appropriately brought by motion.  Buyer understands that similar issues are currently *sub judice* before the Court in *In re Joann, Inc.*, Case No. 25-10068 (CTG).

Lease will have been deemed to be rejected.  Thus, the Removal Costs are, at best, a general unsecured claim for rejection damages.

3.       Finally, the facts do not support HEF's assertion that the Abandoned Property is the Buyer's property or that the Buyer is somehow responsible for the Removal Costs.  The APA makes clear that any contract that is not an Assumed Contract shall be an Excluded Asset.  There is no dispute that the Lease was never designated as an Assumed Contract.  Rather, as HEF admits, the Lease was listed on the Rejection Notice as among the unexpired leases to be rejected effective as of the Proposed Rejection Date.  Further, for the reasons set forth herein, the Abandoned Property did not somehow become an Acquired Asset under the APA that was separate and apart from the Lease and there is no basis to hold the Buyer liable for the Removal Costs.  HEF's reading of the APA ignores key provisions and runs contrary to common sense that the Buyer would not acquire furniture, fixtures and equipment affixed or appurtenant to a location it is not acquiring. Accordingly, HEF has not, and cannot, carry the heavy burden of demonstrating its entitlement to an administrative expense for the Removal Costs under sections 365(d)(3) or 503(b)(1) of the Bankruptcy Code, or that the Buyer is liable for such costs under any alternative theory.  Thus, the Motion should be denied with respect to the Removal Costs.

## BACKGROUND

### *The Lease*

4.       HEF is the landlord under the single "triple net" Lease Agreement, dated March 26, 2002 (as amended, the "Lease"), with Debtor American Tire Distributors, Inc., as successor to Heafner Tire Group, Inc., as tenant.  The Lease covers two facilities located in Lincolnton, North Carolina, and Mauldin, South Carolina (together, the "Leased Premises").

***The Sale of the Debtors' Assets***

5.      On October 30, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Bid Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Certain Bid Protections in Connection with the Debtors' Entry into Any Potential Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 109] (the "Sale Motion").

6.      Pursuant to that Sale Motion, on November 26, 2024, the Debtors entered into an asset purchase agreement for the sale of substantially all the Debtors' assets (as amended on February 9, 2025, and as it may have been modified, amended, or supplemented, the "APA") [Docket No. 355] with Buyer.  *See* Docket No. 730, Ex. 1 & 2.

7.      On February 11, 2025, the Court entered the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances, and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 730] (the "Sale Order"), approving, among other things, sale of Debtors' assets to the Buyer.

8.      The closing of the sale occurred on February 28, 2025 (the "Closing Date").  *See Notice of the Occurrence of Sale Closing* [Docket No. 843].

***The Rejection Notice and the Surrender of the Leased Premises***

9.      Although the Buyer had the ability under the APA and Sale Order to designate Excluded Contracts as Assumed Contracts or to subsequently designate additional contracts as Assumed Contracts, there is no dispute that the Buyer did not exercise such right with respect to the Lease.  Indeed, as HEF admits, on May 5, 2025, the Debtors filed the Rejection Notice [Docket No. 1084] listing the Lease as among the unexpired leases to be rejected effective as of the Proposed Rejection Date.

10.      On May 20, 2025, the Mauldin, South Carolina Leased Premises were turned over to Landlord.  Folz Decl., ¶ 6. On May 21, 2025, the Lincolnton, North Carolina Leased Premises were turned over to Landlord.  *Id.*, ¶ 7.  The Abandoned Property left at those premises included racks, IT equipment, and miscellaneous furniture, fixtures, and equipment in office areas.  *Id.*, ¶¶ 6-7.

## OBJECTION

I.      **HEF'S REQUEST FOR AN ADMINISTRATIVE EXPENSE CLAIM FOR THE REMOVAL COSTS MUST BE DENIED.**

      A.      **<u>The Obligation Under the Lease, if any, to Pay the Removal Costs was Triggered after the Lease will have been Deemed Rejected.</u>**

11.      Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).  The purpose of section 365(d)(3) "is to require the trustee to perform the lease in accordance with its terms." *CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001).  For purposes of Section 365(d)(3), an obligation arises under a

lease when the lessee becomes legally obligated to perform such obligation. *Id.* (stating that "an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform").

12. HEF contends that the alleged wrongful abandonment occurred during the postpetition/pre-rejection period because the Lease has not yet been rejected and the Debtors' obligation under the Lease to remove the Abandoned Property arose either at the time of the filing of the Rejection Notice on May 5, 2025 or on May 20, and 21, 2025 when the Leased Premises were surrendered. In other words, it appears that HEF is attempting to argue that by filing an objection to the Rejection Notice, it can delay rejection and trigger a payment obligation under the Lease. This argument is wholly illogical and contrary to the spirit of the Bankruptcy Code. *See also In re Old Carco LLC*, 424 B.R. 633, 640 (Bankr. S.D.N.Y. 2010) ("[A]ffording rejection claims administrative priority would effectively eliminate the purpose behind providing a debtor with the power to reject a contract."). Moreover, although HEF may be correct as a technical matter that the Lease will not be rejected until the Court rules on its objection, HEF fails to recognize that, assuming the Court overrules the objection, rejection of the Lease will be effective as of May 20, 2025—the proposed rejection date under the Rejection Notice and the same day (or day before) HEF admits the Leased Premises were surrendered. *See* Motion, ¶ 40; *see also* Folz Decl., ¶¶ 6-7. As a result, the Debtors' obligation under paragraph 26 of the Lease, if any, will have arisen post-rejection (or at least in conjunction with the rejection of the Lease). Since the Lease will be deemed rejected before (or in conjunction with) any such obligation, the Removal Costs, at best, are a general unsecured claim for rejection damages.

**B.**     **Neither the Abandoned Property nor the Removal Costs Provide a Benefit to the Debtors' Estates.**

13.     HEF's alternative argument—that it is entitled to an administrative expense for the Removal Costs under 11 U.S.C. § 503(b)(1)(A)—is likewise without merit.

14.     Section 503(b)(1)(A) of the Bankruptcy Code, provides for the allowance of an administrative expense claim for the "the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A).  To establish an administrative expense claim under section 503(b)(1)(A), a claimant must show that "(1) there was a 'post-petition transaction between the claimant and the estate,' and (2) those expenses yielded a 'benefit to the estate.'"  *In re Energy Future Holdings Corp*., 990 F.3d 728, 741 (3d Cir. 2021) (quoting *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005)).  "The party seeking to recover expenses must 'carry the heavy burden of demonstrating' that such expenses qualify as an administrative expense." *Id.* (quoting *In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010)).

15.     HEF contends that "courts, including this Court, consistently have held that a debtor's post-petition breach of its obligations to repair or maintain leased property gives rise to an administrative claim under section 503(b)[,]" citing *In re Hayes Lemmerz Int'l, Inc.,* 340 B.R. 461 (Bankr. D. Del. 2006), *In re United Trucking Serv., Inc.,* 851 F.2d 159 (6th Cir. 1988), and *In re Atl. Container Corp.,* 133 B.R. 980 (Bankr. N.D. Ill. 1991).  These cases, however, generally stand for the proposition that postpetition but pre-rejection (or pre-surrender) breaches of repair and maintenance covenants may give rise to an administrative expense because the estate saves money by not adhering to such covenants, and can use such money towards other estate obligations.  *See Atl. Container*, 133 B.R. at 992; *United Trucking Serv., Inc.,* 851 F.2d at 162; *Hayes Lemmerz Int'l*, 340 B.R. at 476.  Breaches of repair and maintenance are different from post-rejection costs of cleaning which have uniformly been held not to be administrative expenses in

7

this District. *See In re Unidigital, Inc.*, 262 B.R. 283, 289 (Bankr. D. Del. 2001) (denying a request for administrative expense claim under 11 U.S.C. § 503(b)(1), finding that the post-rejection "cost of cleaning [and removing equipment from] the landlord's premises does not benefit the estate . . . . Rather, it only benefits [the landlord].");[4] *see also Lucky's Mkt. Parent Co.*, No. 20-10166, 2022 WL 843763, at *15 (D. Del. Mar. 22, 2022) ("Courts routinely hold that clean-up costs like those asserted here are pre-petition obligations."); *Doral Commerce Park, Ltd. v. Teleglobe Communs. Corp. (In re Teleglobe Communs. Corp.)*, 304 B.R. 79, 83-84 (D. Del. 2004) (finding that rejection of the lease under § 365 was deemed the exercise of a power to breach, and any claims of the creditor associated with removing improvements and alterations to the leased premises could not arise prior to the rejection and thus could not support an administrative claim for postpetition expenses); *In re Universal Bldg. Prods.*, No. 10-12453, 2011 WL 841231, at *2 (Bankr. D. Del. Mar. 7, 2011) ("[T]he respective landlords' claims for the clean-up costs would have been part of their rejection damages which are treated as pre-petition claims."); *In re M.L. Logan Precision Machining Co.*, No. 06-14625, 2007 WL 1468807, at *910, (Bankr. E.D. Pa. May 14, 2007) ("The Landlord is not entitled to the allowance of an administrative expense for the costs incurred in cleaning the Premises and removing items from the Premises after the Trustee surrendered possession on December 29, 2006.").

16.     As set forth above, the failure to remove the Abandoned Property was not a postpetition, pre-rejection breach of the Lease and, as HEF admits, the Debtors have not been in possession of the Leased Premises or the Abandoned Property since May 20, and 21, 2025. Folz Decl. ¶¶ 6-7. Thus, the Debtors have not been in possession of the Leased Premises since that time, and they therefore have not continued to benefit from the Lease while saving money by not

---

[4] The court in *Unidigital* also noted, in relevant part, that the "only transaction between the parties [was] the lease, which the Debtors [sought] to reject" and concluded that "all claims associated with the rejection of the lease are deemed prepetition claims." *Unidigital*, 262 B.R. at 288. Thus, the landlord had no post-petition transaction giving rise to its administrative expense claim. *Id.*

performing the obligations thereunder.  Accordingly, the cases cited by HEF are inapposite to the issues here, HEF fails to carry the heavy burden to establish an administrative expense claim, and the Motion should be denied with respect to the request for payment of the Removal Costs as an administrative expense claim.

## II.     THE ABANDONED PROPERTY WAS NOT AN ACQUIRED ASSET UNDER THE TERMS OF THE APA AND THE BUYER IS NOT LIABLE FOR THE REMOVAL COSTS.

17.     HEF improperly asserts that immediately upon the Closing Date, the Abandoned Property became Acquired Assets of the Buyer under the sale.  As a result, HEF asserts that the Debtors could not have abandoned such assets under section 554 of the Bankruptcy Code and that the Buyer was not permitted to leave its property in the Leased Premises.  To support its theory, HEF relies primarily on (i) § 2.1(e) of the APA, which expressly states that the "Acquired Assets" shall include "all Equipment, whether owned or leased" and (ii) the definition of "Equipment" under § 1.1 of the APA, which includes "all furniture, fixtures, equipment, . . . and all other tangible personal property of any kind and description, . . . wherever located."  *See* Motion, ¶ 36.

18.     In making its claim, however, HEF fails to consider other provisions and terms of the APA, including, among others, §§ 2.1(i), 2.2, and 2.5(a), and the definitions of "Assumed Contracts", "Leases", and "Leased Real Property", which taken together reflect that certain "Equipment"—including the Abandoned Property—was carved out of the definition of "Acquired Assets" because it was located at a "Leased Real Property" that is not an Acquired Asset.

19.     Section 2.1(i) lists the following as "Acquired Assets":

***all Leased Real Property under any Lease that is an Assumed Contract*** (and any agreement and rights related thereto or under the applicable Lease to the extent that such agreement or Lease is an Assumed Contract) together with all interests of any Seller, if any, in and to all Improvements located thereon or attached thereto, and other appurtenances thereto, and rights in respect thereof including all Other Rights and Interests in respect thereof, and copies (and originals in Sellers' possession ) of

all instruments, Leases and agreements evidencing Sellers' interest in the same, and any existing surveys, zoning reports, architectural and engineering blueprints, plans and specifications and reports, and legal descriptions, *in each case, concerning such Leased Real Properties, that are in the possession or control of Sellers, which shall be deemed to be delivered to the extent located at any of the Leased Real Property*."

APA, § 2.1(i) (emphasis added).

20.     Section 2.2 of the APA provides, in relevant part:

Excluded Assets.  Notwithstanding anything to the contrary in this Agreement (*including Section 2.1*), nothing herein shall be deemed to sell, transfer, assign, convey or deliver any of the Excluded Assets to Buyer . . . and Sellers shall retain all right, title and interest to, in and under, and all Liabilities with respect to, the Excluded Assets.

APA, § 2.2 (emphasis added).

21.     Section 2.5(a) of the APA provides that *"[a]ll Contracts of Sellers that are not listed on Schedule 2.5(a) [of the APA] shall not be considered an Assumed Contract or an Acquired Assets and shall be deemed "Excluded Contracts"* . . . ."  APA, § 2.5(a) (emphasis added).

22.     The definition of "Excluded Assets" as set forth in section 2.2(c) of the APA includes "*any Contract that is not an Assumed Contract*".  APA, § 2.2(c) (emphasis added).

23.     In turn, "Assumed Contracts" are defined in section 1.1 of the APA as "all executory Contracts (*including all Leases*) to which one or more of the Sellers are party *and which are to be included in the Acquired Assets*."  APA, § 1.1 (emphasis added).

24.     "Lease" or "Leases" are defined in the APA as "all leases, subleases, licenses, sublicenses, occupancy agreements, and any memoranda, amendments, restatements, modifications, supplements and assignments thereof, pursuant to which any Seller uses or occupies the *Leased Real Property*."  *Id*. (emphasis added).

25.     Finally, "Leased Real Property" is defined in the APA, in relevant part, as:

all real property and real property interests leased, subleased, licensed, sublicensed or otherwise used or occupied by any Seller, as tenant, subtenant, lessee, sublessee, licensee, sublicensee or otherwise **and** (b) all buildings and other structures, facilities or Improvements located thereon, ***all fixtures, systems, Equipment and items of personal property of any Seller attached or appurtenant thereto***, and all easements, licenses, rights and appurtenances relating to the foregoing (and any present or future rights, title and interests arising from or related to the foregoing), just in the case of clause (b) to the extent of Seller's interest therein.

*Id.* (emphasis added).

26.     It is undisputed that the Lease was not included in Schedule 2.5(a) to the APA and was never designated by the Debtors or the Buyer as an "Assumed Contract". Rather, as HEF admits, the Lease was expressly listed on the Rejection Notice as among the unexpired leases to be rejected. Accordingly, when taken in the context of the applicable defined terms in the APA, contrary to HEF's assertion, the Abandoned Property was not an Acquired Asset because the Lease (including all fixtures, systems, Equipment and items of personal property of any Seller attached or appurtenant thereto—including the Abandoned Property) is a Contract that is not an Assumed Contract and is therefore an "Excluded Assets" under section 2.1(c) of the APA.

27.     As a result, even if the Motion was the procedurally proper manner through which to seek judgment against the Buyer (which it is not), the Buyer cannot be held liable for the Removal Costs under the terms of the APA.

## CONCLUSION

WHEREFORE, the Buyer respectfully requests the Court enter an order (a) denying the Motion in its entirety with respect to the request for reimbursement of the Removal Costs from the Buyer, or, in the alternative, reclassifying HEF's claims for the Removal Costs as unsecured claims against the Debtors' estates, (b) allowing HEF's administrative expense claim for the Prorated RE Taxes in an amount to be determined based upon tax invoices or other evidence of the final amount

of such claims, and (c) reserving the Buyer's rights to review and object to all other evidence submitted by HEF to support its claims for the Prorated RE Taxes.

*[Signature Page Follows]*

Dated: October 15, 2025
       Wilmington, Delaware

Respectfully submitted,

*/s/ Gregory J. Flasser*
**POTTER ANDERSON & CORROON LLP**
M. Blake Cleary (No. 3614)
L. Katherine Good (No. 5101)
Gregory J. Flasser (No. 6154)
Sameen Rizvi (No. 6902)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: bcleary@potteranderson.com
       kgood@potteranderson.com
       gflasser@potteranderson.com
       srizvi@potteranderson.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Philip C. Dublin (admitted *pro hac vice*)
Naomi Moss (admitted *pro hac vice*)
One Bryant Park
Bank of America Tower
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: pdublin@akingump.com
       nmoss@akingump.com

- and -

Marty L. Brimmage, Jr. (admitted *pro hac vice*)
Lacy M. Lawrence (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com
       llawrence@akingump.com

*Counsel for Asphalt Buyer II LLC*