**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 11 |
| OLDCO TIRE DISTRIBUTORS, INC.,[1] | Case No. 24-12391 (CTG) |
| Debtors. | (Jointly Administered) |
|  | Docket Ref. Nos. 1203, 1244, 1305, 1309, 1310 |

**REPLY OF LANDLORD HEF NC SC QRS 14-86 INC. TO: (I) PLAN**
**ADMINISTRATOR'S RESPONSE TO; AND (II) ASPHALT BUYER LLC'S**
**OBJECTION TO MOTION OF HEF NC SC QRS 14-86 INC. FOR ENTRY OF AN**
**ORDER: (I) REQUIRING PAYMENT OF ADMINISTRATIVE CLAIM FOR UNPAID**
**PRORATED 2025 REAL ESTATE TAXES; (II) COMPELLING PAYMENT OF CLAIM**
**FOR REMOVAL OF IMPROPERLY "ABANDONED" PROPERTY AS EITHER AN**
**ADMINISTRATIVE EXPENSE CLAIM AGAINST THE DEBTORS AND/OR**
**LIABILITY OF BUYER; ETC.**

Landlord[2], by and through its undersigned attorneys, hereby replies to the Plan Administrator's Response [D.I. 1309] ("**PA Response**" or "**PA Obj.**") and Buyer's Objection [D.I. 1310] ("**Buyer Objection**" or "**Buyer Obj.**") to the Motion and respectfully asserts as follows:

---

[1] The Post Effective Date Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Oldco Tire Distributors, Inc. (4594). The Post-Effective Date Debtor's mailing address is 12200 Herbert Wayne Court, Huntsville, NC 28078.

[2] Each capitalized term in this Reply not otherwise defined shall have the meaning ascribed to such term in *Motion of HEF (NC-SC) QRS, 14-86, Inc. For Entry of an Order: (I) Requiring Payment of Administrative Claim for Unpaid Prorated 2025 Real Estate Taxes; (II) Compelling Payment of Claim for Removal of Improperly "Abandoned" Property as Either an Administrative Expense Claim Against the Debtors and/or Liability of Purchaser; and (III) Granting Related Relief* (the "**Motion**").

## PRELIMINARY STATEMENT

1.      The Plan Administrator and Buyer each now concedes Landlord's entitlement to the Prorated RE Taxes for the leased premises.[3]  See PA Obj. ¶ 2; Buyer Obj. ¶ 2. That belated concession – made only after Landlord was forced to incur the cost of responding to a claims objection and moving to compel payment of an administrative claim that was expressly stipulated to by Debtors' counsel to settle part of Landlord's sale objection – resolves Landlord's entitlement to an administrative claim for the Prorated RE Taxes (other than fixing the precise amount of Landlord's allowed administrative claim for the Prorated RE Taxes, which is addressed below).[4]

2.      As to Landlord's entitlement to payment for the Removal Costs either as an administrative claim against the Debtors (presumably to be funded by Buyer) and/or a direct liability of Buyer, both the Plan Administrator and Buyer either ignore or mischaracterize Landlord's positions or respond through misdirection.  The Improperly Abandoned Assets left at Landlord's premises were not property of the Debtors' estates when such assets were abandoned because under the Sale Order and APA, including express language of section 2.1(e) of the APA, they had been purchased by Buyer.  Thus, there was not and could not have been a permissible abandonment of those assets under section 554 of the Bankruptcy Code or otherwise. The Plan Administrator admits those facts but ignores them when citing inapposite cases addressing a debtor/tenant's routine abandonment of the debtor's property pursuant to section 554.  For its part, Buyer attempts to mislead the Court by noting it did not acquire Landlord's Lease.  Yet that fact

---

[3]  Landlord filed the Declaration of Marina Folz in Support of the Motion (the "**Folz Declaration**")[(D.I. 1308] which includes copies of the real estate taxes from 2024 (2025 taxes are expected to increase but bills will not be received until January of 2026) and the Removal Costs backup.  No other proof of these costs should be required.

[4]  Landlord's claims for the Prorated RE Taxes and Removal Costs are the subject of both the Motion and the Plan Administrator's Claim Objection.  Accordingly, this Reply addresses both disputes in that regard.

is irrelevant as Buyer owned the Improperly Abandoned Assets when they were left at Landlord's premises. Hence, either Landlord has a valid administrative claim against the Debtors for the Removal Costs because Buyer was operating in Landlord's premises as the Debtors' invitee pursuant to the Sale Order or Buyer has direct liability for its wrongful abandonment.[5]

## **REPLY**

### I. **LANDLORD IS ENTITLED TO PAYMENT OF THE FULL PRORATED RE TAXES**

3. Both the Plan Administrator and Buyer now concede Landlord's entitlement to the Prorated RE Taxes, so the only remaining task is to fix the amount due. As there is no order rejecting the Lease, the end date for the Prorated RE Taxes has not been fixed.[6] Almost six months has passed since Landlord objected to the Lease Rejection Notice - during which period the Debtors failed to fulfill their obligation under the Rejection Procedures Order to provide notice of and schedule a hearing on that objection. Hence, the Debtors have waived any basis to seek rejection of the Lease as of the date requested in the Rejection Notice.

4. The Plan Administrator acknowledges as much and does not contend a specific rejection order was entered.[7] Instead, the Plan Administrator asserts the Plan provides for the Lease's rejection on the Plan's May 29, 2025, confirmation date. See PA Obj. ¶ 15, n. 3. Conversely, the Rejection Procedures Order provides a process for resolving Landlord's objection

---

[5] As discussed further below, the APA provides for Buyer to be liable for any claim against the Debtors related to use of the Leased Premises that arises after the Closing Date and before the Lease rejection date, whether or not such claim is entitled to administrative priority. See APA § 2.3(a) ("all Liabilities solely to the extent arising from the ownership or operation of the Business or the Acquired Assets by Buyer after the Closing.").

[6] See Rejection Procedures Order ¶ 2.e. ("If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties. If such objection is overruled or withdrawn, such Contract(s) shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty agree, or as ordered by the Court.").

[7] Notwithstanding these facts, throughout the PA Response the Plan Administrator incorrectly states the Lease was rejected.

3

to the Debtors' Rejection Notice, with the Lease rejection date to be determined in connection with resolution of such objection.  See Rejection Procedures Order ¶ 2.e.  To move on, Landlord would accept May 29, 2025, as the Lease rejection date if the Plan Administrator agrees.

5.      If that is the case, then based on the 2024 real estate taxes for the Leased Premises, the Prorated RE Taxes would be $62,495.84 and should be paid to Landlord now as the 2025 taxes will be higher.  See Folz Declaration ¶ 5, Exh. 1 [D.I. 1308].  Alternatively, if the Plan Administrator prefers to wait to pay until the 2025 tax bills are issued, then the Court merely need order the Plan Administrator to pay the Prorated RE Taxes based on those bills directly to the applicable taxing authorities (or pay such amounts to Landlord to the extent Landlord already has paid the taxes) within three business days of the Plan Administrator's receipt of each 2025 tax bill.

## II.      LANDLORD IS ENTITLED TO FULL PAYMENT OF THE REMOVAL COSTS

### A.  The Improperly Abandoned Assets Belonged To Buyer

6.      Ownership of the Improperly Abandoned Assets is central to determining liability for the Removal Costs.  As demonstrated conclusively in the Motion through multiple quotes from the Sale Order, APA, and Rejection Notice, Buyer purchased the Improperly Abandoned Assets and owned them when they were left at Landlord's premises.  See Motion ¶¶ 14-17, 36-37. Consequently, the Plan Administrator concedes Buyer purchased and owned the Improperly Abandoned Assets: "the equipment and materials remaining at the leased property (the Premises) were owned by" Buyer.  PA Obj. ¶ 3.

7.      Buyer attempts to avoid that inevitable conclusion and confuse the issue through a lengthy discussion of irrelevant APA provisions addressing assumption and assignment of leases and what constitute "Assumed or Excluded Contracts."  See Buyer Obj. ¶¶ 18-26.  Neither these APA provisions nor Buyer's suggestion that "common sense" requires a different result, id. at ¶ 3,

4

alter the unambiguous language in section 2.1 of the APA – *language Buyer drafted and asked this Court to approve* – which makes clear Buyer purchased and owned the Improperly Abandoned Assets left in Landlord's premises.

8.    Indeed, Buyer admits section 2.1(e) of the APA provides that "the Acquired Assets shall include . . . all Equipment" and that the definition of "Equipment" includes "all furniture, fixtures, equipment, . . . and all other personal property of any kind and description, . . . whereever located." See Buyer Obj. ¶ 17. Buyer also admits the Removal Costs cover removal of exactly such types of assets, i.e., "certain fixtures, equipment, and other personal property . . . remaining on the Leased Premises." Buyer Obj. ¶¶ 1, 10 ("The [Improperly Abandoned Assets] left at [Landlord's] premises included racks, IT equipment, and miscellaneous furniture, fixtures, and equipment in office areas."). Further, Buyer cites no Sale Order provision overriding the multiple Sale Order provisions quoted in the Motion that implement and describe Buyer's purchase of the Debtors' assets. Moreover, the Debtors' Rejection Notice expressly states "None Identified" in the Schedule designated for listing any of the Debtors' property that was being abandoned and left at Landlord's premises. Notice of Rejection, Schedule 2 [D.I. 1084]. Consequently, Buyer's attempted misdirection cannot alter the inescapable conclusion Buyer acquired the Improperly Abandoned Assets.[8]

## B.  Landlord's Removal Costs Claim Is A Valid Administrative Claim

### 1.  Routine Cases Involving Abandonment of a Debtor/Tenant's Property Pursuant to Section 554 Upon Rejection of the Debtor's Lease Are Inapplicable Here

9.    Once it is established that the Improperly Abandoned Assets were owned by Buyer when such assets were left at Landlord's premises, two indisputable conclusions follow. First,

---

[8] Buyer suggests it would have had no reason to acquire the Improperly Abandoned Assets unless it acquired the Lease. See Buyer Obj. ¶ 3. That argument is both irrelevant due to the APA's plain language and baseless as Buyer is a liquidator that acquired such personal property from the Debtors at no incremental cost and could have sold those assets or transferred them to another location.

such abandonment was not permitted by section 554 as that section only applies to a debtor's property.  Second, as that abandonment was not authorized, it was impermissible and constituted a tort or other wrongful conduct for which both Buyer and the Debtors (under whose auspices Buyer operated in the Leased Premises) are responsible.  See Motion ¶¶ 38-39.

10.     Those facts, that the Improperly Abandoned Assets were not the Debtors' property, section 554 did not permit their abandonment, and Buyer's abandonment of those assets was wrongful, distinguish the multiple routine cases cited by the Plan Administrator and Buyer holding that when a debtor/tenant rejects a lease and obtains court approval to abandon the debtor's own property pursuant to section 554, the applicable landlord's claim for the costs of removing the abandoned property is part of the landlord's prepetition lease rejection claim.  See PA Obj. ¶¶ 6, 9; Buyer Obj. ¶ 15.  In effect, there is no linkage to Lease rejection because that linkage only applies when the Debtor, the entity rejecting the Lease, abandons its own property as permitted by section 554 and any applicable court order.  Moreover, here there is no Lease rejection order and no concern about the Debtors having to pay Landlord's Removal Costs claim out of their own funds as the Removal Costs should be funded by or paid by Buyer.  Accordingly, such cases do not signify Landlord's Removal Costs claim is not entitled to administrative priority.  See, e.g., In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. 2001) (denying section 503(b) claim for removal costs based on debtor/tenant's abandonment of its own property pursuant to section 554 upon lease rejection because such removal "claims associated with the rejection of the lease [are] deemed prepetition claims."); In re M.L. Logan Precision Machining Co., 2007 WL 1468807 *3 (Bankr. May 14, 2007) (denying landlord's administrative claim for costs incurred to remove debtor's abandoned property after lease rejection); In re Teleglobe Communs. Corp., 304 B.R. 79, 84 (D. Del. 2004) (denying landlord's section 365(d)(3) and 503(b) claims based on debtor/tenant's lease

obligation to remove its improvements because liability did "not arise prior to rejection"); <u>In re</u>

<u>Filene's Basement, LLC</u>, 2015 Bankr LEXIS 1350 (Bankr. D. Del. 2015) (applying section

502(b)(6) statutory cap to portion of landlord's claim based on debtor's abandonment of its own

property upon lease rejection).[9]

### 2. **Landlord Has an Administrative Claim Under Section 365(d)(3)**

11.    Buyer effectively concedes the wrongful abandonment of the Improperly

Abandoned Assets occurred during the postpetition/prerejection period as required by section

365(d)(3).  <u>See</u> Buyer Obj. ¶ 12 (Landlord "may be correct as a technical matter that the Lease will

not be rejected until the Court rules on its objection" to the Rejection Notice). Buyer then

mistakenly argues Landlord relies on its objection to the Rejection Notice to delay Lease rejection

and satisfy section 365(d)(3).  <u>See id.</u>  To make this argument, Buyer inappropriately presumes the

Debtors have not now waived any argument for retroactive rejection due to inexcusable delay in

fulfilling the Debtors' obligation to obtain a ruling on Landlord's Lease rejection objection.  Even,

however, if that presumption were correct, Buyer also inappropriately presumes the Court

ultimately both would overrule Landlord's objection, which is based on the wrongful

abandonment, and would make any rejection retroactive to the surrender date sought in the

Rejection Notice.  <u>See id</u>.  In contrast, the Plan Administrator now effectively concedes rejection

---

[9] Equally inapplicable here are other cases cited by the Plan Administrator and Buyer for the proposition a landlord is not entitled to an administrative claim for post lease rejection clean up costs and other damages.  <u>See</u>, <u>e.g.</u>, <u>In re Universal Bldg, Products</u>, 2011 WL 841231 *2-3 (Bankr. D. Del. March 7, 2011) (denying section 503(b) claim by buyer of debtor's assets based on buyer's voluntary post-rejection clean up of debtor's former leased premises, particularly as money to pay such claim would reduce the funds buyer had agreed would be paid to unsecured creditors pursuant to a prior settlement); <u>In re Insilco Technologies, Inc.</u>, 309 B.R. 111, 115 (Bankr. D. Del. 2004) (denying state environmental agency's section 503(b) claim based on clean up costs for property sold by debtors four years before commencement of the bankruptcy cases and, therefore, never owned, used, or occupied by the debtors during those cases); <u>In re Lucky's Market Parent Company</u>, 2022 WL 843763 *15 (D. Del. March 22, 2022) (denying landlord's section 365(d)(3) claim based on the costs to remove FF&E and related damages to the leased premises because the claim was related to rejection of the lease and landlord "failed to prove that Debtors breached the Lease and failed to provide credible estimations of damages").

of the Lease occurred no earlier than the May 29, 2025, Plan confirmation date. See PA Obj. ¶ 15, n. 3.

12.     Regardless, both Buyer's and the Plan Administrator's objection to Landlord's section 365(d)(3) claim is based on the premise that Landlord's claim arises directly from rejection of the Lease and, therefore, must be a prepetition claim. Yet there is no credible argument Buyer's improper abandonment occurred in conjunction with rejection of the Lease. First, either the Lease has not been rejected or any such rejection occurred well after Landlord regained control over the Leased Premises. Second, proof of linkage of a lease rejection and any related claim for removal of abandoned assets requires showing the debtor/tenant abandoned its own property pursuant section 554 as permitted by the applicable lease rejection order. In contrast, here the abandonment was not by the Debtors, was not of the Debtors' property, and was not pursuant to section 554 or any order of this Court. Accordingly, Landlord's claim for the Removal Costs for Buyer's Improperly Abandoned Assets is not linked to rejection of the Lease.

### 3.   Alternatively, Landlord Has an Administrative Claim Under Section 503(b)

13.     Buyer argues Landlord is not entitled to a section 503(b) claim because Landlord does not satisfy section 503(b)'s requirements for: (x) a post-petition transaction with the Debtors' estates that (y) benefitted the Debtors' estates. See Buyer Obj. ¶¶ 13-16. Yet the requisite post-petition transaction occurred because the Debtors used Landlord's Lease and premises post-petition to conduct and consummate a sale of the Debtors' assets. Such use was in part because Buyer, under the Debtors' auspices and pursuant to the sale order, could utilize Landlord's premises to operate the Debtors' business, had the option to acquire Landlord's Lease, and had the ability to sell or remove the Improperly Abandoned Assets. Hence, the Debtors had the requisite post-petition transaction with Landlord.

8

14.     As to section 503(b)'s second requirement, Buyer ignores the extensive benefits to the Debtors' estates from both operating their business and successfully selling their assets for over $600 million.  See Motion ¶¶ 32-33.  Buyer attempts to rationalize its position by incorrectly arguing the only relevant benefit to the Debtors is whether they would benefit from removal of the Improperly Abandoned Assets.  However, that narrow inquiry contradicts the far broader test utilized in Third Circuit and Delaware cases finding the requisite benefits for section 503(b), may be obtained from the activities that gave rise to the administrative claim.  See Motion ¶¶ 43-46 (citing and quoting the Women First Healthcare, Energy Future Holdings, Tri-State, and Goody's cases).  Such broader test for determining benefits unquestionably is passed here.

15.     Correspondingly, Buyer asserts an inappropriately narrow interpretation of the cases Landlord cites allowing administrative claims for a debtor/tenant's unfulfilled repair and maintenance lease obligations.  See Buyer Obj. ¶ 25; Motion ¶ 47.  As Buyer notes, those cases discuss the money the applicable debtors saved from not making the repairs.  The thrust of those cases, however, is that the repairs themselves did not have to benefit the estates.  Instead, the key was the benefits to the debtors from the overall interaction between the debtor/tenants and their landlords, including the money saved.

16.     Consequently, the enormous benefits the Debtors received from using Landlord's Lease and premises to continue to operate and obtain an over $600 million sale of the Debtors' assets constitute ample benefits to support allowance of a section 503(b) administrative claim for the Removal Costs.  That is particularly true here as those costs result from and are intertwined with Buyer, as the Debtors' invitee under the Sale Order, improperly abandoning Buyer's purchased assets at Landlord's premises.

**4. Even if the Debtors' Estates Somehow did Not Receive the Benefits Required Under Section 503(b), Landlord's Removal Costs Claim is Entitled to Administrative Claim Priority Based on the Reading Exception for Wrongful Conduct**

17.     As demonstrated in the Motion, Landlord's section 503(b) claim falls within (or is justified by analogy to) the <u>Reading</u> exception to the general rule that a landlord must demonstrate a benefit to the debtor/tenant's estate to be entitled to administrative priority.  <u>See</u> Motion ¶ 48.  In effect, the debtor/tenant's or another party's wrongful conduct can invoke that exception.  <u>See id</u>. <u>See also</u> <u>In re Unidigital</u>, Inc., 262 B.R. at 289-90 (addressing a landlord's administrative claim based on a debtor/tenant's abandonment of its property, this Court notes the potential availability of the <u>Reading</u> exception, but denies its application because unlike here, the misconduct at issue in <u>Unidigital</u> "did not arise from operation of the Debtor's business [as] the Debtors ceased operations at [the landlord's] premises prior to the bankruptcy filing."  Thus, the misconduct did not occur "during the conduct of business which benefitted the estate and other creditors.").  Notably, both the Plan Administrator and Buyer completely ignore Landlord's argument and, therefore, effectively concede application of the <u>Reading</u> exception here.

**C**.  **Buyer Is Obligated To Fund Landlord's Removal Costs Claim Regardless Of Whether Such Claim Has Administrative Priority**

18.     APA section 2.5(c) provides that "Buyer shall be responsible for timely paying all reasonable and documented costs incurred and unpaid as of the Closing Date by Sellers under such Excluded Contracts [i.e., unassumed leases] until they are either (A) rejected by Sellers or (B) assumed . . . ."  Significantly, that section imposes a payment obligation on Buyer with no requirement that the applicable costs to be paid have been allowed as an administrative claim against the Debtors.  Further, both the Plan Administrator and Buyer admit Landlord has at a minimum, a valid prepetition Lease rejection claim for the Removal Costs.  <u>See</u> PA Obj. ¶ 6 ("the [Removal] Costs represent only unsecured, rejection damage claims against the estates."); Buyer

Obj. ¶ 2 ("the Removal Costs are, at best, a general unsecured claim for rejection damages.").[10]
Thus, as the Removal Costs unquestionably constitute "reasonable and documented costs incurred
and unpaid" by the Debtors during the relevant period, Buyer is responsible for their payment
regardless of whether Landlord's Removal Costs claim is allowed as an administrative expense.

**D**.  **Buyer's Liability For The Removal Costs Does Not Insulate The Debtors From Liability**

19.    The Plan Administrator states Buyer is "solely responsible to [Landlord] for any
property remaining on the [Leased] Premises after rejection of the Lease."  PA Obj. ¶ 3.  Based on
that premise, the Plan Administrator incorrectly asserts Landlord may not have an administrative
claim against the Debtors for the Removal Costs.  See PA Obj. ¶¶ 12-15.  As noted above, however,
the Debtor/Tenant has joint liability for Buyer's wrongful abandonment because Buyer was
operating in and using Landlord's Premises as the Debtors' invitee pursuant to the Sale Order.  See
id.  Hence, the Debtor/Tenant's joint liability for Buyer's wrongful abandonment provides a
separate basis for Landlord's administrative claim independent of the Debtor's violation of its
Lease surrender obligations.  In effect, while Buyer is obligated to fund any such liability pursuant
to section 2.5(c) of the APA or otherwise, in the first instance Landlord still would have a valid
administrative claim against the Debtors.  See PA Obj. ¶¶ 14-15 (Buyer "remains obligated to
satisfy all administrative claims [Landlord] may have against the estates for claims accrued during
the Designation Rights Period.").

---

[10] The PA Objection makes multiple references to Landlord's unsecured Lease rejection claim.  Landlord does not address its Lease rejection claim directly here because it's unsecured claim is not the subject of either the Plan Administrator's pending claim objection or the Motion.  Landlord reserves all rights as to its prepetition Lease rejection claim, including to apply the letter of credit held by Landlord to a portion of Landlord's unsecured claim.

**E.  Alternatively, This Court May Impose Direct Liability On Buyer For The Improperly Abandoned Assets**

20.    As demonstrated in the Motion, Buyer has independent liability for the Removal Costs as they concern assets owned and wrongfully abandoned by Buyer at Landlord's premises. See Motion ¶¶ 48-49.   Buyer fails to address that argument other than to reserve its rights concerning this Court's jurisdiction.  See Buyer Obj. ¶ 1, n. 3.  Nevertheless, as the Motion explains why this Court has jurisdiction, see Motion ¶ 8, presents bases for Buyer's direct liability for the Removal Costs, and expressly seeks an order imposing direct liability on Buyer, this Court should find Buyer has waived any defense not included in the Buyer Objection and grant appropriate relief to Landlord.

## CONCLUSION

21.    WHEREFORE, Landlord respectfully requests that the Court enter an order, in substantially the form annexed to the Motion, granting the relief requested therein and such other relief to Landlord as is just and proper under the circumstances.

Dated: October 20, 2025
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Curtis S. Miller*
Curtis S. Miller (No. 4583)
1201 North Market Street, Suite 1600
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
cmiller@morrisnichols.com

*- and -*

**CHAFFETZ LINDSEY LLP**
Alan J. Lipkin
1700 Broadway, 33rd Floor
New York, NY 10019
Telephone: (212) 257-6960
Facsimile: (212) 257-6950
alan.lipkin@chaffetzlindsey.com

*Counsel to HEF (NC-SC) QRS 14-86, Inc.*